**LOEB & LOEB LLP**
Schuyler G. Carroll
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
      dbesikof@loeb.com
      nweingarten@loeb.com

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-45422 |
| | ) Case No. 19-45423 |
| In re: | ) Case No. 19-45424 |
| | ) Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al*. | ) Case No. 19-45426 |
| | ) Case No. 19-45427 |
| Debtors.[1] | ) Case No. 19-45428 |
| | ) Case No. 19-45429 |
| | ) |
| | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' EMERGENCY MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(A) AND 366 (I) PROHIBITING UTILITY COMPANIES FROM ALTERING OR DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES, (II) APPROVING DEPOSIT ACCOUNT AS ADEQUATE ASSURANCE OF PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

Absolut Facilities Management, LLC and its affiliated debtor entities (collectively, the "**Debtors**"), as debtors-in-possession in the above-referenced chapter 11 cases, by and through proposed counsel, Loeb & Loeb LLP, respectfully submit this motion for an order (i) prohibiting utility companies from altering or discontinuing service on account of prepetition invoices, (ii) approving deposit account as adequate assurance of payment, and (iii) establishing procedures for resolving requests by utility companies for additional adequate assurance of payment, (the "**Motion**"), pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "**Bankruptcy Code**").

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Referral of Matters to the Bankruptcy Judges* of the United States District Court for the Eastern District of New York, entered on December 5, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested in the Motion is section 105 and 366 of the Bankruptcy Code.

## BACKGROUND

**A.      General Background**

3.      On September 10, 2019 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned cases (the "**Chapter 11 Cases**").  The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases.

4.      An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases.  Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

5.      A detailed description of the Debtors and their business, the facts and circumstances leading up to the filing of the Debtors' Chapter 11 Cases, and the facts supporting this Motion are set forth in greater detail in the *Declaration of Michael Wyse in Support of Debtors' Chapter 11 Petitions and First-Day Motions* (the "**First Day Declaration**"), which is being filed concurrently herewith and is incorporated by reference in this Motion.

**B.      The Debtors' Utilities**

6.      The Debtors have relationships with many different utility companies and other providers (each a "**Utility Company**" and, collectively, the "**Utility Companies**") for the provision of electric, water, sewer, natural gas, trash removal, telephone, cellular telephone, internet services, and similar utility products and services (collectively, the "**Utility Services**"). The Utility Companies include, without limitation, the entities set forth on the list attached hereto as **Exhibit A**.[2]

7.      The Debtors estimate that the average monthly amount owed to the Utility Companies is approximately $97,978.  The Debtors owe certain amounts to Utility Companies as of the Petition Date for prepetition Utility Services.  Due to the timing of the Petition Date in relationship to the Utility Companies' billing cycles, the Debtors are also aware of Utility Services that have been invoiced to the Debtors for which payment is not yet due and Utility Services that

---

[2] While the Debtors have used their best efforts to list their Utility Companies in Exhibit A, the Debtors may have inadvertently omitted certain Utility Companies.  Accordingly, the Debtors request that they be authorized, without further order of the Court, to amend Exhibit A to add any Utility Companies that were omitted therefrom and that the relief requested herein apply to all such entities added to Exhibit A.  In addition, the Debtors reserve the right to argue that (a) any of the entities now or hereafter listed in Exhibit A is not a "utility" within the meaning of Bankruptcy Code § 366; and (b) any such entity is compelled by contractual obligation, state or local law, or otherwise, to continue to furnish services to the Debtors notwithstanding the filing of the Chapter 11 Cases.

have been provided since the end of the last billing cycle but not yet invoiced to the Debtors.  The

Debtors seek to pay the most recent invoice received from the Utility Companies, even if a portion

of the period covered by the invoice is for the pre-Petition Date period.

