**LOEB & LOEB LLP**
Schuyler G. Carroll
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
        dbesikof@loeb.com
        nweingarten@loeb.com

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | Chapter 11 |
| ) | |
| ) | Case No. 19-45422 |
| ) | Case No. 19-45423 |
| In re: ) | Case No. 19-45424 |
| ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al*. ) | Case No. 19-45426 |
| ) | Case No. 19-45427 |
| Debtors.[1] ) | Case No. 19-45428 |
| ) | Case No. 19-45429 |
| ) | |
| ) | (Joint Administration Requested) |
| ) | |

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USING**
**THEIR CASH MANAGEMENT SYSTEM AND (B) MAINTAIN EXISTING BANK**
**ACCOUNTS AND BUSINESS FORMS; (II) WAIVING CERTAIN DEPOSIT**
**GUIDELINES; AND (III) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke ("**Orchard Brooke**"), (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

By this Motion (this "**Motion**"), the above-captioned debtors (the "**Debtors**"), as debtors and debtors-in-possession herein, request the entry of interim and final orders, substantially in the form attached hereto, (a) authorizing, but not directing, the Debtors to (i) maintain and continue using the Cash Management System (as hereinafter defined) to the extent described herein and honor certain prepetition obligations related thereto and (ii) maintain existing bank accounts as described herein and continue using existing checks, business forms, and records; (b) granting the Debtors a waiver of certain bank account and related requirements of (i) the United States Trustee for the Eastern District of New York (the "**U.S. Trustee**") set forth in the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "**Guidelines**") and (ii) Bankruptcy Code section 345, in each case to the extent such requirements are inconsistent with any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Debtors' bankruptcy cases; and (c) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.    On September 10, 2019 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above captioned cases (the "**Chapter 11 Cases**"). The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy

Code §§ 1107 and 1108.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases.

3.      An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases.  Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

4.      A detailed description of the Debtors and their business, the facts and circumstances leading up to the filing of the Debtors' Chapter 11 Cases, and the facts supporting this Motion are set forth in greater detail in the *Declaration of Michael Wyse in Support of Debtors' Chapter 11 Petitions and First-Day Motions* (the "**First Day Declaration**"), which is being filed concurrently herewith and is incorporated by reference in this Motion.

## CASH MANAGEMENT SYSTEM

**I.      Overview**

5.      The Debtors' cash management system (the "**Cash Management System**") consists of approximately 31 bank accounts that are maintained with CFG Community Bank ("**CFG**"), Community Bank, N.A. (**"Community Bank"**) and M&T Bank ("**M&T**").  The Debtors also maintain approximately 28 additional patient trust and other trust accounts (the "**Trust Accounts**") with CFG, Community Bank, M&T, Key Bank N.A. ("**Key**" and collectively with CFG, Community Bank and M&T, the "**Banks**"), and Direct Deposit Management Service ("**DDMS**").[2]  All of the Debtors' accounts maintained with the Banks are insured by the Federal Deposit Insurance Corporation ("**FDIC**").  DDMS is not a bank, but it does affiliate with banks and, upon information and belief, maintains all accounts in an FDIC ensured depository.  A list

---

[2] DDMS is a direct deposit management service operated through National Datacare Corporation which is used to manage resident funds.  Please refer to the following link to the company website for additional information: https://www.nationaldatacare.com/products/resident-fund-management-service/

of the Debtors' bank accounts that form the Cash Management System, as well as a list of the Trust Accounts, are set forth on **Exhibit 1** to the Interim Order (each a "**Debtor Account**" and collectively, the "**Debtor Accounts**").

6.     The Debtors utilize the well-established and efficient mechanisms of the Cash Management System for the collection, concentration, management, and disbursement of funds used in their business activities. The Cash Management System is comparable to centralized cash management systems used by similarly situated companies to manage the cash of operating units in a cost-effective, efficient manner. The Debtors use the Cash Management System in the ordinary course of business to collect, transfer, and disburse funds generated from their business activities and to facilitate cash monitoring, forecasting, and reporting.

7.     The Debtors maintain daily oversight over the Cash Management System and implement cash management controls for processing and releasing funds. Additionally, the Debtors regularly reconcile their books and records to ensure that all transfers have appropriate authorizations and accounting. With the assistance of their advisors, the Debtors have implemented internal procedures to control or prohibit payments on prepetition debts without the prior approval of this Court and the Debtors' management.

## II.     The Debtors' Depository, Collection, Operating and Payroll/Payable Accounts.

8.     The Debtors' Accounts are composed of the following:

- Depository Accounts: The Debtors maintain three lockbox depository accounts for each of the operating Debtor facilities, other than for the Orchard Brooke facility, which is addressed separately (the "**Depository Accounts**"). All of the Debtors' receipts (other than relating to Orchard Brooke) are deposited into the applicable Debtor's Depository Accounts. One of the three Depository Accounts for each facility is maintained at M&T, and the other two are maintained at CFG. Of the two CFG Depository Accounts, one is used to receive payments from governmental payors (*e.g.*, Medicare and Medicaid), and the other is used to receive private payments. Historically, the Debtors used the Depository Accounts at M&T as their sole Depository Accounts. More recently, the Debtors have opened the CFG Depository Accounts. The M&T Depository Accounts are

used primarily to receive payments from payors that have not yet redirected payment to the CFG Depository Accounts.

