Andrew I. Silfen
George P. Angelich
Jordana L. Renert
ARENT FOX LLP
1301 Avenue of the Americas, Floor 42
New York, NY  10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: andrew.silfen@arentfox.com
      george.angelich@arentfox.com
      jordana.renert@arentfox.com

*Counsel for Arba Group*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Absolut Facilities Management, LLC, *et al.*,<br><br>    Debtors.[1] | Chapter 11<br><br>Case No. 19-76260 (AST)<br>Case No. 19-76263 (AST)<br>Case No. 19-76267 (AST)<br>Case No. 19-76268 (AST)<br>Case No. 19-76269 (AST)<br>Case No. 19-76270 (AST)<br>Case No. 19-76271 (AST)<br>Case No. 19-76272 (AST)<br><br>(Joint Administration Requested) |

**LANDLORDS' PRELIMINARY OBJECTION TO**
**DEBTORS' DEBTOR-IN-POSSESSION FINANCING MOTION**
**AND STATEMENT REGARDING FIRST DAY MOTIONS**

Arba Group and its affiliates (collectively, the "Landlords"[2]) for the six skilled nursing facilities and one assisted living facility (collectively, the "Senior Care Facilities") operated by the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2] The Landlords are 292 Main Street, LLC; 6060 Armor Road, LLC; 2178 N. Fifth Street, LLC; 101 Creekside Drive, LLC; 4540 Lincoln Drive, LLC; and 26 Cass Street, LLC.

above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this Preliminary Objection to *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral* [Docket No. 4] (the "DIP Motion") and statement regarding the Debtors' other first day motions, and in support hereof, respectfully states as follows:

## OBJECTION AND STATEMENT

1. The Landlords for all of the Debtors' Senior Care Facilities have not been paid rent since July 2019 (and only partial payment in June and July). Meanwhile, the Debtors have, upon information and belief, continued to pay out salaries to affiliates and insiders, including the Debtors' ultimate owner, Israel Sherman, as well as payments to other creditors that inure to the benefit of insiders. Now the Debtors seek approval of a DIP loan from Mr. Sherman that not only may be inadequate to ensure administrative solvency but is designed to prevent the payment of administrative claims (postpetition rent) of the Landlord. The Debtors' and Mr. Sherman's attempt to prevent payments to the Landlords through an extraordinary insider DIP is an unprecedented and inappropriate attempt to end-run the requirement of section 365(d)(3) that the Debtors timely satisfy their obligations under an unexpired lease of nonresidential real property, a requirement that is customary practice in this District and other Bankruptcy Courts. It should not be tolerated. Rather, consistent with sections 363(e) and 361 of the Bankruptcy code, the Debtors should be required to pay stub rent and continuing postpetition rent to the Landlords.

2. As an initial matter, the Debtors inartfully attempt to cleanse the insider DIP by merely stating that it was reviewed by an "independent advisor" that was only recently appointed. The Debtors do not, however, disclose how or why the insider DIP was approved by the so-called

independent advisor, nor do they provide any detail regarding the scope or limits of his authority or how is he being compensated and by whom. In short, the Debtors' meager attempt to legitimize an insider transaction does not gloss over the fact that the filing of these cases, and the DIP Motion specifically, appear to be specifically tailored to harm and impede the Landlords' rights for the benefit of insiders.

3. The Debtors have made no showing of necessity for interim relief, much less an emergency hearing one day after these cases were commenced. Nor have they indicated what amount is necessary on an interim basis. Indeed, there is no budget attached to the DIP Motion to demonstrate what needs to be paid and when.[3] Without a budget, neither the Court nor the Landlords can ascertain the necessity or limits for interim financing.[4] More importantly, the absence of a budget prevents an evaluation of whether the proposed $2 million is enough to ensure administrative solvency, particularly when the Debtors' prepetition revolver was in excess of $6 million. *See Declaration of Michael Wyse in Support of Debtors' Chapter 11 Petition and First Day Motions* [Docket No. 15] (the "First Day Declaration") at ¶¶ 18-19. The primary purpose of DIP financing is to ensure an administratively solvent case, stabilize the business, and provide comfort for parties doing business with a debtor, and the Debtors have not demonstrated their proposed DIP facility will achieve that.

4. In fact, the Debtors' first day motions seek authority to pay $6,736,430.78 of prepetition claims in the aggregate:

---

[3] This Objection will likely prompt the Debtors' professionals to file a budget at the eleventh hour in a reluctant attempt to cure this fundamental information vacuum. The actual cure, however, would be to adjourn the interim hearing to a later date.

