**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>Absolut Facilities Management, LLC, *et al*.<br><br>Debtors.[1] | ) Chapter 11<br>)<br>) Case No. 19-76260<br>) Case No. 19-76263<br>) Case No. 19-76267<br>) Case No. 19-76268<br>) Case No. 19-76269<br>) Case No. 19-76270<br>) Case No. 19-76271<br>) Case No. 19-76272<br>)<br>) (Jointly Administered)<br>) |

**LIMITED OBJECTION OF CAPITAL FINANCE, LLC
TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
364(c)(1), 364(c)(2), 364(d)(1), AND 364 (e) AND (B) USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363, (C) GRANTING ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (D) SCHEDULING
FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**
**(Docket No. 4)**

Capital Finance, LLC, as senior secured lender to the above-captioned debtors and debtors in possession (the "Debtors"), submits this limited objection (the "Limited Objection") to the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (C)*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

*Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (D) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* (the "DIP Motion") [Docket No. 4] and respectfully states as follows:

### PRELIMINARY STATEMENT

1. At the time of this filing, Capital Finance is in active discussions with the Debtors, the DIP Lender (as herein defined) and other key creditors concerning the use of Capital Finance's cash collateral. In light of the objection deadline, Capital Finance files this objection to preserve all of its rights, claims, and entitlements while it continues to negotiate a resolution.

2. Through the DIP Motion and the closing of the Orchard Park Facility (as defined herein), the Debtors seek, without consent, to use Capital Finance's cash collateral, outside of the ordinary course, to liquidate portions of their business. The impact of this is a drastic diminution in Capital Finance's cash collateral for which Capital Finance is not being adequately protected.

3. Capital Finance does not consent to any use of its cash collateral for operations or for the closure of the Orchard Park Facility until it receives more information to evaluate whether the closure was appropriate and an agreement is reached on adequate protection. The adequate protection proposed in the DIP Motion is insufficient because the Debtors seem intent on continuing to close down facilities and transfer patients to unaffiliated facilities whose accounts are not subject to Capital Finance's liens. Such actions represent a diminution in the value of Capital Finance's collateral for which Capital Finance is entitled to adequate protection.

4. The Debtors should not be permitted to use Capital Finance's cash collateral without either making payments directly to Capital Finance to account for the diminished cash collateral or directing all future collections of accounts receivable from the Orchard Park Facility to Capital Finance. Capital Finance further objects to any further use of Cash Collateral absent an order from this Court.

**RELEVANT FACTUAL BACKGROUND**

5. Capital Finance is the lender under two prepetition credit and security agreements, as amended from time to time, with the Debtors: the HUD Prepetition Loan Agreement and the Non-HUD Prepetition Loan Agreement (collectively, the "Loan Agreements").[2] Under the Loan Agreements, Capital Finance extended revolving credit facilities to the Debtors of $5.0 million and $700,000, respectively. The Loan Agreements, together with all schedules and exhibits, any and all other agreements and documents delivered pursuant thereto or in connection therewith, and any subsequent amendments thereto, are referred to collectively as the "Loan Documents."

6. As security for the payment of the amounts owed under the Loan Documents, the Debtors granted to Capital Finance liens on, and first priority security interests in, all of the Debtors personal property, as more fully described in the Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, the "Prepetition Collateral" and such liens thereon, the "Prepetition Liens").

7. All cash of the Debtors, wherever located on the Petition Date, represents either proceeds of loans from Capital Finance or proceeds of the Prepetition Collateral. Capital Finance has valid, duly perfected, first-priority liens upon and security interests in and to all of the cash of the Debtors, and these funds, along with the proceeds of the Prepetition Collateral, constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (all such cash, cash proceeds, and other "cash collateral," the "Cash Collateral").

8. On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the DIP Motion.

9. As of the Petition Date, certain of the Debtors were indebted to Capital Finance under the Loan Documents in the principal amount of $4,951,478.58 with respect to the HUD Prepetition Loan Agreement, (such principal amount, together with all interest, fees, costs, expenses (including attorneys' fees), and all other amounts accruing under the Loan Documents, the "HUD Prepetition Indebtedness").

10. As of the Petition Date, certain of the Debtors were indebted to Capital Finance under the Loan Documents in the principal amount of $688,900.74 with respect to the Non-HUD Prepetition Loan Agreement, (such principal amount, together with all interest, fees, costs, expenses (including attorneys' fees), and all other amounts accruing under the Loan Documents, the "Non-HUD Prepetition Indebtedness" and, together with the HUD Prepetition Indebtedness, the "Prepetition Indebtedness").

11. On September 11, 2019, the Debtors filed the DIP Motion seeking authority to enter into the DIP Facility. In the DIP Motion, the Debtors also seek authorization to use the Cash Collateral. Capital Finance has not consented to the proposed use of the Cash Collateral by the Debtors on a final basis.

12. On September 18, 2019, eight days after the Debtors received the New York State Department of Health's approval to close the Absolut Center for Nursing and Rehabilitation at Orchard Park (the "Orchard Park Facility"), during the Court's hearing on the Debtors' interim request to use Capital Finance's cash collateral, Capital Finance first learned of the Debtors' plan to close the Orchard Park Facility (the "Closure Plan"). At that time, the Court directed the Debtors' to send a copy of the Closure Plan to Capital Finance.

