**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | )    Chapter 11 |
| | ) |
| | )    Case No. 19-76260 |
| | )    Case No. 19-76263 |
| In re: | )    Case No. 19-76267 |
| | )    Case No. 19-76268 |
| Absolut Facilities Management, LLC, *et al.* | )    Case No. 19-76269 |
| | )    Case No. 19-76270 |
| Debtors.[1] | )    Case No. 19-76271 |
| | )    Case No. 19-76272 |
| | ) |
| | )    (Jointly Administered) |
| | ) |

**OBJECTION OF CAPITAL FINANCE, LLC TO**
**THE MOTION FOR ENTRY OF ORDER APPROVING**
**THE DEBTORS' PLAN OF CLOSURE FOR ORCHARD PARK FACILITY**

Capital Finance, LLC, as senior secured lender to the above-captioned debtors and debtors in possession (the "Debtors"), submits this objection (the "Objection") to the *Motion for Entry of Order Approving the Debtors' Plan of Closure for Orchard Park Facility* (the "Closure Motion") [Docket No. 51], and respectfully states as follows.

**PRELIMINARY STATEMENT**

1.      At the time of this filing, Capital Finance is in active discussions with the Debtors, and other key creditors concerning the Closure Motion. In light of the objection deadline, Capital Finance files this objection to preserve all of its rights, claims, and entitlements while it continues to negotiate a resolution.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

2.     Capital Finance lacks sufficient information to consent to the Closure Motion.  The Debtors have not identified the operating losses of the Orchard Park Facility (as defined herein) that justify its decision to close the facility.  Nor have the Debtors disclosed the costs of the closing process and how those costs are to be paid.  The accounts receivable, cash, and all other personal property of the Orchard Park Facility are subject to Capital Finance's liens and security interests.  Capital Finance does not consent to any of its cash collateral being used for the closing process as the liquidation proposed by the Debtors will result in a drastic diminution in Capital Finance's cash collateral for which Capital Finance is not being adequately protected.

3.     The Debtors have already transferred approximately 40% of the patients from the Orchard Park Facility to unaffiliated facilities that are not subject to Capital Finance's liens and security interests resulting in a reduction of approximately $1,075,000 in the value of Capital Finance's collateral.  Each patient represents an account receivable that makes up the primary value of Capital Finance's collateral.  In essence, the Debtors are asking Capital Finance to pay for a plan that impairs Capital Finance's own collateral.  This is not allowed under the Bankruptcy Code.

4.     The Debtors should not be permitted to use Capital Finance's cash collateral to carry out their closing process without either making payments directly to Capital Finance to account for the diminished cash collateral or directing all future collections of accounts receivable from the Orchard Park Facility to Capital Finance.

## RELEVANT FACTUAL BACKGROUND

5.     On September 10, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6.     Capital Finance is the lender under two prepetition credit and security agreements with the Debtors.  Debtors Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC;

Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; and certain non-debtor entities (collectively, the "HUD Borrowers") are party to that certain Credit and Security Agreement dated as of May 22, 2009 among the HUD Borrowers and Capital Finance (as amended, the "HUD Prepetition Loan Agreement") in the maximum outstanding principal amount of $5,000,000. Additionally, debtors Absolut Facilities Management, LLC and Absolut Nursing and Rehabilitation Center of Westfield, LLC (collectively, the "Non-HUD Borrowers") are parties to that certain Credit and Security Agreement dated as of May 22, 2009 among the Non-HUD Borrowers and Capital Finance (as amended, the "Non-HUD Prepetition Loan Agreement", and together with the HUD Prepetition Loan Agreement, the "Loan Agreements") in the maximum outstanding principal amount of $700,000. The Loan Agreements, together with all schedules and exhibits, any and all other agreements and documents delivered pursuant thereto or in connection therewith, and any subsequent amendments thereto, are referred to collectively as the "Loan Documents."

7.      As security for the payment of the amounts owed under the Loan Documents, the Debtors granted to Capital Finance liens on, and first-priority security interests in, all of the Debtors' personal property, as more fully described in the Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, the "Prepetition Collateral" and such liens thereon, the "Prepetition Liens").

8.      All cash of the Debtors, wherever located on the Petition Date, represents either proceeds of loans from Capital Finance or proceeds of the Prepetition Collateral. Capital Finance has valid, duly perfected, first-priority liens upon and security interests in and to all of the cash of

the Debtors, and these funds, along with the proceeds of the Prepetition Collateral, constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (all such cash, cash proceeds, and other "cash collateral," the "Cash Collateral").

9.      As of the Petition Date, the HUD Borrowers were indebted to Capital Finance under the Loan Documents in the principal amount of $4,951,478.58 with respect to the HUD Prepetition Loan Agreement, (such principal amount, together with all interest, fees, costs, expenses (including attorneys' fees), and all other amounts accruing under the Loan Documents, the "HUD Prepetition Indebtedness").

10.     As of the Petition Date, the Non-HUD Borrowers were indebted to Capital Finance under the Loan Documents in the principal amount of $688,900.74 with respect to the Non-HUD Prepetition Loan Agreement, (such principal amount, together with all interest, fees, costs, expenses (including attorneys' fees), and all other amounts accruing under the Loan Documents, the "Non-HUD Prepetition Indebtedness" and, together with the HUD Prepetition Indebtedness, the "Prepetition Indebtedness").

11.     On September 18, 2019, eight days after the Debtors received the New York State Department of Health's approval to close the Absolut Center for Nursing and Rehabilitation at Orchard Park (the "Orchard Park Facility"), during the Court's hearing on the Debtors' interim request to use the Cash Collateral, Capital Finance first learned of the Debtors' plan to close the Orchard Park Facility (the "Closure Plan").  At that time, the Court directed the Debtors' to send a copy of the Closure Plan to Capital Finance.

