

SCHUYLER G. CARROLL
Partner

345 Park Avenue
New York, NY  10154

**Direct**   212.407.4820
**Main**    212.407.4000
**Fax**     212.202.5431
scarroll@loeb.com

Via ECF Filing

September 27, 2019

Honorable Alan S. Trust
Courtroom 960
United States Bankruptcy Court
Eastern District of New York
Alfonse M. D'Amato Federal Courthouse
290 Federal Plaza
Central Islip, New York 11722

Re:    Absolut Facilities Management, LLC, et al.

Dear Honorable Sir:

The Debtors have uploaded orders granting the following motions:

1.    Emergency Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b) [Dkt No. 5];

2.    Motion to Extend Deadline to File Schedules or Provide Required Information [Dkt No. 6];

3.    Motion to Authorize/Direct Debtors to File Under Seal Separate Schedule F, Matrix and Other Documents Containing Patient Information, (II) to Authorize Certain Procedures to Maintain the Confidentiality of Patient Information (III) to Modify Notice to Patients, And (IV) For Relief From Required Form of Mailing Matrix [Dkt No. 8];

4.    Motion to Authorize/Direct Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered into Prepetition, (B) Pay and Satisfy Prepetition Obligations Related Thereto, Including Broker Fees and Premium Financing Obligations; and (II) Granting Related Relief [Dkt No. 12]; and

5.    Emergency Motion to Authorize/Direct Interim and Final Orders (I) Authorizing, But Not Directing, Debtors to (A) Pay and Honor Prepetition Employee Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief [Dkt No. 13].

The Office of the United States Trustee has consented to the entry of each of the above orders.

Debtors uploaded a revised version of the interim employee wage order that has been consented.  A redline of this order compared to the version previously uploaded is attached hereto.

Los Angeles   New York   Chicago   Nashville   Washington, DC   San Francisco   Beijing   Hong Kong   www.loeb.com

For the United States offices, a limited liability partnership including professional corporations. For Hong Kong office, a limited liability partnership.

18193360.2
233620-10001



A slightly revised version of the proposed interim order authorizing post-petition financing and use of cash collateral was uploaded today.  A redline of that order compared with the version previously uploaded is attached hereto.  This order has been consented to by, ABS DIP, LLC, and Capital Finance, LLC. The Arba Group has not consented to this form of order.  We believe that this is acceptable to the Office of the United States Trustee but we have not heard back from them.

Respectfully submitted,

Schuyler G. Carroll
Partner

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | Chapter 11 |
| ) | |
| ) | Case No. 19-76260-ast |
| ) | Case No. 19-76263-ast |
| In re: ) | Case No. 19-76267-ast |
| ) | Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al*. ) | Case No. 19-76269-ast |
| ) | Case No. 19-76270-ast |
| Debtors.[1] ) | Case No. 19-76271-ast |
| ) | Case No. 19-76272-ast |
| ) | |
| ) | (Jointly Administered) |
| ) | |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a) AND 366 (I) PROHIBITING
UTILITY COMPANIES FROM ALTERING OR DISCONTINUING SERVICE ON
ACCOUNT OF PREPETITION INVOICES, (II) APPROVING DEPOSIT
ACCOUNT AS ADEQUATE ASSURANCE OF PAYMENT, AND
(III) ESTABLISHING PROCEDURE FOR RESOLVING REQUESTS
BY UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT**

On September 12 and 18, 2019, the Court conducted hearings to consider the *Debtors'*

*Emergency Motion for an Order under 11 U.S.C. §§ 105(a) and 366 (I) Prohibiting Utility*

*Companies from Altering or Discontinuing Service on Account of Prepetition Invoices, (II)*

*Approving Deposit Account as Adequate Assurance of Payment, and (II) Establishing Procedures*

*for Resolving Requests by Utility Companies for Additional Adequate Assurance of Payment* (the

"**Utilities Motion**"), filed by the above-captioned debtors and debtors-in-possession (the

"**Debtors**"). The Court finds that: (i) it has jurisdiction over the matters raised in the Utilities

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Utilities Motion is in the best interests of the Debtors, their estates, and their creditors; (v) proper and adequate notice of the Utilities Motion has been given and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, **IT IS HEREBY ORDERED THAT**

1.	The Utilities Motion is **GRANTED** on an interim basis.

2.	The Debtors are authorized to pay the Utility Companies in the ordinary course, including payment of the most recent invoice received from the Utility Companies, even if a portion of the period covered by the invoice is for the pre-Petition Date period.

3.	Except in accordance with the procedures set forth below, absent further order of the Court, each Utility Company[2] is prohibited from (a) altering, refusing, or discontinuing service to, or discriminating against the Debtors solely on the basis of the commencement of the Chapter 11 Cases or on account of any unpaid invoice for services provided before the Petition Date; or (b) requiring the payment of a deposit or other security in connection with the Utility Companies' continued provision of Utility Services, other than the establishment of the Utility Deposit Account.

4.	The Debtors are authorized and directed to establish the Utility Deposit Account and shall earmark $48,989 to be set aside as the Utility Deposit Account for the purpose of providing each Utility Company adequate assurance of payment for postpetition Utility Services provided to the Debtors.  The Debtors shall maintain the Utility Deposit Account with a minimum

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Utilities Motion.

balance equal to 50% of the Debtors' estimated monthly cost of Utility Services, which the Debtors may adjust to account for the termination of Utility Services by the Debtors or other arrangements with respect to adequate assurance of payment reached with any Utility Company.  For the avoidance of doubt, the Utility Deposit Account may be maintained in an existing bank account of the Debtors and need not be maintained in a separate bank account.

5.      To the extent the Debtors become delinquent with respect to a Utility Company's account, such Utility Company shall file a Delinquency Notice with the Court and serve such Delinquency Notice on (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the Debtors' secured lenders, (d) counsel to the official committee of unsecured creditors, if one is appointed, and (e) the United States Trustee for the Eastern District of New York (each, a "**Party in Interest**").  If the Debtors have not cured such delinquency or no Party in Interest has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall (i) remit to such Utility Company from the Utility Deposit Account the lesser of (a) the amount allocated in the Adequate Assurance Deposit for such Utility Company's account and (b) the amount of postpetition charges claimed as delinquent in the Delinquency Notice; and (ii) replenish the Utility Deposit Account for the amount remitted to such Utility Company.

6.      The following procedures are hereby approved:

(a)      If a Utility Company is not satisfied with the assurance of future payment provided by the Debtors, the Utility Company must file and serve an objection setting forth: (i) the location(s) for which Utility Services are provided; (ii) the account number(s) for such location(s); (iii) the outstanding balance for each account; (iv) the amount of any deposit(s) made by the Debtors prior to the Petition Date; (v) a summary of the Debtors' payment history in each account; and (vi) any argument as to why the Utility Company has not been provided adequate assurance of payment (an "**Objection**").

(b)    The Court has scheduled the Final Hearing on _____, 2019 at __.m. (EDT) (the "**Hearing Date**") for the purpose of considering any Objections.