**RELIEF REQUESTED**

8.      The Debtors request that the Court enter an Interim Order, substantially in the form

attached hereto as **Exhibit B**, (i) prohibiting the Utility Companies from altering or discontinuing

service on account of unpaid prepetition invoices; (ii) permitting the Debtors to pay the Utility

Companies in the ordinary course, including payment of the most recent invoice received from the

Utility Companies, even if a portion of the period covered by the invoice is for the pre-Petition

Date period, (iii) approving the use of the Debtors' deposit account as adequate assurance of

payment; (iv) establishing the procedures (as defined below) for resolving any future disputes

regarding requests for adequate assurance of payment; and (v) scheduling a final hearing on the

Motion (the "**Final Hearing**") within thirty (30) days of the Petition Date.

**BASIS FOR RELIEF REQUESTED**

**I.      Section 366(a) Prohibits a Utility Company from Altering or Discontinuing Services
         Due to Accounts Owed on Prepetition Invoices**

9.      Section 366(a) provides that "a utility may not alter, refuse, or discontinue service

to, or discriminate against . . . the debtor solely on the basis of the commencement of a case under

this title or that a debt owed by the debtor to such utility for service rendered before the order for

relief was not paid when due.

10.     Accordingly, the Court may prohibit the Debtors' Utility Companies from altering,

refusing, or discontinuing services to the Debtor based on their commencement of these Chapter

11 Cases.

## II.    The Debtors' Proposed Adequate Assurance

11.    Section 366(b) permits a utility to "alter, refuse, or discontinue service if . . . the debtor, within 20 days after the date of the order for relief, [does not] furnish adequate assurance of payment, in the form of a deposit or other security, for service after such date." An "assurance of payment" means a cash deposit or a certificate of deposit, among other things. *See* 11 U.S.C. § 366(c)(1)(A)(i).

12.    Section 366(c)(2) provides that a utility may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor "adequate assurance of payment for utility service that is satisfactory to the utility."

13.    A debtor need not furnish any deposit at all to provide a utility with "adequate assurance of payment." *Virginia Elect. & Power Co. v. Caldor, Inc.-NY (In re Caldor, Inc.)*, 117 F.3d 646, 650 (2d Cir. 1997) (affirming bankruptcy court's ruling that the debtor's prepetition payment history constituted adequate assurance of future performance and rejected argument that § 366(b) required a "deposit or other security"); *see also Shirey v. Phila. Elec. Co. (In re Shirey)*, 25 B.R. 247, 249 (Bankr. E.D. Pa. 1982) ("[S]ection 366(b). . . does not permit a utility to request adequate assurance of payment for continued service unless there has been a default by the debtor on a prepetition debt owed for services rendered"); *see also In re Adelphia Business Sols., Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("[i]n determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services).

14.    The Debtors anticipate that their cash flow, coupled with the proposed funding from the debtor-in-possession financing (the "**DIP Financing**"), will be sufficient to allow them to satisfy administrative expenses.  Accordingly, the Debtors intend to pay all postpetition obligations owed to the Utility Companies in a timely manner.

15.    Nevertheless, to provide additional adequate assurance of payment for future Utility Services, the Debtors are prepared to earmark a sum equal to approximately fifty percent (50%) of the Debtors' estimated monthly cost of their Utility Services, for the sole use of satisfying post-petition administrative expense claims of Utility Companies (the "**Utility Deposit Account**"), subject to the terms and conditions of the DIP Financing agreement and applicable orders authorizing the Debtors to enter into the same, including, without limitation, the Interim DIP Order.  The Debtors request authority to maintain the Utility Deposit Account in one of the Debtors' existing bank accounts, and not in a separate bank account.

16.    The Debtors will maintain the Utility Deposit Account with a minimum balance equal to 50% of the Debtors' estimated monthly cost of Utility Services, which may be adjusted by the Debtors to account for the termination of Utility Services by the Debtors or other arrangements with respect to adequate assurance of payment reached with individual Utility Companies.  The Debtors represent that the Utility Deposit Account, coupled with the Debtors' ability to pay for future Utility Services in the ordinary course of business, provides protection well in excess of that required to grant adequate assurance to the Utility Companies.