- Collection Accounts:  The Debtors also maintain four lockbox accounts used as collection or concentration accounts (the "**Collection Accounts**") in the name of Debtor Absolut Facilities Management, LLC ("**AFM**").  Two of the Collection Accounts are maintained at M&T, and the other two are maintained at CFG.  All of the funds deposited in the Depository Accounts maintained at M&T are swept on a daily basis by Capital Finance Group.  Likewise, all of the funds deposited into the Depository Accounts at CFG are swept into the CFG Collection Accounts on a daily basis.  At each of M&T and CFG, AFM maintains one HUD Collection Account, into which all of the receipts for the Debtors' facilities other than Westfield and Orchard Brooke are swept.  AFM also maintains one non-HUD Collection account at each of those institutions, into which the Westfield receipts are swept.  All of the funds swept into the Collection Accounts are swept on a daily basis by Capital Finance Group, the Debtors' prepetition receivables lender.  All cash paid to any of the Debtors other than Orchard Brooke and AFM ultimately is swept by Capital Finance Group.

- Operating Accounts:  AFM further maintains two operating accounts – one HUD and one non-HUD – at M&T (the "**Operating Accounts**").  The Operating Accounts are funded by draws under the Debtors' receivables credit facilities with CFG.  In addition, all receipts from Orchard Brooke and AFM are deposited directly into the non-HUD Operating Account.  The Operating Accounts fund the Debtors' obligations.

- Payroll Accounts/Payable Accounts:  Finally, AFM maintains one HUD and one non-HUD payroll and one HUD and one non-HUD accounts payable accounts at M&T (the "**Payroll/Payable Accounts**").  The Payroll/Payable Accounts are used to fund the Debtors' payroll and accounts payable.  The Payroll/Payable Accounts are "zero balance" accounts, meaning that no amounts are maintained in those accounts.  Rather, as checks and wire transfers clear from the Payroll/Payable Accounts, an equivalent sum of money is transferred from the corresponding HUD or non-HUD Operating Account to fund that check or wire.

9.    Because the Debtors accept Medicare and Medicaid payments, the Bank Accounts are subject to certain restrictions.  Specifically, anti-assignment rules require Medicare and Medicaid payments to be made only to a bank account that is under the sole control of the healthcare provider, and any governmental payments must be made into a lockbox account.  If Medicare or Medicaid receivables were assigned to another account, such assignment could violate the anti-assignment rules and result in the termination of the provider agreement.

10. As of and after the Petition Date, the Collection Accounts will no longer be used, as there will be no further sweeps by CFG and no further borrowing under the CFG credit facilities. Accordingly, the Debtors intend to have all funds deposited into the Depository Accounts swept on a daily basis to the Operating Accounts, which, as noted above, are maintained at M&T.

**III.        The Debtors' Patient Trust Accounts.**

11. The Debtors also maintain 28 Trust Accounts for the benefit of their patients. Five Trust Accounts are maintained at M&T; six Trust Accounts are maintained at Community Bank; seven Trust Accounts are maintained at Key; and twelve Trust Accounts are maintained at DDMS.

12. The patients, or a third party on behalf of the patients, deposit funds into these accounts, which the Debtors hold in trust for the benefit of their patients. The patients use those funds for incidental expenses incurred in the Debtors' facilities and have access to those funds to use as spending money. These patient funds are for all purposes property of the Debtors' patients – not the Debtors or their estates.

13. There are several types of Trust Accounts. While they have slightly different uses, all hold patient funds, rather than property of the estate, and all are held in trust for the benefit of the Debtors' patients. A description of the different Trust Accounts is set forth below:

- Checking/Savings accounts maintained at the Banks:  These Trust Accounts are checking and savings accounts that hold patient money in savings and for spending by the Debtors' patients. Through these accounts, the Debtors' patients can pay for expenses and incidentals.

- Resident Council accounts maintained at the Banks:  These are collective accounts where patient funds are deposited for general welfare and expenses that benefit the residents as a group (e.g., pooled patient contributions or fees for group activities, events, and other general use items like a community computer.

- <u>Trust account maintained at DDMS</u>:  To be eligible to use an account at DDMS the patient must be the recipient of a recurring governmental benefit payment.  Those payments are deposited in to the DDMS "trust" account for the benefit of the applicable patients.

- <u>Care account maintained at DDMS</u>:  These accounts house patients' room and board expenses, and direct deposits to a patient's DDMS trust account automatically have room and board liabilities transferred to the care accounts (which are then swept regularly to the Debtors).

- <u>General Trust Account</u>:  This account, maintained by AFM, serves as a collective account for residents who don't utilize DDMS for their recurring Social Security deposits.  Funds received into this account are transferred to the appropriate facility and applied to individual patient balances in their other Trust Accounts.

**IV.**      **Compliance with Section 345(b) of the Bankruptcy Code and the Guidelines**

14.      Each of the Debtors' Accounts, other than the Trust Accounts maintained at DDMS, are maintained at a bank that is insured by the FDIC, and therefore, each account complies with section 345(b) of the Bankruptcy Code.  Because Section 345 of the Bankruptcy Code applies to property of the estate, and because the Trust Account proceeds are not estate property, the Debtors assert that the Trust Accounts, including the Trust Accounts maintained at DDMS need not comply with Section 345.