[4] The Debtors' first day motions seek authority to pay certain obligations, such as credit card expenses, critical vendors, and taxes, that may in fact be direct obligations of insiders or affiliates, such as Billit Accounting & Information Technology, LLC ("Billit"), which is wholly owned by Mr. Sherman.

| Obligation | Amount |
|---|---|
| Critical Vendors | $785,493.97 |
| Prepetition Insurance Obligations | $345,000.00 |
| Prepetition Insurance Brokers Fees | $331,167.81 |
| Prepetition Employee Obligations | $3,704,477.00 |
| Prepetition IRS | $1,337,091.00 |
| Prepetition NYS Tax | $233,201.00 |
| **TOTAL** | **$6,736,430.78** |

5. But the Debtors do not explain how a $2 million revolver is sufficient to cover these payments or otherwise provide the Court with any detail regarding other sources for payment, such as cash flow or cash on hand. Moreover, the Debtors seek to elevate prepetition general unsecured and priority claims above postpetition administrative expense claims at the expense of the Landlords, all without even attempting to demonstrate they will ultimately be administratively solvent.

6. Meanwhile, the DIP Motion plainly demonstrates that the Debtors do not intend to pay the Landlords' rent, the single largest administrative expense in these cases, for at least 60 days. In fact, an insider-imposed restriction outright precludes it. An event of default occurs under the DIP if "the Court enters an order requiring the Debtors to pay rent to any landlords within the first 60 days of the Chapter 11 Cases." DIP Motion at 12. The Debtors' attempt to force the Court to pre-judge the Landlords' entitlement to stub rent and post-petition rent is inappropriate and should not be tolerated. By including this event of default in the proposed DIP, the Debtors are attempting to circumvent the requirements of section 365(d)(3), which mandates that the Debtors "timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."

7. Alternatively, the Debtors may request that the Court extend the time for performance of their payment obligations under the leases that arise within the first 60 days of the cases, but then only "for cause" and in no event can the time be extended beyond 60-day period. *Id.* If the Debtors want this relief, they must request it of the Court and demonstrate cause. They ought not be allowed evade the strict requirements of section 365 through a self-interested DIP order. Furthermore, even if the Debtors were able to properly obtain section 365(d)(3) relief, they must be able to demonstrate they will be able to pay the rent accrued during the 60-day period immediately upon its expiration. *See IN THE MATTER OF: SPECIALTY RETAIL SHOPS HOLDING CORP., et al., Debtor(s).*, 2019 WL 4023817, at *4 (Bankr. D. Neb. Aug. 26, 2019) (holding that unpaid administrative expense claims arising under section 365(d)(3) are entitled to immediate payment).

8. Furthermore, the Debtors should not be allowed to pick-and-choose which administrative expenses to pay and which to omit, particularly when the insider DIP lender is choosing to omit the Debtors' largest expense (rent) while potentially paying his own salary through the employee wages motion.[5] Again, the Landlords should not be forced to provide the Debtors with what is tantamount to an interest free loan while the Debtors evade payment for the use and occupancy of the Senior Care Facilities and elevate prepetition and priority claims, as well as the interests of insiders, ahead of the Landlords. *In re ZB Company, Inc.,* 302 B.R. 316, 320 (Bankr. D. Del. 2003) (holding that rent should be paid to landlords during the pre-rejection period

---

[5] The Debtors' first day declaration discloses that "Israel Sherman owns 100% of the membership interests of [Billit] . . . [t]he Debtors . . . pay salaries and other expenses incurred by Billit in connection with its services for the Debtors, including Israel Sherman's salary" (First Day Declaration at ¶ 15) and separately in Schedule 12 that Billit pays officers' salaries and is reimbursed by the Debtors. *Id.*, Sch. 12. The employee wages motion [Docket No. 13] does not disclose whether Mr. Sherman's or any other insider's salary is among the compensation sought to be paid or whether Billit, wholly owned by Mr. Sherman, is getting paid. Furthermore, based on the Debtors' vague description of their arrangement with Billit, it is unclear whether certain of the expenses the Debtors seek authority to pay, such as payroll, critical vendors, and credit card expenses, should instead be paid by Billit, a non-debtor.

in order to avoid the potential that the landlord could be left with an allowed administrative claim against an administratively insolvent estate). Instead, the Debtors should be required to provide the Landlords with adequate protection in the form of rent payment, which is routine and common practice in this and other Districts.

9. Section 363(e) of the Bankruptcy Code guarantees adequate protection to any party with an interest in property used by a debtor during its bankruptcy proceeding that makes a request for adequate protection:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use sale, or lease as is necessary to provide adequate protection of such interest.

10. Section 363(e) is straightforward and non-discretionary. If a creditor with an "interest" in property used by the Debtors makes a request for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see In re WorldCom, Inc.,* 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004); *see also In re Metromedia Fiber Network, Inc.,* 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary . . . ."). Lessors of real property, like the Landlords, are entitled to adequate protection. *See P.J. Clarke's Rest. Corp.,* 265 B.R. 392 (Bankr. S.D.N.Y. 2001) (citing several cases holding that a landlord has the right to adequate protection of its right to timely payment of post-petition rent); *In re Eclair Bakery Ltd.,* 255 B.R. 121, 136 (Bankr. S.D.N.Y. 2000) (court noted that continuation of the stay may be conditioned on adequate protection to the landlord); *In re MS Freight Distribution, Inc.,* 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994) (the majority view is that a landlord may seek adequate protection under Section 363(e)).