13. On September 20, 2019, Capital Finance received a copy of the Closure Plan.

14. Also, on September 20, 2019, the Debtors filed a motion (the "Closure Motion") [Docket No. 51] seeking court approval to close the Orchard Park Facility. The Debtors maintain that they do not need Court approval to carry out the Closure Plan. *See* Closure Motion ¶ 3. All of the Debtors' property, including any accounts receivable related to the Orchard Park Facility, are part of the Prepetition Collateral. Any cash proceeds generated from operations at the Orchard Park Facility also constitute Cash Collateral.

15. In the span of the days since the petition date, the Debtors, without Court approval, have already transferred 40% of residents to facilities unaffiliated with the Debtors. The result of which is a substantial diminution in Capital Finance's collateral of approximately $1,075,000 through the loss of accounts receivables without a corresponding adequate protection package of equal value.

## ARGUMENT

16. Given Capital Finance's security interests in and liens on substantially all of the Debtors' property, including any cash proceeds from accounts receivable collections and sales, any cash generated by the Debtors is Cash Collateral. The Bankruptcy Code (a) prohibits non-consensual use of cash collateral absent hearing and a court order, and (b) conditions any non-consensual use of cash collateral on compliance with section 363 of the Bankruptcy Code. 11 U.S.C. § 363(c)(2). Section 363 of the Bankruptcy Code requires "adequate protection" for non-consensual use of cash collateral and places the burden of demonstrating that creditors are adequately protected on the trustee or debtor in possession. 11 U.S.C. §§ 363(e) and (p).

17. Thus, in order to use the Cash Collateral, the Debtors must make compensatory payments to Capital Finance, provide *sufficient* replacement liens, and/or provide Capital Finance with the indubitable equivalent of its interest in the Prepetition Collateral. 11 U.S.C. § 361. The Bankruptcy Code provides these special protections to ensure that secured creditors, like Capital

Finance, are not deprived of their interests in cash collateral by unauthorized use. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-71 (1988); *In re Kleather*, 208 B.R. 406, 416 (Bankr. S.D. Ohio 1997) (noting that, in enacting Section 363 of the Bankruptcy Code, Congress gave "special treatment to 'cash collateral' in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor") (quoting *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981)).

18. Here, the Debtors assert that the use of the Cash Collateral is necessary to maintain "their ongoing business operations" and that absent such use their business would be irreparably harmed. DIP Motion at ¶ 30. However, the Debtors have conceded that they are not using the Cash Collateral to maintain their operations. Instead, they are using it to dissipate assets by closing the Orchard Park Facility. Through the Closure Plan, the Debtors have already moved over 40% of the residents to unaffiliated facilities and out of the reach of the Prepetition Liens.

19. These actions by the Debtors have so far resulted in a diminution of approximately $1,075,000 in the Prepetition Collateral and will continue to result in further diminution through the loss of accounts receivables for these residents. While the Debtors have offered replacement liens as adequate protection, they have failed to offer any evidence that such replacement liens will adequately protect Capital Finance. Capital Finance already has valid, first-priority liens in substantially all the Debtors' assets. Further the Debtors are currently eliminating portions of the very collateral they offer as adequate protection. As a result, the Debtors have failed to satisfy their burden that the value of the replacement liens are greater or equal to the diminution in value. *See In re Reading Tube Indus.*, 72 B.R. 329, 333 (Bankr. E.D. Pa. 1987); *In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982) ("The authority to grant the use of cash collateral carries a concomitant responsibility to insure that the value of the creditor's collateral is not impaired.").

20. Further, Capital Finance objects to the use the Cash Collateral to pay for any expenses related to the Closure Plan. Essentially, the Debtors are asking Capital Finance to pay for a process that will reduce the value of the Prepetition Collateral and hinder Capital Finance's ability to collect on the Prepetition Indebtedness. This is particularly true, where, as here, the DIP Lender is an insider of the Debtors. The DIP Facility – not the Cash Collateral – should pay for any expenses related to the Closure Plan, and either the Debtors or the DIP Lender should compensate Capital Finance for the diminution of its collateral.

21. In addition, Capital Finance reasonably suspects that the Debtors' most recent projections for the value of the Prepetition Collateral are aggressive, if not utterly unattainable. In the DIP Motion, the Debtors state that they have "not less than $15 million in accounts receivable owing from Medicare and Medicaid." DIP Motion ¶ 13. The Debtors provide no support for this assertion whatsoever. Nor have the Debtors provided any information on the collectability of these receivables or whether any of them may be subject to challenge. To properly evaluate these assertions, Capital Finance will need full discovery from the Debtors to conduct its own valuation of the Prepetition Collateral.

22. If the Debtors' principal wishes to continue operating this business at a loss, he should bear that loss, not Capital Finance. *See In re Orchard Vill. Invs.*, LLC, 405 B.R. 341, 354 (Bankr. D. Or. 2009) (where the debtor has no business viability, equity must "pay to play" since cash collateral usage cannot be compelled in such a context, where, among other things, adequate protection cannot be provided a subject creditor).

## CONCLUSION

23. For the reasons stated above, the DIP Motion should be denied unless and until the Debtors provide sufficient adequate protection as required by section 363(e) of the Bankruptcy Code.

| | |
|---|---|
| Dated: New York, New York<br>September 25, 2019 | **BLANK ROME LLP**<br><br>By:   */s/ Evan J. Zucker*<br>      Evan J. Zucker<br>      1271 Avenue of the Americas<br>      New York, New York 10020<br>      (212) 885-5000<br><br>      Kenneth J. Ottaviano (*pro hac vice* motion pending)<br>      Paige Barr Tinkham (*pro hac vice* motion pending)<br>      444 West Lake Street, Suite 1650<br>      Chicago, Illinois 60606<br>      (312) 776-2600<br><br>      *Attorneys for Capital Finance, LLC* |