12.     On September 20, 2019, Capital Finance received a copy of the Closure Plan.

13.     Also, on September 20, 2019, the Debtors filed the Closure Motion seeking court approval to close the Orchard Park Facility.  The Debtors maintain that they do not need Court

4

approval to carry out the Closure Plan. *See* Closure Motion ¶ 3. All of the Debtors' property, including any accounts receivable related to the Orchard Park Facility, are part of the Prepetition Collateral. Any cash proceeds generated from operations at the Orchard Park Facility also constitute Cash Collateral.

14.　　In the span of the days since the Petition Date, the Debtors, without Court approval, have already transferred 40% of residents to facilities unaffiliated with the Debtors. The result of which is a substantial diminution in Capital Finance's collateral of approximately $1,075,000 through the loss of accounts receivables without a corresponding adequate protection package of equal value.

<u>**ARGUMENT**</u>

15.　　The Debtors seek permission to close the Orchard Park Facility under section 363 of the Bankruptcy Code. Section 363, however, prohibits any use, sale, or lease of cash collateral without the consent of the party with an interest in the cash collateral or authorization from the court in accordance with the provisions of section 363. 11 U.S.C. § 363(c)(2). Capital Finance has an interest in all property of the Orchard Park Facility. All cash generated by the Orchard Park Facility's accounts receivable is part of the Cash Collateral. Capital Finance does not consent to the use of the Cash Collateral under the terms of the Closure Motion. Therefore, absent Capital Finance's consent, the Debtors' use of the Cash Collateral must be authorized by the Court under the terms of section 363.

16.　　Section 363 of the Bankruptcy Code requires "adequate protection" for the non-consensual use of cash collateral. 11 U.S.C. § 363(e). The Debtors have the burden to demonstrate that creditors are adequately protected. 11 U.S.C. § 363(p). The Debtors have not met this burden.

17.　　To provide Capital Finance with adequate protection, the Debtors must make compensatory payments to Capital Finance, provide *sufficient* replacement liens, and/or provide

Capital Finance with the indubitable equivalent of its interest in the Prepetition Collateral. 11 U.S.C. § 361.  The Bankruptcy Code provides these special protections to ensure that secured creditors, like Capital Finance, are not deprived of their interests in cash collateral by unauthorized use.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd*., 484 U.S. 365, 370-71 (1988); *In re Kleather*, 208 B.R. 406, 416 (Bankr. S.D. Ohio 1997) (noting that, in enacting Section 363 of the Bankruptcy Code, Congress gave "special treatment to 'cash collateral' in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor") (quoting *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981)).

18.      Here, the Debtors have not provided any information regarding the funds they intend to use to implement the Closure Plan.  Presumably, all costs of the Closure Plan will be borne by cash generated by the Orchard Park Facility.[2]  All such cash is part of the Cash Collateral. The Debtors are thus asking the Court to bless a process that will use Capital Finance's cash collateral to impair the Prepetition Collateral by closing the Orchard Park Facility.

19.      Each patient transferred out of the Orchard Park Facility and into an unaffiliated facility results in one less account receivable owned by the Orchard Park facility debtor and a corresponding reduction in the value of the Prepetition Collateral.  This alone would require the Debtors to provide adequate protection to Capital Finance.  *See, e.g.*, *In re Tri-Cor Petroleum, Inc.*, 60 B.R. 2, 4 (Bankr. E.D.N.Y. 1986) (holding that section 363(e) of the Bankruptcy Code prohibits distribution of accounts receivable subject to a lien without provision of adequate protection).  Yet, the Closure Motion contains no information regarding the provision of such adequate protection.

---

[2]      To the extent the Debtors propose to use cash generated from operations at other facilities, such cash would also be part of the Cash Collateral.

20.    In their motion seeking authority to obtain postpetition financing, the Debtors state they intend to provide Capital Finance with adequate protection through periodic payments and the grant of "replacement liens." DIP Motion [Docket No. 4] ¶ 33. These provisions, however, are hardly adequate as Capital Finance already has valid, first-priority liens on all the personal property of the Debtors. Further, the Debtors are currently proposing to liquidate a portion of the very collateral they offer as adequate protection. The actions of the Debtors to date have already resulted in a diminution of value in the Prepetition collateral of approximately $1,075,000.

21.    The Debtors have the burden of showing that Capital Finance is adequately protected for any use of the Cash Collateral. However, the Debtors' Closure Plan does not provide sufficient information to show whether Capital Finance will receive adequate protection for the proposed use of the Cash Collateral. To proceed with the Closure Plan, the Debtors must provide sufficient adequate protection to Capital Finance.

CONCLUSION

22.    For the reasons stated above, the Court should deny the Closure Motion unless and until the Debtors provide sufficient information to Capital Finance concerning the reason for the closing and adequate protection as required by section 363(e) of the Bankruptcy Code.

Dated: New York, New York
      September 26, 2019

**BLANK ROME LLP**

By:    /s/ Evan J. Zucker
      Evan J. Zucker
      1271 Avenue of the Americas
      New York, New York 10020
      (212) 885-5000

      Kenneth J. Ottaviano (*pro hac vice* motion pending)
      Paige Barr Tinkham (*pro hac vice* motion pending)
      444 West Lake Street, Suite 1650
      Chicago, Illinois 60606
      (312) 776-2600

      *Attorneys for Capital Finance, LLC*