(c)    Any Objection by a Utility Company listed on Exhibit A to the Utilities Motion must be actually received by the Debtors' counsel, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn: Schuyler G. Carroll, Esq., Daniel B. Besikof, Esq., and Noah Weingarten, Esq., by no later than seven (7) days prior to the Hearing Date.  The Debtors may file and serve a reply to any such Objection on or before the date that is two (2) days prior to the Hearing Date.

(d)    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Company whether or not such Utility Company has filed an Objection, if the Debtors in their discretion determine that there is a reasonable basis for providing such additional adequate assurance.

(e)    If the Debtors discover the existence of a Utility Company not listed on Exhibit A to the Utilities Motion, the Debtors shall, within two (2) business days after discovering the existence of such Utility Company, (i) file a supplement to Exhibit A which supplement shall identify the Utility Company and the amount of the Adequate Assurance Deposit the Debtors propose to issue to such Utility Company; and (b) serve such Utility Company with notice of entry and a copy of the Interim Order.

(f)    In the event that a Utility Company not listed on Exhibit A to the Utilities Motion objects to the Debtors' proposal to provide adequate assurance of payment, such Utility Company must file and serve on counsel for the Debtors an Objection within fourteen (14) days after the date upon which it receives notice of entry of the Interim Order.  A hearing on such Objection will be set by the Court no sooner than seven (7) days after the date upon which such Objection has been filed.  The Debtors may file and serve a reply to any such Objection on or before the date that is two (2) days prior to such hearing date.

(g)    All Utility Companies will be deemed to have received adequate assurance of payment in accordance with section 366, without the need for an additional deposit or other security, until the Court enters an order to the contrary.  Any Utility Company that fails to file a timely Objection shall be deemed to be satisfied that the Utility Deposit Account provides adequate assurance of payment for future services within the meaning of Section 366(c)(2).

7.    In the event that no timely Objections are filed, this Interim Order shall be

deemed a Final Order and immediately effective as a Final Order, without further notice or hearing on the Utilities Motion.

8.      The Debtors shall serve this Interim Order upon each of the Utility Companies listed on Exhibit A to the Utilities Motion, at the addresses listed thereon, by first-class mail, postage prepaid, promptly within three business days after the entry of this Interim Order.

9.      The inclusion or exclusion of any entity on or from Exhibit A to the Utilities Motion or on or from any amended Exhibit A shall not constitute an admission that such entity is or is not a "utility" within the meaning of section 366.  This Interim Order specifically reserves the Debtors' right to argue that (a) any of the entities listed on Exhibit A to the Utilities Motion or any amended Exhibit A is not a "utility" within the meaning of section 366; and (b) any such entity is compelled by contractual obligation, federal, state or local law, or otherwise, to continue to furnish services to the Debtors notwithstanding the Debtors' filing of their Chapter 11 Cases.

10.     Nothing in this Interim Order or the Utilities Motion shall be deemed to vacate or modify any other restrictions on the termination of service by a Utility Company as provided by sections 362 and 365 or other applicable law and nothing herein or in the Utilities Motion shall constitute postpetition assumption or adoption of any agreement pursuant to section 365. Nothing in this Interim Order shall be deemed a waiver by the Debtors or any other party of any right with respect to the assumption or rejection of an executory contract.

11.     Nothing in this Interim Order shall be deemed a finding of fact that the Debtors' Utility Deposit Account satisfies section 366(c).

12.     The Debtors are authorized to pay on a timely basis in accordance with their prepetition practices all undisputed invoices in respect of postpetition Utility Services rendered by the Utility Companies to the Debtors as well as the most recent invoice received from the

Utility Companies, even if a portion of the period covered by the invoice is for the pre-Petition Date period.

13.     The relief granted herein and any payments to be made pursuant to this Interim Order are subject to the terms of any orders approving debtor-in-possession financing or use of cash collateral, including without limitation, the Interim DIP Order, and to the extent that any inconsistency exists between the terms of such orders and this Interim Order, the terms of such orders approving debtor-in-possession financing or use of cash collateral shall control.

14.     A final hearing to consider the Utilities Motion shall be held on **October \_\_\_\_, 2019 at \_\_\_\_ \_.m. (Eastern Time)** and **any objections or responses to the Utilities Motion shall be filed and served so as to be actually received on or prior to October \_\_\_\_, 2019 at \_\_\_\_ \_.m. (Eastern Time)**, and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn:  Schuyler G. Carroll, Esq. (scarroll@loeb.com), Daniel G. Besikof, Esq. (dbesikof@loeb.com), or Noah Weingarten, Esq. (nweingarten@loeb.com); (b) the U.S. Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722-4456 (Attn: Christine H. Black, Esq.), Christine.H.Black@usdoj.gov; and, if applicable, (c) counsel to any statutory committees appointed in these Chapter 11 Cases.

15.     To the extent applicable, the requirements of Bankruptcy Rule 6004(a) are waived.

16.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

17.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Interim Order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-76260-ast |
| | ) | Case No. 19-76263-ast |
| In re: | ) | Case No. 19-76267-ast |
| | ) | Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al*. | ) | Case No. 19-76269-ast |
| | ) | Case No. 19-76270-ast |
| Debtors.[1] | ) | Case No. 19-76271-ast |
| | ) | Case No. 19-76272-ast |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

### ORDER EXTENDING TIME FOR DEBTORS TO FILE THEIR SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Upon consideration of the motion (the "**Motion for Extension of Deadline**")[2] of the

above-captioned debtors and debtors-in-possession (the "**Debtors**") for entry of an order, pursuant

to Bankruptcy Rules 1007(a)(5), 1007(c), and 9006(b), granting each Debtor an extension of time

to file its Schedules and Statements; the Court having reviewed the Motion for Extension of

Deadline and the First-Day Declaration; and the Court having determined that the relief requested

in the Motion for Extension of Deadline is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and the Court having jurisdiction to consider the Motion

for Extension of Deadline and the relief requested therein in accordance with 28 U.S.C. §§ 157

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]   All capitalized terms not defined herein are given the meaning assigned to them in the Motion for Extension of Deadline.

1

and 1334; and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion for Extension of Deadline has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion for Extension of Deadline is **GRANTED** as set forth herein.  All objections to the relief sought in the Motion for Extension of Deadline that have not been withdrawn or resolved are hereby overruled.

2.      Each of the Debtors are granted an extension of time up to October 16, 2019 at 10:00 a.m. to file their Schedules and Statements, without prejudice to the Debtors' right to seek a further extension of this time period by the filing of a motion on appropriate notice.