17.    Courts in this jurisdiction and in other jurisdiction have granted similar relief in chapter 11 cases following the enactment of BAPCPA.  *See*, *e.g.*, *In re Personal Comms. Devices, LLC*, Case No. 13-74303 (AST) (Bankr. E.D.N.Y. Sept. 13, 2013) (Dkt. No. 131) (final order deeming utility providers adequately assured of future performance upon a deposit, equal to two

weeks of utility services, into a segregated account); *In re Interfaith Med. Ctr., Inc.*, Case No. 12-48226 (CEC) (Bankr. E.D.N.Y. Dec. 20, 2012) (Dkt. No. 77) (same); *In re Global Aviation Holdings Inc.*, Case No. 12-40783 (CEC) (Bankr. E.D.N.Y. Mar. 5, 2012) (Dkt. No. 172) (same); *In re Cenveo, Inc.*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018) (Dkt. No. 174). The present circumstances warrant similar relief in these Chapter 11 Cases.

18.     The Utility Deposit Account provides the Utility Companies with ample adequate assurance of future payment under Section 366(c).  Further, the Debtor's access to the DIP Financing means that the Debtors will have sufficient resources to pay all valid postpetition obligations for Utility Services in a timely manner.  In addition, the Debtors have significant incentives to stay current on their Utility Service obligations as they come due because of their reliance on the Utility Services for the operation of their business and the maintenance of care to their patients.  These factors, which the Court may—and should—consider when determining the amount of any adequate assurance provided, justify a finding that the Utility Deposit Account, together with the Debtors' access to the DIP Financing and agreement to pay the Utility Companies in the ordinary course, is more than sufficient to assure the Utility Companies of future payments.

### III.    The Additional Adequate Assurance Procedures

19.     The Debtors propose that, to the extent the Debtors becomes delinquent with respect to postpetition payment for Utility Services from a Utility Company, such Utility Company may file a notice of delinquency (a "**Delinquency Notice**") with the Court and serve such Delinquency Notice on (a) the Debtors; (b) counsel to the Debtors; (c) counsel to the Debtors' secured lenders; (d) counsel to the official committee of unsecured creditors, if one is appointed; and (e) the United States Trustee for the Eastern District of New York (each, a "**Party in Interest**").  The Debtors propose that if such delinquency is not cured and no Party in Interest has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice,

then the Debtors will (I) remit to such Utility Company from the Utility Deposit Account the lesser of (a) the amount allocated in the Utility Deposit Account for such Utility Company's account, and (b) the amount of postpetition charges claimed as delinquent in the Delinquency Notice; and (II) replenish the Utility Deposit Account for the amount remitted to such Utility Company.

20.    Notwithstanding the foregoing proposed adequate assurance procedure, the Debtors anticipate that certain Utility Companies may not find the Utility Deposit Account, coupled with the Debtors' ability to pay for future Utility Services in the ordinary course of business, "satisfactory" and, thus, may request additional adequate assurance of payment pursuant to Section 366(c)(2). Accordingly, the Debtors propose the following procedures (the "**Procedures**") for the Utility Company to make additional requests for adequate assurance:

(a)    If a Utility Company is not satisfied with the assurance of future payment provided by the Debtors, the Utility Company must file and serve an objection setting forth: (i) the location(s) for which Utility Services are provided; (ii) the account number(s) for such location(s); (iii) the outstanding balance for each account; (iv) the amount of any deposit(s) made by the Debtors prior to the Petition Date; (v) a summary of the Debtors' payment history in each account; and (vi) any argument as to why the Utility Company has not been provided adequate assurance of payment (an "**Objection**").

(b)    The Court will schedule a final hearing within 30 days of the Petition Date (the "**Hearing Date**") for the purpose of considering any Objections.

(c)    Any Objection by a Utility Company listed on Exhibit A must be actually received by the Debtors' counsel, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn: Schuyler G. Carroll, by no later than seven (7) days prior to the Hearing Date. The Debtors may file and serve a reply to any such Objection on or before the date that is two (2) days prior to the Hearing Date.

(d)    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Company whether or not such Utility Company has filed an Objection, if the Debtors in their discretion determine that there is a reasonable basis for providing such additional adequate assurance.