15.      The Guidelines require chapter 11 debtors to, among other things, deposit all estate funds into a new debtor-in-possession bank account that is insured by the FDIC and on the U.S. Trustee's approved depository list.

16.      In an effort to avoid unnecessary costs and administrative inconvenience, the Debtors have not opened new bank accounts.  However, each of the Debtors' existing bank accounts (other than the DDMS accounts, which again do not hold estate property) is insured by the FDIC.  Moreover, the Debtors do seek to maintain their prepetition Depository Accounts and the Trust Accounts, despite that certain of those are maintained at CFG, which is not a depository that is on the U.S. Trustee's approved list.

17.     The Debtors respectfully request that the Court authorize the Banks and DDMS to continue to maintain, service, and administer the Debtors' Accounts, as debtor-in-possession accounts, without interruption and in the ordinary course of business, notwithstanding that each account existed prepetition and that certain of the Debtors' Accounts are maintained at non-approved depositories.   Closing the Debtors' existing accounts and opening new debtor-in-possession accounts would unnecessarily utilize the Debtors' time and resources to the detriment of their estates, their creditors, and all parties-in-interest.   Likewise, with respect to the Depository Accounts and the Trust Accounts, it would take substantial time for the payors into those accounts to migrate their payments to new accounts.   During that time, if the Depository Accounts and the Trust Accounts were closed, the Debtors would miss out on much needed collections and the Debtors' patients would be left without access to their spending money, all to the detriment of the Debtors' estates and patients.   Finally, any potential risk of maintaining the Depository Accounts will be mitigated because, each day, the cash in the Depository Accounts will be swept into the Operating Accounts, which are maintained at a U.S. Trustee approved depository – M&T.

18.     Based on the foregoing, the Debtors respectfully submit that cause exists to allow the Debtors to maintain their existing bank accounts during the pendency of these Chapter 11 Cases, as described herein.

## V.     Business Forms

19.     As part of their Cash Management System, the Debtors utilize numerous preprinted business forms in the ordinary course of businesses.   To minimize expenses to their estate and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of these Chapter 11 Cases, the Debtors request that the Court authorize the Debtors' continued use of all preprinted correspondence and business forms (including, without

limitation, letterhead, purchase orders, invoices, and preprinted checks) (collectively, the "**Business Forms**") as such forms were in existence immediately before the Petition Date (and without reference to the Debtors' status as debtors in possession) rather than requiring the Debtors to incur the expense and delay of ordering new Business Forms.

## RELIEF REQUESTED

20.     By this Motion, the Debtors request entry of the Interim Order and the Final Order, substantially in the forms attached hereto (a) authorizing, but not directing, the Debtors to (i) maintain and continue using their Cash Management System, as modified herein, and honor certain prepetition obligations related thereto and (ii) maintain their existing bank accounts and continue using existing checks, business forms, and records; (b) granting the Debtors a waiver of certain bank account and related requirements of (i) the Guidelines and (ii) Bankruptcy Code section 345, in each case to the extent such requirements are inconsistent with any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Debtors' bankruptcy cases; and (c) granting related relief.

21.     The Debtors further request the Court schedule a hearing (the "**Final Hearing**") as soon as practicable after the 21st day following the entry of the Interim Order to consider approval of the relief requested on a final basis and establish the date that is seven (7) days prior to the Final Hearing as the deadline for parties to file objections to the Motion.

## BASIS FOR RELIEF REQUESTED

I.     **The Court Should Approve the Debtors' Continued Use of the Cash Management System, as Modified Herein**

A.     **The Continued Use of the Debtors' Cash Management System, as Modified Herein, Is Essential to the Debtors' Operations and Restructuring Efforts**

22.     The Cash Management System constitutes an ordinary course and essential business practice of the Debtors.  The Cash Management System provides significant benefits to

the Debtors including, among other things, ensuring the availability of funds when necessary, and reducing costs and administrative expenses to the estates by facilitating the movement of funds and ensuring timely and accurate account balance information. Thus, to ensure the seamless operation of the Debtors' business and realize the benefits of the Cash Management System, the Debtors should be allowed to continue using the Cash Management System, as modified herein, and should not be required to open new bank accounts.

23.    The Guidelines, unless otherwise ordered by the Court, require a debtor to close all existing bank accounts and open new debtor-in-possession accounts, to maintain a separate debtor-in-possession account for cash collateral, to obtain checks that bear the designation "debtor in possession," and to reference the bankruptcy case number and the type of account on such checks. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Strict enforcement of the Guidelines in these cases, however, would severely disrupt the ordinary financial operations of the Debtors by reducing efficiencies, depriving the Debtors of substantial revenues and causing unnecessary expenses.

24.    In accordance with existing practices, the Debtors request authority to: (a) continue to use and administer their bank accounts in existence on the Petition Date; (b) treat their existing bank accounts as debtor-in-possession accounts; and (c) conduct all banking and investment transactions by usual means and debit the existing bank accounts for all usual items and payment instructions, including checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on such accounts. The Debtors will maintain strict records of all receipts and disbursements from their accounts during

the pendency of these cases, thereby ensuring that the Debtors properly distinguish between prepetition and postpetition transactions. Moreover, the Debtors will work with their staff and advisors to ensure that any checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent further approval from the Court.