11. The Landlords have an undisputable "interest" in their leased properties and the leases themselves. Thus, the Landlords are entitled to receive payment of stub rent and continuing

post-petition rent as adequate protection. Section 361 of the Bankruptcy Code is clear that adequate protection may take one of three forms: a debtor may (i) tender an upfront cash payment or periodic cash payments, (ii) grant replacement liens, or (iii) grant other related relief (other than an administrative claim under section 503(b)(1) of the Bankruptcy Code) amounting to the indubitable equivalent of the protected party's interest in the property. *Section 361(3) is also clear that adequate protection may not take the form of a deferred administrative claim.* Under section 361 of the Bankruptcy Code, only a contemporaneous transfer of value satisfies the requirements of adequate protection.

12. In effect, through the insider DIP Motion, the Debtors seek to box in this Court and force the Landlords to provide the Debtors with interest free, unsecured, involuntary, post-petition loans in the form of rent *and* bear the risk that if the Debtors are administratively insolvent, those "loans" will never be repaid. The Landlords should not be forced to bear the cost of the Debtors' chapter 11 cases, especially when the cases are ostensibly being funded by an insider. Similarly, this Court should not be boxed in and forced to grant such unusual and unprecedented relief on the first day of these cases.

13. In addition, the insider DIP lender should not be permitted to be further enriched through the DIP facility by receiving a superpriority claim, a section 506(c) surcharge waiver, and an unreasonably high 14% interest rate that is an unnecessary risk protection for an insider lender. *See In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("credit [pursuant to section 364(c) of the Bankruptcy Code] should not be approved when it is sought for the primary benefit of a party other than the debtor or when funds are readily available from insiders or others without providing the lender with the benefits of any priority.").

14. The Court should not approve interim DIP financing unless and until the Debtors establish an evidentiary record to warrant the DIP and provide a budget that provides for payment of the Landlords' stub rent and post-petition rent and otherwise demonstrates the DIP's sufficiency to fund these cases. Absent provision for rent payments, these cases are administratively insolvent from day one. If that is the case, DIP financing must not be approved.[6]

15. Should the Court consider approving DIP financing, it must be conditioned on a reasonable interest rate and the removal of (a) the event of default related to rent payments, (b) the 506(c) waiver, and (c) the insider DIP lender's superpriority claim, and it must be only for such amount as is necessary to allow the Debtors to operate through the final hearing.[7]

16. In addition, the *Supplemental Declaration of Michael Wyse Regarding Closure of Orchard Park Facility* [Docket No. 20] discloses that the Debtors intend to move forward with a closure plan for their Orchard Park facility "immediately." They have not filed a motion for this Court's approval of the closure, which they must do because the approval occurred postpetition. And the declaration does not explain the closure process, its impact on jobs, or strategic alternatives. Neither does a planned closure justify the failure to pay rent. Related, the Landlords wish to make the Court aware that they are in advanced stages of discussions with a new operator for all seven of the Senior Care Facilities, who is an experienced and well-established operator in this industry and has been conducting its due diligence on the Senior Care Facilities for approximately 30 days. The Landlords believe a signed letter of intent from the new operator is imminent. Therefore, the Lenders believe there is a viable and preferable alternative to closure,

---

[6] In addition, these issues must be preserved for any subsequently appointed committee of unsecured creditors.

[7] For the same reasons, there is no need on the first day of these cases to consider approval of payment of prepetition amounts owed to the Internal Revenue Service, New York State Department of Taxation, or insurance brokers. In any event, none of the first day relief requested should be granted without establishing a record in evidentiary form justifying the granting of such relief, and any such relief must be limited to costs that are truly critical, warranted, and necessary.

which avoids the displacement of patients, loss of jobs, and the uncertainty related to closure, including the creation of substantial claims in already potentially administrative insolvent case.

## RESERVATION OF RIGHTS

17. The Landlords reserve all rights to further address the DIP Motion, the other first day motions, and any other ancillary issues, either by further submissions to this Court, at oral argument or by testimony to be presented at any hearing.

WHEREFORE, the Landlords respectfully request that the Court deny the DIP Motion or, alternatively, and assuming a sufficient evidentiary record is established, condition approval of interim financing on the modifications requested herein, including the payment of the Landlords' stub rent and post-petition rent and limiting the amount to only what is necessary to get through a final hearing, and take such other actions as the Court may deem appropriate.

Dated: New York, New York
September 12, 2019

ARENT FOX LLP

*Counsel for Arba Group*

By: */s/ George P. Angelich*
Andrew I. Silfen
George P. Angelich
Jordana L. Renert
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990