3.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-76260-ast |
| | ) Case No. 19-76263-ast |
| In re: | ) Case No. 19-76267-ast |
| | ) Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al.* | ) Case No. 19-76269-ast |
| | ) Case No. 19-76270-ast |
| Debtors.[1] | ) Case No. 19-76271-ast |
| | ) Case No. 19-76272-ast |
| | ) |
| | ) (Jointly Administered) |
| | ) |

**ORDER GRANTING DEBTORS' EMERGENCY MOTION (I) FOR
AUTHORITY TO FILE UNDER SEAL SEPARATE SCHEDULE F, MATRIX,
AND OTHER DOCUMENTS CONTAINING PATIENT INFORMATION,
(II) TO AUTHORIZE CERTAIN PROCEDURES TO MAINTAIN THE
CONFIDENTIALITY OF PATIENT INFORMATION, (III) TO MODIFY
NOTICE TO PATIENTS, AND (IV) FOR RELIEF FROM REQUIRED FORM
OF MAILING MATRIX WITH REGARD TO SEPARATE MATRIX**

On September 12 and 18, 2019, the Court conducted hearings to consider the *Debtors'*

*Emergency Motion (I) for Authority to File Under Seal Separate Schedule F, Matrix, and Other*

*Documents Containing Patient Information, (II) to Authorize Certain Procedures to Maintain the*

*Confidentiality of Patient Information, (III) to Modify Notice to Patients, and (IV) for Relief from*

*Required Form of Mailing Matrix with Regard to Separate Matrix* (the "**Patient Procedures**

**Motion**"),[2] filed by the above-captioned debtors (the "**Debtors**").  The Court finds that: (i) it has

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]  Capitalized terms not defined herein are given the meaning ascribed to them in the Patient Procedures Motion.

jurisdiction over the matters raised in the Patient Procedures Motion pursuant to 28 U.S.C. §§ 157

and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue being proper

in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Patient

Procedures Motion is in the best interests of the Debtors, their estates, and their creditors; (v)

proper and adequate notice of the Patient Procedures Motion has been given and no other or further

notice is necessary; and (vi) upon the record herein after due deliberation thereon, good and

sufficient cause exists for the granting of the relief as set forth herein.

Therefore, **IT IS HEREBY ORDERED THAT**

1.      The Patient Procedures Motion is **GRANTED**.

2.      The Debtors are authorized to file each a separate Supplemental Schedule F and

Patient Matrix, which shall list all Patients going back to at least March 10, 2017, as well as all

other documents containing Patient information, under seal.  Notwithstanding the foregoing, the

Debtors may elect not to file under seal any references in any of their schedules, statements of

financial affairs or other filings any reference to litigations commenced by or against Patients,

since the existence of and parties to such litigations are already in the public domain, and such

disclosure shall be consistent with and not violate HIPAA.

3.      The Clerk of the Court shall accept each separate Supplemental Schedule F and

Patient Matrix, as well as any other document referencing Patient information, for filing and shall

file such documents under seal.

4.      The Debtors shall omit any reference to the names of Patients from the publicly

filed matrix of creditors and any certificate of service not filed under seal.

5.      The Debtors shall make an un-redacted copy of the Supplemental Schedule F, the

Patient Matrix, and any other document filed under seal containing Patient information available

to (a) the Court, the United States Trustee, and any Patient Care Ombudsman appointed in these Chapter 11 Cases under 11 U.S.C. § 333 upon request; and (b) any other party in interest only after this Court has entered an order, after notice and a hearing, authorizing the Debtors to do so, and such disclosure shall be consistent with and not violate HIPAA.

6.      Each separate Patient Matrix, Supplemental Schedule F, and other document filed under seal pursuant hereto shall be kept confidential indefinitely and shall not be deemed unsealed 60 days after the final disposition of the bankruptcy proceedings.

7.      All Patients with known or suspected claims against the Debtors shall be included in a Supplemental Schedule F and shall receive the notices provided to other general unsecured creditors in the Chapter 11 Cases.

8.      The notice to Patients substantially in the form attached as Exhibit A to the Patient Procedures Motion shall be (a) published in the Buffalo News and Orchard Park Sun twice as soon as practicable after entry of this Order and (b) posted in the reception area located in the main entrance of each of the Debtors' facilities, reasonably calculated to provide notice to the Debtors' Patients currently residing at the Debtors' facilities and shall be deemed effective, adequate, and sufficient notice to all Patients, other than Patients included on a Supplemental Schedule F, and reasonably calculated under the circumstances to apprise those parties of the filing of the Debtors' Chapter 11 Cases and the deadline by which proofs of claim must be filed in these cases, and no further notices and/or pleadings are required to be given to such Patients in these cases unless any such Patient requests further notices and/or pleadings or such timely files a proof of claim.

9.      The Debtors are not required to file the Patient Matrix in the format required by the Local Rules for the filing of creditor matrices.  The Patient Matrix may be submitted in a format that can be readily created from the Debtors' existing records.

10.    The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

11.    This Court shall retain exclusive jurisdiction to hear and decide any and all disputes related to or arising from the implementation, interpretation or enforcement of this Order.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-76260-ast |
| | ) Case No. 19-76263-ast |
| In re: | ) Case No. 19-76267-ast |
| | ) Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al.* | ) Case No. 19-76269-ast |
| | ) Case No. 19-76270-ast |
| Debtors.[1] | ) Case No. 19-76271-ast |
| | ) Case No. 19-76272-ast |
| | ) |
| | ) (Jointly Administered) |
| | ) |

INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO
(A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION,
(B) PAY AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO,
INCLUDING BROKER FEES AND PREMIUM FINANCING
OBLIGATIONS; AND (II) GRANTING RELATED RELIEF

On September 12 and 18, 2019, the Court conducted hearings to consider the *Motion for
Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Insurance Coverage
Entered Into Prepetition, (B) Pay and Satisfy Prepetition Obligations Related Thereto, Including
Broker Fees and Premium Financing Obligations; and (II) Granting Related Relief* (the
"**Insurance Motion**"),[2] filed by the above-captioned debtors (the "**Debtors**").  The Court finds
that: (i) it has jurisdiction over the matters raised in the Insurance Motion pursuant to 28 U.S.C.
§§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and
Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266);
Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641);
Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and
Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC
(7924).

[2]  Capitalized terms not defined herein are given the meaning ascribed to them in the Insurance Motion.

requested in the Insurance Motion is in the best interests of the Debtors, their estates, and their creditors; (iv) proper and adequate notice of the Insurance Motion has been given and no other or further notice is necessary; and (v) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, **IT IS HEREBY ORDERED THAT**

1.      The Insurance Motion is **GRANTED** on an interim basis, as set forth herein.

2.      The Debtors are authorized to maintain the Insurance Policies without interruption and to pay, honor, or otherwise satisfy premiums, claims, deductibles, retentions, retrospective adjustments, administrative fees, brokerage fees, and any other obligations on account of the Insurance Policies, and the Premium Financing Agreements that become due and payable prior to the entry of the Final Order, including, without limitation, any amounts that arose pre-petition, in an aggregate amount not to exceed $274,821.01.

3.      Notwithstanding the relief granted herein, this Interim Order shall not be deemed to authorize the Debtors to pay the Prepetition Balance to the Insurance Broker absent further order of this Court.