(e)     If the Debtors discover the existence of a Utility Company not listed on Exhibit A, the Debtors shall, within two (2) business days after discovering the existence of such Utility Company, (i) file a supplement to Exhibit A which supplement shall identify the Utility Company and the amount of the Adequate Assurance Deposit the Debtors proposes to issue to such Utility Company; and (b) serve such Utility Company with notice of entry and a copy of the Interim Order.

(f)     In the event that a Utility Company not listed on Exhibit A objects to the Debtors' proposal to provide adequate assurance of payment, such Utility Company must file and serve on counsel for the Debtors an Objection within fourteen (14) days after the date upon which it receives notice of entry of the Interim Order.  A hearing on such Objection will be set by the Court no sooner than seven (7) days after the date upon which such Objection has been filed.  The Debtors may file and serve a reply to any such Objection on or before the date that is two (2) days prior to such hearing date.

(g)     All Utility Companies will be deemed to have received adequate assurance of payment in accordance with section 366, without the need for an additional deposit or other security, until the Court enters an order to the contrary.  Any Utility Company that fails to file a timely Objection shall be deemed to be satisfied that the Utility Deposit Account provides adequate assurance of payment for future services within the meaning of section 366(c)(2).

21.     The Procedures provide a fair, reasonable, and orderly mechanism for the Utility Companies to seek additional adequate assurance, while temporarily maintaining the status quo for the benefit of all stakeholders.  Additionally, the assurance procedures described above are entirely reasonable as separate negotiations with each of the Utility Companies would be time-consuming and unnecessarily divert the Debtors' personnel from other critical tasks related to the operation of their business and the restructuring.  This is especially true during the first several weeks of the Chapter 11 Cases.  If the Debtors fail to reach early agreement with each Utility Company, they would have to file motions seeking expedited determinations as to adequate assurance or risk service termination.

## REQUEST FOR WAIVER OF STAY

22.     To the extent that the relief sought in this Motion constitutes a use of property under section 363(b), the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to adequately preserve the value of their estates.

## NOTICE

23.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Lender; (vi) the consolidated 30 largest unsecured creditors of the Debtors; and (vii) all governmental agencies having a regulatory or statutory interest in these cases.  No other or further notice need be provided.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:    September 10, 2019                    LOEB & LOEB LLP
          New York, New York

                                                */s/ Schuyler G. Carroll*

                                                Schuyler G. Carroll
                                                Daniel B. Besikof
                                                Noah Weingarten
                                                345 Park Avenue
                                                New York, NY 10154
                                                Tel: (212) 407-4000
                                                Fax: (212) 407-4990
                                                scarroll@loeb.com
                                                dbesikof@loeb.com
                                                nweingarten@loeb.com

                                                *Proposed Counsel to the Debtors*
                                                *and Debtors-in-Possession*