25.    Unless otherwise ordered by this Bankruptcy Court, the Debtors' Banks should not be required to honor or pay any check issued on account of a pre-petition claim. The Debtors' Banks may honor any checks issued on account of pre-petition claims where this Bankruptcy Court has specifically authorized such checks to be honored. Furthermore, notwithstanding anything to the contrary in any other "First Day" order or other order of this Court, the Debtors request that the Debtors' Banks be authorized to accept and honor all representations from the Debtors as to which checks should be honored or dishonored consistent with any order(s) of this Bankruptcy Court, whether or not the checks are dated prior to, on, or subsequent to the Petition Date. With that authorization in place, the Debtors' Banks should not be liable to any party on account of following the Debtors' instructions or representations regarding which checks should be honored. The Debtors' Banks should also be permitted to accept and process chargebacks against the Debtors' Accounts arising out of returned deposits into such accounts without regard to the date such return item was deposited. The Debtors also seek authority to continue to pay all ordinary course Bank Fees in accordance with agreements governing the bank accounts, whether arising prepetition or postpetition.

26.    A waiver of the Guidelines' requirement that the Debtors use only depositories that are on the U.S. Trustee's approved depository list is also appropriate here. As noted above, requiring the Debtors to close the Depository Accounts and the Trust Accounts that are not at

U.S. Trustee approved depositories and open new accounts would cause substantial prejudice to the Debtors, their estates and their patients.

27.     The Depository Accounts are critical to the continued operations and liquidity of the Debtors.  All of their receipts (with the exception of the receipts of Orchard Brooke and AFM, which are deposited into the non-HUD Operating Account) are deposited into the Depository Accounts, and most of those funds are deposited into the CFG Depository Accounts. If the Debtors were forced to close the Depository Accounts, there would be massive disruption to their ability to collect revenues.  It would take a great deal of time for the payors into the Depository Accounts to migrate payment to new accounts.  Indeed, the Debtors opened the CFG Depository Accounts in August 2018 to replace the M&T Depository Accounts, yet to this day substantial revenues are still deposited in the M&T Depository Accounts by payors who have not yet transferred payment.  Even a modest interruption in the Debtors' efforts to collect cash would be disastrous for the Debtors and their stakeholders.  Finally, all of the cash in the Depository Accounts will be swept each day into the Operating Accounts at M&T, which is an approved depository.  No cash will spend even a single night in an account not maintained at a U.S. Trustee approved depository.

28.     The Debtors' patients would also face substantial prejudice if the Debtors were forced to close and replace the Trust Accounts.  The Debtors' patients rely on the Trust Accounts to access their spending money.  Certain amounts are deposited by Medicare and Medicaid as well as through private contributions.  If the Trust Accounts were forced to close, receipt of payments into new Trust Accounts would be delayed, which would cause substantial prejudice to the Debtors' patients, who would not be able to obtain access to their funds.  Since these funds

are not property of the estate, there is also no potential consequence to the estates' creditors of the funds being maintained in the existing Trust Accounts.

29.    The Debtors further request authority to implement reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including closing any of the bank accounts or opening any new accounts wherever the Debtors deem that such accounts are needed or appropriate.  Any new account that the Debtors open will be: (a) with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC; and (b) designated a "debtor in possession" or "DIP" account by the relevant bank.  The Debtors shall provide ten (10) days' prior notice to the U.S. Trustee and counsel to any official committee appointed in this case before the Debtors open a new account or close any existing account.

30.    The Debtors' continued ordinary course maintenance of the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The authority granted by section 363(c)(1) extends to a debtor in possession's continued use of its customary cash management system, and thus, supports the relief requested.  *See Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtors to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1)).  A centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticabilit[y] of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992).  The United States Court of Appeals for the Third Circuit has agreed,

emphasizing that requiring debtors to maintain separate accounts "would be a huge administrative burden and [be] economically inefficient." *Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1061 (3d Cir. 1993); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtors "to administer more efficiently and effectively its financial operations and assets").

31.     Additionally, section 105(a) of the Bankruptcy Code vests in the Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32.     The Debtors submit that the relief requested is reasonable and ordinary and similar relief is routinely approved in chapter 11 cases in this Circuit. *See, e.g.*, *In re Cenveo, Inc.*, Case No. 18-22178 (RDD) [D.I. 183] (Bankr. S.D.N.Y. March 8 2018); *In re Dowling College*, Case No. 16-75545 (REG) [D.I. 69] (Bankr. E.D.N.Y. December 16, 2016) (authorizing debtors to maintain prepetition cash management system during the pendency of their chapter 11 cases); *In re Federation Employment and Guidance Service, Inc. d/b/a FEGS*, Case No. 15-71074 (REG) [D.I. 175] (Bankr. E.D.N.Y. April 24, 2015) (same); *In re Personal Communications Devices, LLC*, Case No. 13-74303 (AST) [D.I. 102] (Bankr. E.D.N.Y. September 10, 2013) (same); *In re Interfaith Medical Center, Inc.*, Case No. 12-48226 (CEC) [D.I. 148] (Bankr. E.D.N.Y. February 14, 2013) (same); *In re Global Aviation Holdings Inc.*, Case No. 12-40783 (CEC) [D.I. 193] (Bankr. E.D.N.Y. March 8, 2012) (same).