4.      A final hearing to consider the Insurance Motion shall be held on **October 3, 2019 at 1:30 p.m. (Eastern Time) and any objections or responses to the Insurance Motion shall be filed and served so as to be actually received on or prior to September 26, 2019 at 4:00 p.m. (Eastern Time)**, and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn:  Schuyler G. Carroll, Esq. (scarroll@loeb.com), Daniel G. Besikof, Esq. (dbesikof@loeb.com), or Noah Weingarten, Esq. (nweingarten@loeb.com); (b) the U.S. Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722-4456 (Attn:

2

Christine H. Black, Esq.), Christine.H.Black@usdoj.gov; and, if applicable, (c) counsel to any statutory committees appointed in these Chapter 11 Cases.

5.     Nothing in this Interim Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or in the Insurance Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

6.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

7.     The notice of the relief requested in the Insurance Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Interim Order shall be immediately effective and enforceable upon its entry.

8.     The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Interim Order.

9.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Interim Order.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-76260-ast |
| | ) | Case No. 19-76263-ast |
| In re: | ) | Case No. 19-76267-ast |
| | ) | Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al*. | ) | Case No. 19-76269-ast |
| | ) | Case No. 19-76270-ast |
| Debtors.[1] | ) | Case No. 19-76271-ast |
| | ) | Case No. 19-76272-ast |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

## INTERIM ORDER (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO (A) PAY AND HONOR PREPETITION EMPLOYEE OBLIGATIONS AND (B) MAINTAIN AND CONTINUE CERTAIN COMPENSATION AND BENEFIT PROGRAMS POSTPETITION; AND (II) GRANTING RELATED RELIEF

On September 12 and 18, 2019, the Court conducted hearings to consider the *Debtors'*
*Emergency Motion for Interim and Final Orders (I) Authorizing, But Not Directing, Debtors to*
*(A) Pay and Honor Prepetition Employee Obligations, and (B) Maintain and Continue Certain*
*Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief* (the
"**Employee Wage Motion**")[2] filed by the above-captioned debtors (the "**Debtors**"). The Court
finds that: (i) it has jurisdiction over the matters raised in the Employee Wage Motion pursuant to
28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax
identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and
Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266);
Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641);
Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and
Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC
(7924).

[2] Capitalized terms used but not defined shall have the meaning ascribed to them in the Employee Wage
Motion.

18183615

venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Employee Wage Motion is in the best interests of the Debtors, their estates, and their creditors; (v) proper and adequate notice of the Employee Wage Motion has been given and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, **IT IS HEREBY ORDERED THAT**

1.      The Employee Wage Motion is **GRANTED** on an interim basis, as set forth herein.

2.      Pursuant to sections 105(a), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003, the Debtors are authorized, but not directed, to pay and/or honor, in their sole discretion, prepetition payroll and payroll tax obligations in a total amount of $831,486, in the amounts specified in Exhibit 1, through the final hearing to be held on October 3, 2019 at 1:30 p.m.; provided, however, that no single individual shall be paid on account of any prepetition claim for wages, benefits, or other compensation over the statutory cap of $13,650 provided for under sections 507(a)(4) and (5) of the Bankruptcy Code, absent further order of the Court.

3.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations to insiders that are subject to section 503(c) of the Bankruptcy Code.

4.      The Debtors are authorized, in their sole discretion, to pay all outstanding prepetition Reimbursable Expenses, including, without limitation all amounts due as of the Petition Date under the Corporate Credit Card Program.

5.      The Debtors are authorized, in their sole discretion, to pay all outstanding

prepetition Pension Fund Obligations and Education Fund Obligations.

6.      The Debtors and any applicable third parties are authorized to continue to allocate and distribute postpetition Employee Withholdings to the appropriate taxing authorities or third-party recipients in accordance with the Debtors' stated policies and prepetition practices.

7.      The Banks are authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks drawn on, or electronic transfer requests from, the Debtors' accounts, whether such checks or requests are presented or submitted prior to or after the Petition Date, to the extent such checks or requests are expressly identified by the Debtors as related directly to the payment of the amounts authorized herein, provided that sufficient funds are available in the applicable bank accounts to make such payments.

8.      The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations.

9.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a result of the filing of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any amounts authorized herein.

10.     Subject to the applicable provisions of the Bankruptcy Code, the Debtors are authorized to modify, change, and discontinue any of the policies, plans, programs, practices, and procedures associated with the Employees and/or to implement new plans, policies, practices and procedures related thereto in the ordinary course of business during these Chapter 11 Cases, in their sole discretion and without the need for further Court approval; provided, however, that the

Debtors shall give notice to beneficiaries of such policies, plans, programs, practices, and procedures.

11.     A final hearing to consider the relief requested in the Employee Wage Motion shall be held on **October 3, 2019 at 1:30 p.m. (Eastern Time) and any objections or responses to the Employee Wage Motion shall be filed and served so as to be actually received on or prior to October 2, 2019 at 4:00 p.m. (Eastern Time)**, and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn:     Schuyler G. Carroll, Esq. (scarroll@loeb.com), Daniel B. Besikof, Esq. (dbesikof@loeb.com), or Noah Weingarten, Esq. (nweingarten@loeb.com); (b) the U.S. Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722-4456 (Attn: Christine H. Black, Esq.), Christine.H.Black@usdoj.gov; and, if applicable, (c) counsel to any statutory committees appointed in these Chapter 11 Cases.

12.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtor; (b) a waiver of the Debtors' rights to subsequently dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) to grant third-party beneficiary status or bestow any additional rights on any third party; or (g) to be otherwise enforceable by any third party.

13.     Notwithstanding the relief granted herein or any action taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any

claim held by, any Employee, or any other person or entity.

14. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

15. The notice of the relief requested in the Employee Wage Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

16. The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Order.

17. The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

**<u>Exhibit 1</u>**

**(Budget of Prepetition Payroll and Payroll Tax Obligations)**

| Pre-Petition Payroll and Payroll Taxes | | | | |
|---|---|---|---|---|
| | **13-Sep** | **20-Sep** | **27-Sep** | **4-Oct** |
| **Payroll** | $ (565,452.61) | $ (269,857.71) | $ - | $ - |
| **Payroll Taxes** | $ (185,159.59) | $ (198,565.32) | $ (193,293.31) | $ (27,175.24) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>Absolut Facilities Management, LLC, *et al*.<br><br>Debtors.[1] | ) Chapter 11<br>)<br>) Case No. 19-76260-ast<br>) Case No. 19-76263-ast<br>) Case No. 19-76267-ast<br>) Case No. 19-76268-ast<br>) Case No. 19-76269-ast<br>) Case No. 19-76270-ast<br>) Case No. 19-76271-ast<br>) Case No. 19-76272-ast<br>)<br>) (Jointly Administered)<br>) |

## INTERIM ORDER (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO (A) PAY AND HONOR PREPETITION EMPLOYEE OBLIGATIONS AND (B) MAINTAIN AND CONTINUE CERTAIN COMPENSATION AND BENEFIT PROGRAMS POSTPETITION; AND (II) GRANTING RELATED RELIEF

On September 12 and 18, 2019, the Court conducted hearings to consider the *Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing, But Not Directing, Debtors to (A) Pay and Honor Prepetition Employee Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief* (the "**Employee Wage Motion**")[2] filed by the above-captioned debtors (the "**Debtors**").  The Court finds that: (i) it has jurisdiction over the matters raised in the Employee Wage Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii)

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]  Capitalized terms used but not defined shall have the meaning ascribed to them in the Employee Wage Motion.