# **<u>EXHIBIT A</u>**

18060367

| Utility Company | Address | Account Number | Service | Average |
|---|---|---|---|---|
| **Absolut Facilities Management, LLC** | | | | |
| Windstream | PO Box 9001013, Louisville, KY 40290 | 5488697 5494306 205788466 | Telephone and Internet | $5,933.17/mo $5,001.33/mo $290.50/mo |
| **Absolut Center for Nursing and Rehabilitation at Allegany, LLC** | | | | |
| National Grid | PO Box 11742, Newark, NJ 07101 | 99350-83112 | Electric | $1,451.93/mo |
| NYSEG | PO Box 847812, Boston, MA 02284 | 1002-7821-569 | Gas | $1,360.86/mo |
| Town of Allegany | 52 W. Main Street, Allegany, NY 14706 | 51-0105090 | Water | $1,580.52/qtr |
| Time Warner | PO Box 223085, Pittsburgh, PA 15251 | 034022701 | Telephone | $635.89/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 202-917422301-001 | Cable | $404.89/mo |
| **Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC** | | | | |
| NYSEG | PO Box 847812, Boston, MA 02284 | 1002-7821-585 1002-7821-593 1002-7821-601 | Electric | $5,816.35/mo $5,386.86/mo $3,087.70/mo |
| National Fuel | PO Box 371835, Pittsburgh, PA 15250 | 634275204 | Gas | $8,839.16/mo |
| Village of East Aurora | 571 Main Street, East Aurora, NY 14052 | 510302690 510302695 510504720 | Water | $4,982.47/qtr $3,315.87/qtr $3,907.48/qtr |
| Time Warner | PO Box 223085, Pittsburgh, PA 15251 | 03635980 | Telephone | $1,592.41/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 202-122003601-001 | Internet | $352.98/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 202-183208601-001 | Cable | $3,305.28/mo |
| **Absolut Center for Nursing and Rehabilitation at Gasport, LLC** | | | | |
| National Grid | PO Box 11742, Newark, NJ 07101 | 90275-71114 | Electric | $3,385.38/mo |
| NYSEG | PO Box 5240, Binghamton, NY 13902 | 1002-7821-577 | Gas | $3,013.40/mo |
| Town of Royalton | 5316 Royalton Center Road, Middleport, NY 14105 | 1A-2720.00 1A-2780.00 | Water | $1,821.13 $1,767.18 3x/yr |
| Time Warner | PO Box 223085, Pittsburgh, PA 15251 | 059311201 202-122116501-001 | Telephone Internet | $191.42/mo $701.39/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 202-095995401-001 | Cable | $929.60/mo |

| Utility Company | Address | Account Number | Service | Average |
|---|---|---|---|---|
| **Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC and Absolut at Orchard Brooke, LLC** | | | | |
| NYSEG | PO Box 847812, Boston, MA 02284 | 1002-7821-619 1002-7821-627 | Electric | $17,305.88/mo 80.77/mo |
| Crown Energy | PO Box 260, West Seneca, NY 14224 | 634168204 634171101 | Gas | $3,053.23/mo $4,389.73/mo |
| Erie County Water Authority | 350 Ellicott Square PO Box 5148, Buffalo, NY 14240 | 60518963-1 60518976-8 60518961-7 | Water | $1,095.96/mo $1,626.23/mo $34.09/mo |
| Time Warner | PO Box 223085, Pittsburgh, PA 15251 | 033923601 | Telephone | $1,288.25/mo |
| Crown Castle | PO Box 27135, New York, NY 10087 | B12081 | Internet | $500.00/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 202-920789901-001 | Cable | $3,485.90/mo |
| **Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC** | | | | |
| NYSEG | PO Box 847812, Boston, MA 02284 | 1002-7821-635 | Electric | $4,460.46/mo |
| Crown Energy | PO Box 260, West Seneca, NY 14224 | 74390CESI | Gas | $2,309.13/mo |
| Town of Erwin | 310 Town Center Road, Painted Post, NY 14870 | B1410.00 | Water | $11,751.34/qtr |
| Time Warner | PO Box 223085, Pittsburgh, PA 15251 | 033988301 | Telephone | $703.51/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 202-818151102-001 | Cable | $1,901.37/mo |
| **Absolut Center for Nursing and Rehabilitation at Westfield, LLC** | | | | |
| Department of Public Works | 23 Elm St, Westfield, NY 14787 | 90-60-0460001 | Electric | $2,049.05/mo |
| Crown Energy | PO Box 260, West Seneca, NY 14224 | 634168705 | Gas | $3,924.97/mo |
| Department of Public Works | 23 Elm St, Westfield, NY 14787 | 5260006002 | Water | $1,903.84/mo |
| DFT Communications | PO Box 500, Fredonia, NY 14063 | 0000409748 0000409819 | Telephone | $332.75/mo $1,211.64/mo |
| 634 Communications | 350 S Loop 336, West Conroe, TX 77304 | 0100081764 | Telephone | $360.59/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 202-196881801-001 | Telephone | $1,466.53/mo |
| Time Warner | PO Box 70872, Charlotte, NC 28272 | 034294301 | Internet | $226.17/mo |

# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-45422 |
| | ) | Case No. 19-45423 |
| In re: | ) | Case No. 19-45424 |
| | ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45426 |
| | ) | Case No. 19-45427 |
| Debtors.[1] | ) | Case No. 19-45428 |
| | ) | Case No. 19-45429 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(A) AND 366 (I) PROHIBITING
UTILITY COMPANIES FROM ALTERING OR DISCONTINUING SERVICE ON
ACCOUNT OF PREPETITION INVOICES, (II) APPROVING DEPOSIT
ACCOUNT AS ADEQUATE ASSURANCE OF PAYMENT, AND
(III) ESTABLISHING PROCEDURE FOR RESOLVING REQUESTS
BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT**

On September ___, 2019, the Court conducted a hearing to consider the *Debtors'*
*Emergency Motion for an Order under 11 U.S.C. §§ 105(a) and 366 (I) Prohibiting Utility*
*Companies from Altering or Discontinuing Service on Account of Prepetition Invoices, (II)*
*Approving Deposit Account as Adequate Assurance of Payment, and (II) Establishing Procedures*
*for Resolving Requests by Utility Companies for Additional Adequate Assurance of Payment* (the
"**Utilities Motion**"), filed by the above-captioned debtors and debtors-in-possession (the
"**Debtors**").  The Court finds that: (i) it has jurisdiction over the matters raised in the Utilities

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and
Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266);
Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641);
Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and
Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC
(7924).

Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii)  venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Utilities Motion is in the best interests of the Debtors, their estates, and their creditors; (v) proper and adequate notice of the Utilities Motion has been given and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, IT IS HEREBY ORDERED THAT:

1.       The Utilities Motion is GRANTED on an interim basis.

2.       Except in accordance with the procedures set forth below, absent further order of the Court, each Utility Company[2] is prohibited from (a) altering, refusing, or discontinuing service to, or discriminating against the Debtors solely on the basis of the commencement of the Chapter 11 Cases or on account of any unpaid invoice for services provided before the Petition Date; or (b) requiring the payment of a deposit or other security in connection with the Utility Companies' continued provision of Utility Services, other than the establishment of the Utility Deposit Account.

3.       The Debtors are authorized and directed to establish the Utility Deposit Account and shall earmark $48,989 to be set aside as the Utility Deposit Account for the purpose of providing each Utility Company adequate assurance of payment for postpetition Utility Services provided to the Debtors.  The Debtors shall maintain the Utility Deposit Account with a minimum balance equal to 50% of the Debtors' estimated monthly cost of Utility Services, which the Debtors may adjust to account for the termination of Utility Services by the Debtors or other arrangements with respect to adequate assurance of payment reached with any Utility Company.  For the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Utilities Motion.

avoidance of doubt, the Utility Deposit Account may be maintained in an existing bank account of the Debtors and need not be maintained in a separate bank account.

4.      To the extent the Debtors become delinquent with respect to a Utility Company's account, such Utility Company shall file a Delinquency Notice with the Court and serve such Delinquency Notice on (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the Debtors' secured lenders, (d) counsel to the official committee of unsecured creditors, if one is appointed, and (e) the United States Trustee for the Eastern District of New York (each, a "**Party in Interest**"). If the Debtors have not cured such delinquency or no Party in Interest has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall (i) remit to such Utility Company from the Utility Deposit Account the lesser of (a) the amount allocated in the Adequate Assurance Deposit for such Utility Company's account and (b) the amount of postpetition charges claimed as delinquent in the Delinquency Notice; and (ii) replenish the Utility Deposit Account for the amount remitted to such Utility Company.

5.      The following procedures are hereby approved:

(a)      If a Utility Company is not satisfied with the assurance of future payment provided by the Debtors, the Utility Company must file and serve an objection setting forth: (i) the location(s) for which Utility Services are provided; (ii) the account number(s) for such location(s); (iii) the outstanding balance for each account; (iv) the amount of any deposit(s) made by the Debtors prior to the Petition Date; (v) a summary of the Debtors' payment history in each account; and (vi) any argument as to why the Utility Company has not been provided adequate assurance of payment (an "**Objection**").