**B.     The Court Should Authorize the Debtors to Continue Using Existing Business Forms**

33.     To minimize unnecessary expense and delay, the Debtors also request authority to continue to use the existing Business Forms. The Debtors submit that authorization to use the

Business Forms will minimize disruption to the Debtors' business affairs and save the unnecessary expense and delay of ordering entirely new forms as required under the Guidelines. If the Debtors exhaust their existing supply of Business Forms during these Chapter 11 Cases, the Debtors will transition to using forms with the designation "debtor in possession" and the corresponding bankruptcy number.

34.     Courts in this Circuit and others have allowed debtors to use their prepetition business forms under similar circumstances.  *See, e.g.*, *id.*

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED

35.     Bankruptcy Rule 6003 provides that, to the extent that relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the Petition Date.  Fed. R. Bankr. P. 6003.  As described in the First Day Declaration, the Debtors would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

36.     The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(a), certain interested parties must receive 21 days' notice by mail of the "proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice."  Fed. R. Bankr. P. 2002(a)(2).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## NO PREVIOUS REQUEST

37.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

## NOTICE

38.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading, including the Banks; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Lender; (vi) the consolidated 30 largest unsecured creditors of the Debtors; and (vii) all governmental agencies having a regulatory or statutory interest in these cases. No other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:   September 10, 2019                    LOEB & LOEB LLP
         New York, New York

                                              */s/ Schuyler G. Carroll*

                                              Schuyler G. Carroll
                                              Daniel B. Besikof
                                              Noah Weingarten
                                              345 Park Avenue
                                              New York, NY 10154
                                              Tel: (212) 407-4000
                                              Fax: (212) 407-4990
                                              scarroll@loeb.com
                                              dbesikof@loeb.com
                                              nweingarten@loeb.com

                                              *Proposed Counsel to the Debtors*
                                              *and Debtors-in-Possession*

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-45422 |
| | ) | Case No. 19-45423 |
| In re: | ) | Case No. 19-45424 |
| | ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45426 |
| | ) | Case No. 19-45427 |
| Debtors.[1] | ) | Case No. 19-45428 |
| | ) | Case No. 19-45429 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
USING THEIR CASH MANAGEMENT SYSTEM AND (B) MAINTAIN
EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (II) WAIVING
CERTAIN DEPOSIT GUIDELINES; AND (III) GRANTING RELATED RELIEF

On September ___, 2019, the Court conducted a hearing to consider the Debtors'

Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using

Their Cash Management System and (B) Maintain Existing Bank Accounts and Business Forms;

(II) Waiving Certain Deposit Guidelines; and (III) Granting Related Relief (the "**Cash**

**Management Motion**")[2] filed by the above-captioned debtors (the "**Debtors**").  The Court finds

that: (i) it has jurisdiction over the matters raised in the Cash Management Motion pursuant to 28

U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke ("**Orchard Brooke**"), (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2] Capitalized terms used but not defined shall have the meaning ascribed to them in the Cash Management Motion.

18147379

of these Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Cash Management Motion is in the best interests of the Debtors, their estates, and their creditors; (v) proper and adequate notice of the Cash Management Motion has been given and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, IT IS HEREBY ORDERED THAT:

1.      The Cash Management Motion is GRANTED on an interim basis.

2.      The Debtors are authorized to maintain the Cash Management System in accordance with their prepetition practices, as described and as modified in the Cash Management Motion, except as otherwise set forth herein.

3.      The Banks at which the Depository Accounts are maintained are authorized and directed to permit the Debtors to sweep the contents of the Depository Accounts not less than once daily into the Operating Accounts as described in the Motion.

4.      The Debtors are authorized but not directed to maintain their existing Bank Accounts (including for the avoidance of doubt, the Depository Accounts and the Trust Accounts not maintained at a U.S. Trustee approved depository) on an interim basis, including but not limited to, the deposit or withdrawal of funds by all usual means, including checks, wire transfers, ACH transfers, and other debits, and to treat their accounts as debtor in possession accounts for all purposes.

5.      The Debtors are authorized to open any new bank accounts or close any existing accounts as they may deem necessary and appropriate in their sole discretion; provided, however, that the Debtors shall provide ten (10) days' prior notice to the U.S. Trustee for the Eastern District

2

of New York and counsel to any official committee appointed in this case before the Debtors open a new account or close any existing account; provided further, however, that the Debtors shall open any such new bank account only if such account is (a) with a bank that is organized under the laws of the United States of America and that is insured with by the FDIC; and (b) designated a "debtor in possession" or "DIP" account by the relevant bank.

6.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms existing immediately before the Petition Date; provided that, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtors in Possession" and the bankruptcy case number on all checks; and provided further that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtors in Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Interim Order.

7.      All Banks at which the Debtors' existing accounts are maintained are directed to continue to service and administer the accounts without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH transfers issued after the Petition Date and drawn on the accounts after the Petition Date by the holders or makers thereof, as the case may be, and shall receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH transfers issued before the Petition Date but presented to such Bank for payment after the Petition Date to the extent instructed to do so by the Debtors.

8.      Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored pursuant to an order of the Court, the Debtors shall not instruct or request any Bank to pay or honor any check, draft, or other payment item issued prior to the Petition Date but presented to such Bank for payment after the Petition Date.

3

9.        As soon as practicable after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

10.       The requirement to establish separate accounts for tax payments is hereby waived.

11.       The Debtors and the Banks may, without further order of the Court, agree and implement non-material changes to the Cash Management System and procedures in the ordinary course of business as set forth in this Interim Order.