18183615

18207217

venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested

in the Employee Wage Motion is in the best interests of the Debtors, their estates, and their

creditors; (v) proper and adequate notice of the Employee Wage Motion has been given and no

other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon,

good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, **IT IS HEREBY ORDERED THAT**

1.      The Employee Wage Motion is **GRANTED** on an interim basis, as set forth

herein.

2.      Pursuant to sections 105(a), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a), and 1108

of the Bankruptcy Code and Bankruptcy Rule 6003, the Debtors are authorized, but not directed,

to pay and/or honor, in their sole discretion, prepetition payroll and payroll tax obligations in a

total amount of $831,486, in the amounts specified in Exhibit 1, through the final hearing to be

held on October 3, 2019 at 1:30 p.m.; provided, however, that no single individual shall be paid

on account of any prepetition claim for wages, benefits, or other compensation over the statutory

cap of $13,650 provided for under sections 507(a)(4) and (5) of the Bankruptcy Code, absent

further order of the Court.

3.      Nothing herein shall be deemed to authorize the payment of any amounts in

satisfaction of bonus or severance obligations to insiders that are subject to section 503(c) of the

Bankruptcy Code.

4.      ~~The Debtors are authorized, in their sole discretion, to pay all outstanding prepetition Reimbursable Expenses, including, without limitation all amounts due as of the Petition Date under the Corporate Credit Card Program.~~

5.      ~~The Debtors are authorized, in their sole discretion, to pay all outstanding~~

prepetition Pension Fund Obligations and Education Fund Obligations.

4.      6. The Debtors and any applicable third parties are authorized to continue to allocate and distribute postpetition Employee Withholdings to the appropriate taxing authorities or third-party recipients in accordance with the Debtors' stated policies and prepetition practices.

5.      7. The Banks are authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks drawn on, or electronic transfer requests from, the Debtors' accounts, whether such checks or requests are presented or submitted prior to or after the Petition Date, to the extent such checks or requests are expressly identified by the Debtors as related directly to the payment of the amounts authorized herein, provided that sufficient funds are available in the applicable bank accounts to make such payments.

6.      8. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations.

7.      9. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a result of the filing of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any amounts authorized herein.

10.      Subject to the applicable provisions of the Bankruptcy Code, the Debtors are authorized to modify, change, and discontinue any of the policies, plans, programs, practices, and procedures associated with the Employees and/or to implement new plans, policies, practices and procedures related thereto in the ordinary course of business during these Chapter 11 Cases, in their sole discretion and without the need for further Court approval; provided, however, that the

~~Debtors shall give notice to beneficiaries of such policies, plans, programs, practices, and procedures.~~

8.        ~~11.~~A final hearing to consider the relief requested in the Employee Wage Motion shall be held on **October 3, 2019 at 1:30 p.m. (Eastern Time) and any objections or responses to the Employee Wage Motion shall be filed and served so as to be actually received on or prior to October 2, 2019 at 4:00 p.m. (Eastern Time)**, and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn:  Schuyler G. Carroll, Esq. (scarroll@loeb.com), Daniel B. Besikof, Esq. (dbesikof@loeb.com), or Noah Weingarten, Esq. (nweingarten@loeb.com); (b) the U.S. Trustee for the Eastern District of New York, Alfonse D'Amato Federal Courthouse, 560 Federal Plaza, Central Islip, New York 11722-4456 (Attn: Christine H. Black, Esq.), Christine.H.Black@usdoj.gov; and, if applicable, (c) counsel to any statutory committees appointed in these Chapter 11 Cases.

9.        ~~12.~~Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtor; (b) a waiver of the Debtors' rights to subsequently dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) to grant third-party beneficiary status or bestow any additional rights on any third party; or (g) to be otherwise enforceable by any third party.

10.        ~~13.~~Notwithstanding the relief granted herein or any action taken hereunder,

nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Employee, or any other person or entity.

11. ~~14.~~The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

12. ~~15.~~The notice of the relief requested in the Employee Wage Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

13. ~~16.~~The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Order.

14. ~~17.~~The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

**Exhibit 1**

**(Budget of Prepetition Payroll and Payroll Tax Obligations)**

18183615

18207217

| Pre-Petition Payroll and Payroll Taxes | | | | |
|---|---|---|---|---|
| | **13-Sep** | **20-Sep** | **27-Sep** | **4-Oct** |
| **Payroll** | $ (565,452.61) | $ (269,857.71) | $ - | $ - |
| **Payroll Taxes** | $ (185,159.59) | $ (198,565.32) | $ (193,293.31) | $ (27,175.24) |

| Comparison Details | |
|---|---|
| Title | **pdfDocs compareDocs Comparison Results** |
| Date & Time | 9/27/2019 10:57:27 AM |
| Comparison Time | 1.10 seconds |
| compareDocs version | v4.3.200.37 |

| Sources | |
|---|---|
| Original Document | Absolut - Wage Motion -- Interim Order [9-18 HEARING REVISED].DOCX |
| Modified Document | 18207217_1.docx |

| Comparison Statistics | |
|---|---|
| Insertions | 1 |
| Deletions | 3 |
| Changes | 12 |
| Moves | 0 |
| Font Changes | 0 |
| Paragraph Style Changes | 0 |
| Character Style Changes | 0 |
| TOTAL CHANGES | 16 |
| | |
| | |
| | |
| | |
| | |

| Word Rendering Set Markup Options | |
|---|---|
| Name | _Loeb - Standard (New) |
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Font Changes | |
| Paragraph Style Changes | |
| Character Style Changes | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Changed lines | Mark left border. |
| Comments color | By Author. |
| Balloons | False |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after Saving | General | Always |
| Report Type | Word | Formatting |
| Character Level | Word | False |
| Include Headers / Footers | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include List Numbers | Word | True |
| Include Tables | Word | True |
| Include Field Codes | Word | True |
| Include Moves | Word | True |
| Show Track Changes Toolbar | Word | True |
| Show Reviewing Pane | Word | True |
| Update Automatic Links at Open | Word | False |
| Summary Report | Word | End |
| Include Change Detail Report | Word | Separate |
| Document View | Word | Print |
| Remove Personal Information | Word | False |
| Flatten Field Codes | Word | True |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-76260-ast |
| | ) | Case No. 19-76263-ast |
| In re: | ) | Case No. 19-76267-ast |
| | ) | Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-76269-ast |
| | ) | Case No. 19-76270-ast |
| Debtors.[1] | ) | Case No. 19-76271-ast |
| | ) | Case No. 19-76272-ast |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §
363, (C) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362,
363, AND 364, AND (D) SCHEDULING FINAL HEARING PURSUANT TO
BANKRUPTCY RULES 4001(b) AND (c)**

On September 12 and 18, 2019, the Court conducted hearings to consider the Debtors'

Emergency Motion for Interim and Final Orders (I) Authorizing Postpetition Financing; (II) Using

Cash Collateral, (III) Granting Adequate Protection; and (IV) Scheduling Final Hearing

(the "**DIP/Cash Collateral Motion**")[2] filed by the above-captioned debtors (the "**Debtors**").  The

Court finds that: (i) it has jurisdiction over the matters raised in the DIP/Cash Collateral Motion

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C.