(b)      The Court has scheduled the Final Hearing on _____, 2019 at __.m. (EDT) (the "**Hearing Date**") for the purpose of considering any Objections.

(c)      Any Objection by a Utility Company listed on Exhibit A to the Utilities Motion must be actually received by the Debtors' counsel, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn: Schuyler G. Carroll, by no later than seven (7) days prior to the Hearing Date. The

Debtors may file and serve a reply to any such Objection on or before the date that is two (2) days prior to the Hearing Date.

(d)     Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Company whether or not such Utility Company has filed an Objection, if the Debtors in their discretion determine that there is a reasonable basis for providing such additional adequate assurance.

(e)     If the Debtors discover the existence of a Utility Company not listed on Exhibit A to the Utilities Motion, the Debtors shall, within two (2) business days after discovering the existence of such Utility Company, (i) file a supplement to Exhibit A which supplement shall identify the Utility Company and the amount of the Adequate Assurance Deposit the Debtors propose to issue to such Utility Company; and (b) serve such Utility Company with notice of entry and a copy of the Interim Order.

(f)     In the event that a Utility Company not listed on Exhibit A to the Utilities Motion objects to the Debtors' proposal to provide adequate assurance of payment, such Utility Company must file and serve on counsel for the Debtors an Objection within fourteen (14) days after the date upon which it receives notice of entry of the Interim Order.  A hearing on such Objection will be set by the Court no sooner than seven (7) days after the date upon which such Objection has been filed.  The Debtors may file and serve a reply to any such Objection on or before the date that is two (2) days prior to such hearing date.

(g)     All Utility Companies will be deemed to have received adequate assurance of payment in accordance with section 366, without the need for an additional deposit or other security, until the Court enters an order to the contrary.  Any Utility Company that fails to file a timely Objection shall be deemed to be satisfied that the Utility Deposit Account provides adequate assurance of payment for future services within the meaning of Section 366(c)(2).

6.     In the event that no timely Objections are filed, this Interim Order shall be deemed a Final Order and immediately effective as a Final Order, without further notice or hearing on the Utilities Motion.

7.     The Debtors shall serve this Interim Order upon each of the Utility Companies listed on Exhibit A to the Utilities Motion, at the addresses listed thereon, by first-class mail, postage prepaid, promptly within three business days after the entry of this Interim Order.

8.      The inclusion or exclusion of any entity on or from Exhibit A to the Utilities Motion or on or from any amended Exhibit A shall not constitute an admission that such entity is or is not a "utility" within the meaning of section 366.  This Interim Order specifically reserves the Debtors' right to argue that (a) any of the entities listed on Exhibit A to the Utilities Motion or any amended Exhibit A is not a "utility" within the meaning of section 366; and (b) any such entity is compelled by contractual obligation, federal, state or local law, or otherwise, to continue to furnish services to the Debtors notwithstanding the Debtors' filing of their Chapter 11 Cases.

9.      Nothing in this Interim Order or the Utilities Motion shall be deemed to vacate or modify any other restrictions on the termination of service by a Utility Company as provided by sections 362 and 365 or other applicable law and nothing herein or in the Utilities Motion shall constitute postpetition assumption or adoption of any agreement pursuant to section 365. Nothing in this Interim Order shall be deemed a waiver by the Debtors or any other party of any right with respect to the assumption or rejection of an executory contract.

10.     The Debtors are authorized to pay on a timely basis in accordance with their prepetition practices all undisputed invoices in respect of postpetition Utility Services rendered by the Utility Companies to the Debtors as well as the most recent invoice received from the Utility Companies, even if a portion of the period covered by the invoice is for the pre-Petition Date period.

11.     The relief granted herein and any payments to be made pursuant to this Interim Order are subject to the terms of any orders approving debtor-in-possession financing or use of cash collateral, including without limitation, the Interim DIP Order, and to the extent that any inconsistency exists between the terms of such orders and this Interim Order, the terms of such orders approving debtor-in-possession financing or use of cash collateral shall control.

12.      To the extent applicable, the requirements of Bankruptcy Rule 6004(a) are waived.

13.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof

14.      This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Interim Order.