12.       Notwithstanding any other provision of this Interim Order, should a Bank honor a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, the Bank shall not be liable to the Debtors or their estates or otherwise be in violation of this Interim Order.

13.       A final hearing to consider the relief requested in the Motion shall be held on _____, 2019 at _____ (Eastern Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to _____ __, 2019 at 4:00 p.m. (Eastern Time), and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10583 (Attn: Schuyler G. Carroll, Esq.), scarroll@loeb.com; (b) the U.S. Trustee for the Eastern District of New York (Attn:_____Esq.); and, if applicable, (c) counsel to any statutory committees appointed in these Chapter 11 Cases.

18147379

14.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtor; (b) a waiver of the Debtors' rights to subsequently dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) to grant third-party beneficiary status or bestow any additional rights on any third party; or (g) to be otherwise enforceable by any third party.

15.    The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

16.    The notice of the relief requested in the Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Interim Order shall be immediately effective and enforceable upon its entry.

17.    The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Interim Order.

18.    The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Interim Order.

18147379

**Exhibit 1**

**Debtors' Accounts**

| Debtor | Bank | Account Name | Account No. |
|---|---|---|---|
| Aurora Park | CFG Community Bank | Governmental Depository Account | xxxxx712 |
| Aurora Park | CFG Community Bank | Non-Governmental Depository Account | xxxxx720 |
| Orchard Park | CFG Community Bank | Governmental Depository Account | xxxxx738 |
| Orchard Park | CFG Community Bank | Non-Governmental Depository Account | xxxxx746 |
| Allegany | CFG Community Bank | Governmental Depository Account | xxxxx753 |
| Allegany | CFG Community Bank | Non-Governmental Depository Account | xxxxx761 |
| Three Rivers | CFG Community Bank | Governmental Depository Account | xxxxx779 |
| Three Rivers | CFG Community Bank | Non-Governmental Depository Account | xxxxx787 |
| Gasport | CFG Community Bank | Governmental Depository Account | xxxxx795 |
| Gasport | CFG Community Bank | Non-Governmental Depository Account | xxxxx803 |
| Westfield | CFG Community Bank | Governmental Depository Account | xxxxx811 |
| Westfield | CFG Community Bank | Non-Governmental Depository Account | xxxxx829 |
| AFM | CFG Community Bank | HUD Master Account | xxxxx371 |
| Aurora Park | M&T Bank | Depository Account | xxxxxxx749 |
| Orchard Park | M&T Bank | Depository Account | xxxxxxx731 |
| Three Rivers | M&T Bank | Depository Account | xxxxxxx254 |
| Westfield | M&T Bank | Depository Account | xxxxxxx343 |
| Allegany | M&T Bank | Depository Account | xxxxxxx327 |
| Gasport | M&T Bank | Depository Account | xxxxxxx247 |
| Allegany | CFG Community Bank | Depository E-State | xxxxxxx634 |
| Westfield | CFG Community Bank | Depository E-State | xxxxxx466 |
| Absolut Facilities Management | M&T Bank | HUD Operating Account | xxxxxxx091 |
| Absolut Facilities Management | M&T Bank | HUD Payables Account | xxxxxxxxxxx837 |
| Absolut Facilities | M&T Bank | HUD Payroll | xxxxxxx083 |

| Debtor | Bank | Account Name | Account No. |
|---|---|---|---|
| Management | | Account | |
| Absolut Facilities Management | M&T Bank | HUD Collection Account | xxxxxxx265 |
| Absolut Facilities Management | M&T Bank | Non-HUD Operating Account | xxxxxxx079 |
| Absolut Facilities Management | M&T Bank | Non-HUD Payables Account | xxxxxxxxxxx953 |
| Absolut Facilities Management | M&T Bank | Non-HUD Payroll Account | xxxxxxx095 |
| Absolut Facilities Management | M&T Bank | Non-HUD Collection Account | xxxxxxx595 |
| Absolut Facilities Management | M&T Bank | Medical Account | xxxxxxx426 |
| Absolut Facilities Management | M&T Bank | Res Trust Account | xxxxxxx087 |

**Trust Accounts**

| Debtor | Bank | Account Name | Account No. |
|---|---|---|---|
| Aurora Park | Key Bank | Checking | xxxxx 2181 |
| Aurora Park | Key Bank | Savings | xxxxx2709 |
| Orchard Park | Key Bank | Checking | xxxxx2165 |
| Orchard Park | Key Bank | Savings | xxxxx2369 |
| Orchard Park | Key Bank | Resident Council | xxxxx2670 |
| Westfield | Key Bank | Checking | xxxxx8668 |
| Westfield | Key Bank | Savings | xxxxx1421 |
| Allegany | Community Bank | Checking | xxxxx1053 |
| Allegany | Community Bank | Savings | xxxxx2095 |
| Allegany | Community Bank | Resident Council | xxxxx1061 |
| Westfield | Community Bank | E-State | xxxxx9563 |
| Three Rivers | M&T Bank | Checking | Xxxxxxx3206 |
| Three Rivers | M&T Bank | Savings | Xxxxxxx0083 |
| Gasport | M&T Bank | Checking | Xxxxxxx6087 |
| Gasport | M&T Bank | Savings | Xxxxxxx6945 |
| Absolut Facilities Management | M&T Bank | Resident Trust-General | Xxxxxxx5087 |
| Aurora Park | DDMS | Trust | Xxxxxxx9388 |
| Aurora Park | DDMS | Care | Xxxxxxx2978 |
| Orchard Park | DDMS | Trust | Xxxxxx2666 |
| Orchard Park | DDMS | Care | Xxxxxxx2658 |
| Three Rivers | DDMS | Trust | Xxxxxxxxxxx2948 |
| Three Rivers | DDMS | Care | Xxxxxxx2914 |
| Westfield | DDMS | Trust | xxxxx 2864 |
| Westfield | DDMS | Care | Xxxxx2849 |