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]  Capitalized terms used but not defined shall have the meaning ascribed to them in the DIP/Cash Collateral Motion.

§ 157(b)(2); (iii) the relief granted herein is in the best interests of the Debtors, their estates, and

their creditors; (iv) proper and adequate notice of the DIP/Cash Collateral Motion has been given

and no other or further notice is necessary; and (v) upon the record herein after due deliberation

thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

      A.      **Petition Date**.  On September 10, 2019 (the "**Petition Date**") the Debtors each

filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the Eastern District of New York (the "**Court**").  The Debtors have

continued in the management and operation of their business and properties as debtors in

possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has

been appointed in these Chapter 11 Cases.

      B.      **Jurisdiction and Venue**.  The Court has jurisdiction over these proceedings,

pursuant to 28 U.S.C. § 1334.  Consideration of the DIP/Cash Collateral Motion constitutes a core

proceeding under 28 U.S.C. § 157(b)(2).  Venue for these Chapter 11 Cases and the proceedings

on the DIP/Cash Collateral Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409.

      C.      **Committee Formation**.  As of the date hereof, no official committee of unsecured

creditors has been appointed in these Chapter 11 Cases.

D.  **Notice**.  The Debtors have represented that notice of the interim hearing and the relief requested

in the DIP/Cash Collateral Motion has been provided by the Debtors, by telecopy, e-mail,

overnight courier and/or hand delivery to (i) the Office of the United States Trustee; (ii) the

Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific

pleading; (iv) those persons who have formally appeared and requested notice and service in these

proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the Lender; (vi) counsel

to the Pre-Petition Lender, (vii) counsel to the Arba Group and its affiliates (the "**Landlord**"),

(viii) counsel to Specialty Rx, Inc., (ix) the consolidated 30 largest unsecured creditors of the

Debtors; and (x) all governmental agencies having a regulatory or statutory interest in these

Chapter 11 Cases.   Under the circumstances, such notice constitutes due, sufficient, and

appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules

2002 and 4001(b) and (c) and the Local Rules.

E.   **Need for Postpetition Financing During the Interim Period**.   Good cause has been shown

for entry of this Interim Order.   An immediate need exists for the Debtors to obtain funds and

liquidity during the period of time from the entry of this Interim Order through and including the

earlier of the date of the Final Hearing and the date of occurrence of a Termination Event (the

"**Interim Period**") in order to continue operations, to satisfy the costs and expenses of

administering these Chapter 11 Cases during the Interim Period, and to preserve the value of their

estates.   In addition to any other event of default or termination right under the DIP Loan

Agreement (which are preserved in their entirety), a Termination Event means the first to occur of

any of the following: (a) October 3, 2019 at 1:30 p.m.; (b) the entry of an order by this Court

terminating the use of cash collateral or the DIP Facility; (c) the conversion of this bankruptcy

case to a case under chapter 7 of the Bankruptcy Code; (d) the appointment of a trustee or examiner

or other representative with expanded powers for the Debtors; (e) the dismissal of the Chapter 11

Cases; (f) the Debtors' failure to perform any of their obligations under this Interim Order or their

failure to comply with any of the terms or conditions of this Interim Order; provided that no

Termination Event shall have occurred under this subsection (f) until the Lender or the Pre-Petition

Lender, as applicable, has provided two business days' written notice of any such purported failure

to perform to the Debtors, or (g) modification (without the express written consent of the Pre-Petition Lender or the Lender), reversal or vacatur of this Interim Order.  The DIP Loan Agreement is modified to delete the following Event of Default:  "The Court enters an order requiring the Debtors to pay rent to any landlords within the first 60 days of the Chapter 11 Cases."

F.      **No Credit Available on More Favorable Terms**.  For purposes of the Interim Period, the Debtors have been unable to obtain financing on more favorable terms and conditions from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP/Cash Collateral Motion and this Interim Order, and are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  For purposes of the Interim Period, the Debtors are also not able to obtain credit without providing the superpriority claims and granting a lien to the Lender on the terms and conditions set forth in this Interim Order.

G.      **Use of Proceeds of DIP Facility**.  All proceeds of the DIP Facility shall be used and applied in accordance with the terms and conditions of the DIP Loan Agreement, as approved in this Interim Order.

H.      **Extension of Financing; Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility and the DIP Loan Agreement for this Interim Period are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration.  All of the Debtors' obligations under the DIP Facility and the DIP Loan Agreement for amounts extended during the Interim Period shall be deemed to have been extended by the Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code, in the event that this Interim Order, the Final Order or any provision hereof or thereof is vacated, reversed, or modified on appeal or otherwise.

I.   **Relief Essential; Best Interest**.  The relief requested in the DIP/Cash Collateral Motion for the Interim Period (and provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility during the Interim Period as contemplated herein.

**NOW THEREFORE**, on the DIP/Cash Collateral Motion of the Debtors and the record before this Court, and good and sufficient cause appearing therefore,

**IT IS ORDERED** that:

1.  **Motion Granted As Set Forth Herein**.  The DIP/Cash Collateral Motion is **GRANTED** in accordance with the terms and conditions set forth in this Interim Order.  The DIP Loan Agreement is approved on an interim basis for the Interim Period as set forth herein.  The Debtors are authorized to enter into the DIP Loan Agreement on the terms and conditions set forth herein.  Any objections to the DIP/Cash Collateral Motion with respect to the entry of this Interim Order, to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.  In the event of a conflict between this Interim Order and the DIP Loan Agreement, this Interim Order shall control.

2.   **DIP Facility**.