| Debtor | Bank | Account Name | Account No. |
|--------|------|--------------|-------------|
| Allegany | DDMS | Trust | Xxxxx2831 |
| Allegany | DDMS | Care | Xxxxx2799 |
| Gasport | DDMS | Trust | Xxxxx2815 |
| Gasport | DDMS | Care | Xxxxx2807 |

18147379

**<u>Proposed Final Order</u>**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-45422 |
| | ) | Case No. 19-45423 |
| In re: | ) | Case No. 19-45424 |
| | ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45426 |
| | ) | Case No. 19-45427 |
| Debtors.[1] | ) | Case No. 19-45428 |
| | ) | Case No. 19-45429 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
USING THEIR CASH MANAGEMENT SYSTEM AND (B) MAINTAIN
EXISTING BANK ACCOUNTS AND BUSINESS FORMS; (II) WAIVING
CERTAIN DEPOSIT GUIDELINES; AND (III) GRANTING RELATED RELIEF**

On September __, 2019, the Court conducted a final hearing to consider the Debtors'

Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using

Their Cash Management System and (B) Maintain Existing Bank Accounts and Business Forms;

(II) Waiving Certain Deposit Guidelines; and (III) Granting Related Relief (the "**Cash

Management Motion**")[2] filed by the above-captioned debtors (the "**Debtors**").  The Court finds

that: (i) it has jurisdiction over the matters raised in the Cash Management Motion pursuant to 28

U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke ("**Orchard Brooke**"), (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]  Capitalized terms used but not defined shall have the meaning ascribed to them in the Cash Management Motion.

18144337

of these Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Cash Management Motion is in the best interests of the Debtors, their estates, and their creditors; (v) proper and adequate notice of the Cash Management Motion has been given and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Therefore, IT IS HEREBY ORDERED THAT:

1. The Cash Management Motion is GRANTED on a final basis.

2. The Debtors are authorized to maintain the Cash Management System in accordance with their prepetition practices, as described and as modified in the Cash Management Motion, except as otherwise set forth herein.

3. The Banks at which the Depository Accounts are maintained are authorized and directed to permit the Debtors to sweep the contents of the Depository Accounts not less than once daily into the Operating Accounts as described in the Motion.

4. The Debtors are authorized but not directed to maintain their existing Bank Accounts (including for the avoidance of doubt, the Depository Accounts and the Trust Accounts not maintained at a U.S. Trustee approved depository) on a final basis, including but not limited to, the deposit or withdrawal of funds by all usual means, including checks, wire transfers, ACH transfers, and other debits, and to treat their accounts as debtor in possession accounts for all purposes.

5. The Debtors are authorized to open any new bank accounts or close any existing accounts as they may deem necessary and appropriate in their sole discretion; provided, however, that the Debtors shall provide ten (10) days' prior notice to the U.S. Trustee for the Eastern District of New York and counsel to any official committee appointed in this case before the Debtors open

2

a new account or close any existing account; provided further, however, that the Debtors shall open any such new bank account only if such account is (a) with a bank that is organized under the laws of the United States of America and that is insured with by the FDIC; and (b) designated a "debtor in possession" or "DIP" account by the relevant bank.

6.       The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms existing immediately before the Petition Date; provided that, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtors in Possession" and the bankruptcy case number on all checks; and provided further that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtors in Possession" legend and the bankruptcy case number on such items upon entry of this Final Order.

7.       All Banks at which the Debtors' existing accounts are maintained are directed to continue to service and administer the accounts without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH transfers issued after the Petition Date and drawn on the accounts after the Petition Date by the holders or makers thereof, as the case may be, and shall receive, process, honor, and pay any and all checks, drafts, wire transfers, and ACH transfers issued before the Petition Date but presented to such Bank for payment after the Petition Date to the extent instructed to do so by the Debtors.

8.       Except for those checks, drafts, wires, or other ACH transfers that are authorized or required to be honored pursuant to an order of the Court, the Debtors shall not instruct or request any Bank to pay or honor any check, draft, or other payment item issued prior to the Petition Date but presented to such Bank for payment after the Petition Date.

18144337

9.      As soon as practicable after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Banks.

10.     The requirement to establish separate accounts for tax payments is hereby waived.

11.     The Debtors and the Banks may, without further order of the Court, agree and implement non-material changes to the Cash Management System and procedures in the ordinary course of business as set forth in this Final Order.

12.     Notwithstanding any other provision of this Final Order, should a Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, the Bank shall not be liable to the Debtors or their estates or otherwise be in violation of this Final Order.

13.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtors; (b) a waiver of the Debtors' rights to subsequently dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code;  (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) to grant third-party beneficiary status or bestow any additional rights on any third party; or (g) to be otherwise enforceable by any third party.

18144337

14.      The notice of the relief requested in the Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Final Order shall be immediately effective and enforceable upon its entry.