(a)   Obligations.  The Debtors are expressly and immediately authorized and empowered to enter into the DIP Facility and the DIP Agreement for the Interim Period and to incur all obligations under the DIP Loan Agreement for the Interim Period in accordance with and

subject to this Interim Order, and to take all actions, which may be reasonably required and/or otherwise necessary for the performance by the Debtors under the DIP Facility and the DIP Loan Agreement for this Interim Period, including, but not limited to, the creation and perfection of the DIP Liens and superpriority administrative expense claims described and provided for in the DIP Loan Agreement for funds advanced during the Interim Period in accordance with this Interim Order.  All amounts previously advanced by the Lender to the Debtors on an emergency basis, as approved by the Court on September 12, 2019, are approved on an interim basis under this Interim Order and are deemed to have been advanced under this Interim Order and the DIP Loan Agreement and subject to all obligations, rights and remedies set forth herein and in the DIP Loan Agreement.  The Debtors are hereby authorized and directed to pay all principal, interest, fees, attorneys' fees, expenses and all other amounts required to be paid under the DIP Loan Agreement for amounts advanced during the Interim Period in accordance with this Interim Order as such shall accrue and become due thereunder.  The DIP Facility and the DIP Loan Agreement, to the extent approved in this Interim Order, shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors and their estates, jointly and severally, and/or against any successors thereto.  No obligation, payment, transfer, right or grant of security under the DIP Facility and the DIP Loan Agreement as approved under this Interim Order for amounts advanced during the Interim Period (or deemed to have been advanced under this Interim Order) pursuant to the terms of this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code and/or under any applicable non-bankruptcy law, and/or subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)    <u>Authorization to Borrow</u>.  To continue operations, subject to the terms and conditions of this Interim Order and the DIP Loan Agreement, the Debtors are hereby authorized

to borrow under the DIP Facility up to an aggregate principal amount of $819,000 (including the $209,000 previously advanced).

(c)    <u>Collateral</u>.  As used herein, "Collateral" shall have the same meaning as the term "DIP Collateral" in the DIP Loan Agreement.

(d)    <u>Lien</u>.    Effective immediately upon the entry of this Interim Order, and subject and subordinate only to the Carve-Out (to the extent the Carve-Out is granted in the Final Order) and the Pre-Petition Lender Liens, the Lender is hereby granted a secured lien on the Collateral, which lien shall be deemed effective and perfected as of the Petition Date, and no further filing, notice or act will be required to effect such perfection.  Such lien and the Carve-Out shall be junior to all liens of the Pre-Petition Lender granted herein and under the pre-petition loan documents (the "**Prepetition Lender Liens**").  The liens granted herein shall not be senior to the United States Trustee statutory fees payable under 28 U.S.C. section 1930(a)(6) (the "**UST Fees**"). The Budget provides for payment of the UST Fees in the line item listed as "Total Restructuring Disbursements."

(e)    <u>Superpriority Administrative Claim</u>.  The Lender is granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim, junior to all claims of the Pre-Petition Lender granted herein and pursuant to the pre-petition loan documents, for the amounts advanced to the Debtors during the Interim Period (or deemed to have been advanced under this Interim Order) in accordance with this Interim Order.

3.    **Authorization and Approval to Use Proceeds of DIP Facility**.  Subject to the terms and conditions of this Interim Order and the DIP Loan Agreement (to the extent approved herein), the Debtors are authorized to request and use proceeds of DIP Facility during the Interim Period.

4.      **Limitation on Use of DIP Facility Proceeds**.  No proceeds of the DIP Facility may be used in contravention of this Interim Order or the DIP Loan Agreement.

5.      **Carve-Out**.  As used herein, "Carve-Out" has the meaning set forth in the DIP Loan Agreement.

**6.**      **Cash Management**.  All amounts collected in the Debtors' cash collection accounts may be used in accordance with this Interim Order and the DIP Loan Agreement and shall be made available to the Debtors on the terms set forth in the *Interim Order (I) Authorizing the Debtors to (A) Continue Using their Cash Management System and (B) Maintain Existing Bank Accounts and Business Forms; (II) Waiving Certain Deposit Guidelines; and (III) Granting Related Relief* [Docket No. __], the terms of which are incorporated herein by reference.

7.      **Use of Cash Collateral; Adequate Protection**.

(a)      <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order and the DIP Loan Agreement, the Debtors shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) for the Interim Period and until a Termination Event; provided that the Debtors' expenditures of cash (including proceeds of the DIP Facility) shall be within 10% of the aggregate weekly gross disbursements identified on the 13-week cash flow projections (the "**Budget**") attached hereto as **Exhibit A**, measured on the last business day of each week.  The Debtors' use of Cash Collateral shall automatically terminate upon the occurrence of a Termination Event without further order or relief from the Court.  The Debtors shall provide the Pre-Petition Lender and the Landlord, on a weekly basis, no later than 1 p.m. E.T. on Wednesday of each week, a report reconciling the Debtors' actual performance to the Budget, an accounts payable aging schedule, and an accounts receivable aging schedule.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors

or their estates outside the ordinary course of business absent further order of this Court, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order and the DIP Loan Agreement.

(b)     Replacement Liens. As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral) and the imposition of the automatic stay (collectively, the "**Diminution in Value**"), the Pre-Petition Lender is hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable, and perfected replacement liens upon and security interests in all Collateral, including any and all property purchased or acquired with Collateral and any proceeds thereof (the "**Pre-Petition Lender Adequate Protection Liens**"), and the right to receive monthly payments of interest, at the non-default rate set forth in the Pre-Petition Loan Agreements ("**Adequate Protection Interest**"), fees and expenses, including, without limitation, the reasonable fees and disbursements of counsel to the Pre-Petition Lender ("**Adequate Protection Fees**" and collectively with the Adequate Protection Interest, the "**Adequate Protection Payments**"). The Pre-Petition Lender Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral.  The Adequate Protection Payments will be payable by the Debtors as follows:  (i) on the first business day of each month, the Debtors shall pay the Adequate Protection Interest; and (ii) monthly, within ten business days of their receipt of an invoice, with time-entry detail, identifying the reasonable fees and expenses constituting the Adequate Protection Fees with any necessary redactions thereto, the Debtors shall pay that portion of the Adequate Protection Fees to which the Debtors have no objection.  In the event of any objection by the Debtors to any Adequate Protection Fees, such Adequate Protection

Fees that are the subject of such objection shall not be paid by the Debtors until the dispute over such amounts are resolved by the Debtors and the Pre-Petition Lender or by this Court.  The parties shall work in good faith to resolve any such objection, and to the extent the parties cannot resolve such objection, the Court will have exclusive jurisdiction to determine it.  In the event the Debtors do not timely pay the Adequate Protection Payments in the manner described above, without the necessity of any further Court order or filing any request therefor, but after providing written notice to the Debtors of not less than five business days of the date and amount of any deduction or setoff, the Pre-Petition Lender may deduct or setoff any Adequate Protection Payments payable under this Interim Order, from amounts on deposit in the Debtors' depository accounts held at CFG Community Bank; provided that, to the extent there are insufficient funds in the Deposit Accounts to satisfy in full any Adequate Protection Payment then due and payable, the Debtors shall promptly, and in any event within five (5) business days of written request therefor from the Pre-Petition Lender, pay such Adequate Protection Payment in cash to the Pre-Petition Lender.