15.      The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Final Order.

16.      The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Final Order.

18144337

**Exhibit 1**

**Debtors' Accounts**

| Debtor | Bank | Account Name | Account No. |
|---|---|---|---|
| Aurora Park | CFG Community Bank | Governmental Depository Account | xxxxx712 |
| Aurora Park | CFG Community Bank | Non-Governmental Depository Account | xxxxx720 |
| Orchard Park | CFG Community Bank | Governmental Depository Account | xxxxx738 |
| Orchard Park | CFG Community Bank | Non-Governmental Depository Account | xxxxx746 |
| Allegany | CFG Community Bank | Governmental Depository Account | xxxxx753 |
| Allegany | CFG Community Bank | Non-Governmental Depository Account | xxxxx761 |
| Three Rivers | CFG Community Bank | Governmental Depository Account | xxxxx779 |
| Three Rivers | CFG Community Bank | Non-Governmental Depository Account | xxxxx787 |
| Gasport | CFG Community Bank | Governmental Depository Account | xxxxx795 |
| Gasport | CFG Community Bank | Non-Governmental Depository Account | xxxxx803 |
| Westfield | CFG Community Bank | Governmental Depository Account | xxxxx811 |
| Westfield | CFG Community Bank | Non-Governmental Depository Account | xxxxx829 |
| AFM | CFG Community Bank | HUD Master Account | xxxxx371 |
| Aurora Park | M&T Bank | Depository Account | xxxxxxx749 |
| Orchard Park | M&T Bank | Depository Account | xxxxxxx731 |
| Three Rivers | M&T Bank | Depository Account | xxxxxxx254 |
| Westfield | M&T Bank | Depository Account | xxxxxxx343 |
| Allegany | M&T Bank | Depository Account | xxxxxxx327 |
| Gasport | M&T Bank | Depository Account | xxxxxxx247 |
| Allegany | CFG Community Bank | Depository E-State | xxxxxxx634 |
| Westfield | CFG Community Bank | Depository E-State | xxxxxx466 |
| Absolut Facilities Management | M&T Bank | HUD Operating Account | xxxxxxx091 |
| Absolut Facilities Management | M&T Bank | HUD Payables Account | xxxxxxxxxx837 |
| Absolut Facilities | M&T Bank | HUD Payroll | xxxxxxx083 |

18144337

| Debtor | Bank | Account Name | Account No. |
|---|---|---|---|
| Management | | Account | |
| Absolut Facilities Management | M&T Bank | HUD Collection Account | xxxxxxx265 |
| Absolut Facilities Management | M&T Bank | Non-HUD Operating Account | xxxxxxx079 |
| Absolut Facilities Management | M&T Bank | Non-HUD Payables Account | xxxxxxxxxx953 |
| Absolut Facilities Management | M&T Bank | Non-HUD Payroll Account | xxxxxxx095 |
| Absolut Facilities Management | M&T Bank | Non-HUD Collection Account | xxxxxxx595 |
| Absolut Facilities Management | M&T Bank | Medical Account | xxxxxxx426 |
| Absolut Facilities Management | M&T Bank | Res Trust Account | xxxxxxx087 |

**Trust Accounts**

| Debtor | Bank | Account Name | Account No. |
|---|---|---|---|
| Aurora Park | Key Bank | Checking | xxxxx 2181 |
| Aurora Park | Key Bank | Savings | xxxxx2709 |
| Orchard Park | Key Bank | Checking | xxxxx2165 |
| Orchard Park | Key Bank | Savings | xxxxx2369 |
| Orchard Park | Key Bank | Resident Council | xxxxx2670 |
| Westfield | Key Bank | Checking | xxxxx8668 |
| Westfield | Key Bank | Savings | xxxxx1421 |
| Allegany | Community Bank | Checking | xxxxx1053 |
| Allegany | Community Bank | Savings | xxxxx2095 |
| Allegany | Community Bank | Resident Council | xxxxx1061 |
| Westfield | Community Bank | E-State | xxxxx9563 |
| Three Rivers | M&T Bank | Checking | Xxxxxxx3206 |
| Three Rivers | M&T Bank | Savings | Xxxxxxx0083 |
| Gasport | M&T Bank | Checking | Xxxxxxx6087 |
| Gasport | M&T Bank | Savings | Xxxxxxx6945 |
| Absolut Facilities Management | M&T Bank | Resident Trust-General | Xxxxxxx5087 |
| Aurora Park | DDMS | Trust | Xxxxxxx9388 |
| Aurora Park | DDMS | Care | Xxxxxxx2978 |
| Orchard Park | DDMS | Trust | Xxxxxx2666 |
| Orchard Park | DDMS | Care | Xxxxxxx2658 |
| Three Rivers | DDMS | Trust | Xxxxxxxxxx2948 |
| Three Rivers | DDMS | Care | Xxxxxxx2914 |
| Westfield | DDMS | Trust | xxxxx 2864 |
| Westfield | DDMS | Care | Xxxxx2849 |

| Debtor | Bank | Account Name | Account No. |
|--------|------|--------------|-------------|
| Allegany | DDMS | Trust | Xxxxx2831 |
| Allegany | DDMS | Care | Xxxxx2799 |
| Gasport | DDMS | Trust | Xxxxx2815 |
| Gasport | DDMS | Care | Xxxxx2807 |