(c)     Section 507(b) Priority Claims. As adequate protection for the Diminution in Value, the Pre-Petition Lender is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim under section in each of the Chapter 11 Cases and any successor bankruptcy cases (the "**Pre-Petition Lender Adequate Protection Superpriority Claim**"). The Pre-Petition Lender Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against Debtors and their estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)     Senior Liens; Setoff and Recoupment Prohibitions.  Pre-Petition Lender's pre-petition liens and the Pre-Petition Lender Adequate Protection Liens shall be senior to and

prime any lien (if any) asserted by any governmental authority, including without limitation, the federal and state agencies and their intermediaries administering the Medicare and Medicaid programs with which the Debtors deal, or any other creditor. The Pre-Petition Lender's liens on the Collateral (and proceeds therefrom) shall be senior to any right of a holder of a claim, including without limitation, any mortgagee, governmental authority or landlord, that arose, or is deemed to arise, prior to the Petition Date, of any right of set off, tax lien, tax levy, or to otherwise assert a charge against any such Collateral.

8.      **Rights and Remedies Upon Event of Default**.

(a)      Upon and after an event of default as set forth in the DIP Loan Agreement, the Lender shall have all of the rights, remedies and obligations set forth in the DIP Loan Agreement; provided that the Lender shall be required to seek relief – which relief may be sought on an expedited basis – for relief from the automatic stay before giving effect to any such rights, remedies or obligations; provided that the Lender shall not be required to seek or obtain relief from the automatic stay to declare a default under or to terminate the DIP Loan Agreement or the DIP Facility if it provides at least 48 hours' written notice of any such declared default or termination to the Debtor, the Pre-Petition Lender and the Landlord.

(b)      Nothing included herein shall prejudice, impair or otherwise affect the Lender's rights to seek any other and/or supplemental relief with respect to the Debtors (including, as the case may be, other and/or additional adequate protection).

9.      **Modification of the Automatic Stay**. The automatic stay imposed under section 362 of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Facility and the DIP Loan Agreement as necessary to (i) permit the Debtors to grant the liens contemplated by the DIP Facility during the Interim Period to the Lender, (ii) permit the Debtors to grant the Pre-

Petition Lender Adequate Protection Liens, (iii) authorize the Debtors to pay the Adequate Protection Payments as set forth herein, and (iv) authorize the Lender to retain and apply payments, and/or otherwise enforce its rights and remedies and the DIP Loan Agreement as approved under this Interim Order.

10.    **Proofs of Claim**.  The Lender is hereby authorized and entitled, in its sole and absolute discretion, but not required, to file (and amend and/or supplement, as its sees fit) a proof of claim and/or aggregate proofs of claim in these Chapter 11 Cases for any claim allowed herein.

11.    **Other Rights and Obligations.**

(a)    Good Faith Under Section 364(e) of the Bankruptcy Code.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility and the DIP Loan Agreement as approved by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended and/or vacated by a subsequent order of this Court and/or any other court, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code for any funds advanced during the Interim Period in accordance with this Interim Order (or deemed to have been advanced under this Interim Order), and no such appeal, modification, amendment and/or vacation shall affect the validity and/or enforceability of any advances made hereunder and/or the liens and/or priority authorized and/or created under this Interim Order or the DIP Loan Agreement. Notwithstanding any such modification, amendment and/or vacation, any claim granted to the Lender hereunder arising prior to the effective date of such modification, amendment and/or vacation of any lien granted to the Lender shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all of the rights, remedies, privileges and/or benefits, including the liens granted herein, with respect to any such claim.

Because the DIP Facility is made in reliance on this Interim Order, the obligations incurred by the Debtors and/or owed to the Lender prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in the Case or in any successor case, be disallowed and/or subordinated, lose its lien priority or administrative expense claim status, and/or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this the Interim Order for funds advanced during the Interim Period in accordance with this Interim Order (or deemed to have been advanced under this Interim Order).

(b)     <u>Binding Effect</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtors, and their respective successors and assigns (including, without limitation, any trustee and/or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

(c)     <u>No Waiver</u>.  The failure of the Lender or the Pre-Petition Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order or the DIP Loan Agreement shall not constitute a waiver of any of the Lender's rights under this Interim Order or the DIP Loan Agreement.

(d)     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, third party or incidental beneficiary.  Nothing herein shall release, waive, or impair any and all rights, claims, demands, or causes of action which the Pre-Petition Lender is capable of asserting against any and all co-makers, guarantors, or sureties of the Debtors' obligations to the Pre-Petition Lender and the Pre-Petition Lender specifically reserves any and all rights, claims, demands or causes of action.

18060377.3

13

(e)     <u>No Marshalling</u>.  The Lender shall not be subject to the equitable doctrine of "marshaling" and/or any other similar doctrine with respect to any of the Collateral during the Interim Period.

(f)     <u>Amendment</u>.  The Debtors and the Lender may amend, modify, supplement, and/or waive any provision of the DIP Facility and the DIP Loan Agreement without further notice to or approval of the Court, unless such amendment, modification, supplement, or waiver (i) increases the interest rate charged in connection with the DIP Facility, (ii) increases the commitment of the Lender to make advances under the DIP Facility, or (iii) otherwise is materially adverse to the interests of the Debtors or their estates.  Except as otherwise provided herein, no waiver, modification, and/or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and the Lender and approved by the Court after notice to parties in interest.

(g)     <u>Priority of Terms</u>.  To the extent of any conflict between or among (i) the DIP/Cash Collateral Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

(h)     <u>Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(i)     <u>Waiver of Any Applicable Stay</u>.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

18060377.3                    14

(j)      <u>Retention of Jurisdiction</u>.   The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

(k)      <u>Landlord's Reservation of Setoff and Recoupment Rights</u>.   The Landlord reserve its setoff and recoupment rights in respect of any security deposit that the Debtors previously paid to the Landlord with respect to the premises that the Debtors currently lease from the Landlord; provided that the Landlord shall be required to seek relief from the automatic stay before giving effect to any such rights.

(l)      <u>Reservation of Objection Rights</u>.   Any objections to the DIP/Cash Collateral Motion with respect to the entry of this Interim Order, to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby reserved.

12.      **<u>Final Hearing</u>**.   A final hearing to consider the relief requested in the DIP/Cash Collateral Motion shall be held on October 3, 2019 at 1:30 p.m. (Eastern Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to _____ __, 2019 at 4:00 p.m. (Eastern Time), and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10154 (Attn: Schuyler G. Carroll, Esq.), scarroll@loeb.com; (b) the U.S. Trustee for the Eastern District of New York, Christine Black, Esq. christine.h.black@usdoj.gov; (c) counsel to the Pre-Petition Lender, Blank Rome LLP, 444 W. Lake Street, Suite 1650, Chicago, IL 60606 (Attn: Kenneth J. Ottaviano, Esq. and Paige B. Tinkham), KOttaviano@blankrome.com and PTinkham@blankrome.com; (d) counsel to the Lender, Bodner Law PLLC, 40 Cutler Mill Road, #301, Great Neck, NY 11021 (Attn: Jonathan S. Bodner, Esq.), jbodner@bodnerlawpllc.com; (e) counsel to the Union, Levy Ratner, P.C., 80 Eighth Avenue, 8th Floor, New York, NY 10011 (Attn: Suzanne Hepner, Esq.)

shepner@levyratner.com; and, if applicable, (f) counsel to any statutory committees appointed in these Chapter 11 Cases.

**<u>Exhibit A</u>**

**(Budget)**