**Hearing Date and Time: To Be Determined**

Thomas R. Slome
Michael Kwiatkowski
CULLEN AND DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Telephone: (516) 357-3700
Facsimile: (516) 357-3792
Email: tslome@CullenandDykman.com
        mkwiatkowski@CullenandDykman.com

        and

Russell R. Johnson III
John M. Craig
LAW FIRM OF RUSSELL R. JOHNSON III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
Email: russell@russelljohnsonlawfirm.com
        john@russelljohnsonlawfirm.com

*Co-Counsel for New York State Electric and Gas Corporation*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **Absolut Facilities Management, LLC,** *et al.*, | ) Case No. 19-76260 (AST) |
| | ) Case No. 19-76263 (AST) |
| Debtors. | ) Case No. 19-76267 (AST) |
| | ) Case No. 19-76268 (AST) |
| | ) Case No. 19-76269 (AST) |
| | ) Case No. 19-76270 (AST) |
| | ) Case No. 19-76271 (AST) |
| | ) Case No. 19-76272 (AST) |
| | ) |
| | ) **(Jointly Administered)** |
| | ) |
| | ) |

**OBJECTION OF NEW YORK STATE ELECTRIC AND GAS CORPORATION TO
DEBTORS' EMERGENCY MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(A) AND
366 (I) PROHIBITING UTILITY COMPANIES FROM ALTERING OR
DISCONTINUING SERVICE ON ACCOUNT OF PREPETITION INVOICES, (II)
APPROVING DEPOSIT ACCOUNT AS ADEQUATE ASSURANCE OF PAYMENT,
AND (III) ESTABLISHING PROCEDURES FOR RESOLVING REQUESTS BY
<u>UTILITY COMPANIES FOR ADDITIONAL ASSURANCE OF PAYMENT</u>**

New York State Electric and Gas Corporation ("NYSEG"), by counsel, hereby objects to

the *Debtors' Emergency Motion For Order Under 11 U.S.C. §§ 105(A) and 366 (I) Prohibiting*

*Utility Companies From Altering or Discontinuing Service on Account of Prepetition Invoices,*

*(II) Approving Deposit Account As Adequate Assurance of Payment, and (III) Establishing*

*Procedures For Resolving Requests By Utility Companies For Additional Assurance of Payment*

(the "Utility Motion") (Docket No. 5), and sets forth the following:

<u>Introduction</u>

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under

Section 366(c) (3) from modifying the amount of the adequate assurance of payment requested

by NYSEG under Section 366(c)(2) to setting the form and amount of the adequate assurance of

payment acceptable to the Debtors.  This Court should not permit the Debtors to shift their

statutory burden.

The Debtors seek to have this Court approve their form of adequate assurance of

payment, which is to earmark a sum equal to approximately 50% of the Debtors' estimated

monthly utility charges that may be contained in the Debtors' existing bank accounts and not in a

separate bank account (the "Utility Earmark").  Section 366(c) of the Bankruptcy Code

specifically defines the forms of adequate assurance of payment in Section 366(c) (1), none of

which include the Debtors' right to "earmark" funds for utilities that will be held by the Debtors in their own bank accounts.

The Court should reject the Debtors' proposed Utility Earmark because: (1) NYSEG bills the Debtors on a monthly basis and provides the Debtors with generous payment terms pursuant to applicable state law tariffs and regulations and a two-week amount held by the Debtors is not sufficient in amount or in form to provide NYSEG with adequate assurance of payment; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate assurance of payment in Section 366(c)(1), none of which include the Debtors' right to "earmark" funds for utilities as adequate assurance to be contained in the Debtors' bank accounts; and (3) Even if this Court were to improperly consider Utility Earmark as a form of adequate assurance of payment for NYSEG, the Court should reject it as an insufficient form of adequate assurance of payment for the reasons set forth in Section A.1. of this Objection.

NYSEG is seeking a two-month cash deposit in the amount of $85,790 from the Debtors, which is an amount that NYSEG is authorized to obtain pursuant to applicable state law. Based on all the foregoing, this Court should deny the Utility Motion as to NYSEG because the amount of NYSEG's post-petition deposit request is reasonable under the circumstances and should not be modified.

## Facts

### Procedural Facts

1.     On September 10, 2019 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now

pending with this Court. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.        The Debtors' chapter 11 bankruptcy cases are being jointly administered.

### The Utility Motion

3.        On September 11, 2019, the Debtors filed the Utility Motion.

4.        On September 18, 2019, the Court held a hearing on the Utility Motion.

5.        The Debtors seek to avoid the applicable legal standards under Sections 366(c)(2) and (3) by seeking Court approval for their own form of adequate assurance of payment, which is the Utility Earmark that supposedly reflects a sum equal to approximately 50% of the Debtors' estimated monthly utility charges that may be contained in the Debtors' existing bank accounts and not in a separate bank account. Utility Motion at ¶ 15.

6.        The proposed Utility Earmark is not acceptable to NYSEG and should not be considered relevant by this Court because Sections 366(c)(2) and (3) do not allow the Debtors to establish the form or amount of adequate assurance of payment. Under Sections 366(c)(2) and (3), this Court and the Debtors are limited to modifying, if at all, the amount of the security sought by NYSEG under Section 366(c)(2).

7.        The Debtors' propose that the Utility Earmark would be subject to the terms and conditions of the DIP Financing agreement and applicable Orders. Utility Motion at ¶ 15. It is not clear if the Debtors and their secured lenders are trying to subordinate all of the post-petition payments made to NYSEG to the secured lenders' liens or just the proposed Utility Earmark amount. At a minimum, all post-petition payments made by the Debtors to NYSEG, including any post-petition security, should not be subordinated to the lenders' liens or subject to

4

subsequent disgorgement by the secured lenders. If the Debtors want NYSEG to provide post-petition utility goods/services, any and all post-petition payments made to NYSEG should be free and clear of any and all liens, otherwise all of the relief sought in the Utility Motion is nothing more than a subterfuge.

8.    Through the Utility Motion, the Debtors seek to pay the most recent invoices received from a utility provider, even if a portion of the period covered by an invoice is for service prior to the Petition Date. Utility Motion at ¶ 7. In connection with the foregoing, NYSEG, by counsel, has contacted Debtors' counsel to ascertain if checks received post-petition from the Debtors were tendered pursuant to the foregoing provision and whether the checks will clear the bank. Debtors' counsel has responded to the emails, but have not yet provided an answer as to why the checks were tendered or if they will clear the bank.

9.    The Utility Motion does not address why the Utility Earmark would be undercapitalized at only a supposed two-week deposit amount when the Debtors know that NYSEG is required by applicable state laws, regulations or tariffs to bill the Debtors monthly. Moreover, presumably the Debtors want NYSEG to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition. Accordingly, if the Utility Earmark is relevant, which NYSEG disputes, the Debtors need to explain: (A) why they are only proposing that the Utility Earmark would only contain approximately two-weeks of utility charges from NYSEG; and (B) how such an insufficient amount could even begin to constitute adequate assurance of payment for NYSEG's monthly bills.

10.    Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amount of NYSEG's adequate assurance request pursuant to Section

5

366(c)(2).  Rather, without providing any specifics, the Utility Motion merely states that the Utility Earmark, "coupled with the Debtors' ability to pay for future Utility Services in the ordinary course of business," constitutes sufficient adequate assurance for the Debtors' utility companies.  Utility Motion at ¶ 16.

### The Debtors' Post-Petition Financing

11.    On September 11, 2019, the Debtors filed the *Debtors' Emergency Motion For Entry of Interim and Final Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral* (the "Financing Motion")(Docket No. 4).

12.    Through the Financing Motion, the Debtors are seeking approval to enter into a DIP Facility which consists of a $2 million revolving line of credit.  Financing Motion at ¶ 14.

13.    Through the Financing Motion, the Debtors also sought a carve-out for the payment of approved fees of the Debtors' professionals incurred prior to notice of the occurrence of the Termination Date, plus postpetition fees and expenses of the Chapter 11 postpetition professionals incurred after notice of the occurrence of the Termination Date (the "Carve-Out"). Financing Motion at pages 12-13.

### The Debtors' Critical Vendor Motion

14.    On September 11, 2019, the Debtors filed the *Debtors' Emergency Motion For Entry of Interim and Final Orders Authorizing the Debtors To Pay Certain Prepetition Claims of Critical Vendors* (the "Critical Vendor Motion") (Docket No. 10).  Through the Critical Vendor Motion, the Debtors seek authority to pay the prepetition claims of certain supposed critical vendors of up to $785,493.97.  Critical Vendor Motion at ¶ 15, 16.

## Facts Concerning NYSEG

15.      NYSEG provided the Debtors with prepetition utility goods and/or services and has continued to provide the Debtors with utility goods and/or services since the Petition Date.

16.      Under NYSEG's billing cycle, the Debtors receive approximately one month of utility goods and/or services before NYSEG issues a bill for such charges.  Once a bill is issued, the Debtors have 23 days to pay the applicable bill.  If the Debtors fail to timely pay the bill, a past due notice is issued and, in most instances, a late fee may be subsequently imposed on the account.  If the Debtors fail to pay the bill after the issuance of the past due notice which cannot be issued by NYSEG until 20 days from the due date have elapsed, NYSEG issues a notice that informs the Debtors that they must cure the arrearage within a certain period of time or it service will be disconnected.  NYSEG cannot terminate service for a non-payment default until at least 8 days after issuance of the written termination notice has elapsed.  Accordingly, under NYSEG's billing cycle, the Debtors could receive at least two months of unpaid charges before NYSEG could cease the supply of utility goods and/or services for a post-petition payment default.

17.      In order to avoid the need to bring witnesses and have lengthy testimony regarding NYSEG's regulated billing cycle, NYSEG requests that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of NYSEG's billing cycle.  Pursuant to the foregoing request and based on the voluminous size of the applicable documents, NYSEG's web site link to the tariffs and/or state laws, regulations and/or ordinances can be found at the following:

NYSEG:

Electricity -
https://www.nyseg.com/wps/portal/nyseg/account/understandyourbill./electricpricing/!ut/p/z1/tZ
Nbb4IwFIB_yx54ZC3gBR6RELjhoiLj8kJqQayBglid_vvVzF2yTFmWrUkfmpxz-
vWcryAFMUgpOpISMdJQVPFzko4yRXJNe2BAz3d8Gc7h1NK0cKGEpgyiewF6MATpT_Lhja
XDvvwnkIIUU9ayDUjoeV-
UqOyyjzcIcFOgvOgEiDBuDpQJ8ED5ec8Qzc_NoVuRqnoUYFEVmHUEt3wTWl6qtpjkIBlpha
LAgSSu1upYHEjjlahirImairAs5coIKcNLdGS4meX4E93JDN9bmvESJAL0ksC0dGuReZ-
I7CuR_kYUvhMlnGjySmReiWZXoqhvFOn9RkYXyp5Z9dVIOMP4VgU74OM8kuIZhLTpam5
P8Ls2zkNzwW_6947aEEz7_OIfQO5cw-
VGtIhtRELXDYi_UQjEXxXiqWS726U6F7ShrDgxEP-hoW0dhrWq1GIMt8OyVk-
iFc0c_eEF58gWWQ!!/dz/d5/L2dBISEvZ0FBIS9nQSEh/?WCM_GLOBAL_CONTEXT=%2FN
YSEGAGR_Navigation%2FHeader%2FAccount%2FUnderstandYourBill.%2FElectricPricing

Gas -
https://www.nyseg.com/wps/portal/nyseg/account/understandyourbill./naturalgaspricing/!ut/p/z1/
vZPbboJAEIafpRdc0l0BES-REIgRqAfK4YasC-
IaWBAWq2_fNdpD0ipN03TvJpl_5puZf0EMQhBTdCA5YqSiqOBxFKuJPHBMWzGg6808Cc
7h1BqP_YXsmxII7iXoyyGIf6KHN54O-_TPIAYxpqqxmWxDRU5vlKG-
SjxkEuM1QmjUCRBhXHWUC7CiPW4Zoeqq6Zk2K4lGAFLGuQUWO2rohmND8XLfGJAW
RpCGMhhiKAyUdiYoyzsT1SFVFpGJZktMBxnBzzg4MJ7Fm3kSfJYbnrsxwBSIButHStHRrkbi
fmOwrk_7G5L8zRZxpcmFyL0wWap-
uTEHfOeL7ywzOnD336qsRcYbRrQr2kp_0QLIX4NOqKbmDlr9b5Nw3F7zTP-zUhmDa5zL-
Dchuv4917rWKsuzIQPinZuMNpMYxHG67GrGtSOimAuE3Yt73i7gufb_U5FIM4W6Yl9pRtA
Kt1R9eAQKjbNM!/dz/d5/L2dBISEvZ0FBIS9nQSEh/?WCM_GLOBAL_CONTEXT=%2FNYS
EGAGR_Navigation%2FHeader%2FAccount%2FUnderstandYourBill.%2FNaturalGasPricing

18.    Subject to a reservation of NYSEG's right to supplement its post-petition deposit

request if additional accounts belonging to the Debtors are subsequently identified, NYSEG's

post-petition deposit request is as follows:

| Utility | No. of Accts. | Estimated Prepet. Debt | Dep. Request |
| --- | --- | --- | --- |
| NYSEG | 8 | $117,851.22 | $85,790 (2-month) |

19.    The Debtors have provided the Court with their plan to close their Orchard Park

Facility by November 15, 2019.  Assuming that the Orchard Park Facility is closed by November

15, 2019, NYSEG will have provided the Debtors with over two months of post-petition utility

goods/services prior to the closure of that facility. Accordingly, NYSEG is seeking post-petition

security for providing utility service to the Orchard Park Facility, but after the final post-petition

bills for that facility are paid, NYSEG would be willing to return the deposits for those accounts.

### **Discussion**

### A.    **THE UTILITY MOTION SHOULD BE DENIED AS TO NYSEG.**

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter
> 11, a utility referred to in subsection (a) may alter, refuse, or discontinue
> utility service, if during the 30-day period beginning on the date of the filing
> of the petition, the utility does not receive from the debtor or the trustee
> adequate assurance of payment for utility service that is satisfactory to the
> utility;

> (3)(A) On request of a party in interest and after notice and a hearing, the court
> may order modification of the amount of an assurance of payment under
> paragraph (2).

As set forth by the United States Supreme Court, "[i]t is well-established that 'when the

statute's language is plain, the sole function of the courts--at least where the disposition required

by the text is not absurd--is to enforce it according to its terms.'" *Lamie v. United States Trustee*,

540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters*

*Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)).

*Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read

in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2)

makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its

utilities on or within thirty (30) days of the filing of the petition. If a debtor believes the **amount**

of the utility's request needs to be modified, then the debtor can file a motion under Section

366(c)(3) requesting the court to modify the **amount** of the utility's request under Section

366(c)(2).

In this case, the Debtors filed the Utility Motion to improperly shift the focus of their

obligations under Section 366(c)(3) from modifying the amount of the adequate assurance of

payment requested under Section 366(c)(2) to setting the form and amount of the adequate

assurance of payment acceptable to the Debtors.  Accordingly, this Court should not reward the

Debtors for their failure to comply with the requirements of Section 366(c) and deny the Utility

Motion as to NYSEG.

    **1.**    **The Debtors' Proposed Utility Earmark Is Not Relevant And Even If It Is Considered, It Is Unsatisfactory Because It Does Not Provide NYSEG With Adequate Assurance of Payment.**

This Court should not even consider the Bank Account as a form of adequate assurance of

payment because: (1) It is not relevant because Section 366(c)(3) provides that a debtor can only

modify "the amount of an assurance of payment under paragraph (2)"; and (2) The Utility

Earmark is not a form of adequate assurance of payment recognized by Section 366(c)(1)(A).

Moreover, even if the Court were to consider the Utility Earmark, the Utility Earmark is an

improper and otherwise unreliable form of adequate assurance of future payment for the

following reasons:

1. Unlike the statutory approved forms of adequate assurance of payment, the Utility Earmark is not something held by NYSEG.  Accordingly, NYSEG has no control over how long the Utility Earmark will remain in place.

2. In order to access the Utility Earmark, NYSEG would have to incur the expense to draft, file and serve a default pleading with the Court and possibly litigate the demand if the Debtors refuse to honor a Disbursement Request.

3.  It is underfunded from the outset because NYSEG issue monthly bills and by the time a default notice is issued the Debtors will have received approximately 60 days of commodity or service. Accordingly even if NYSEG attempt to access Utility Earmark it will be only cover one half of the past due charges and none of the additional charges for utility service/goods provided after the past due charges were incurred.

4.  The Debtors may use the Utility Earmark before all post-petition utility charges are paid in full.

5.  The Debtors fail to state whether draws from the Utility Earmark would be limited to two-week amounts.

6.  The Debtors secured lenders would have a lien on the Utility Earmark.

Accordingly, the Court should not approve the Utility Earmark as adequate assurance to NYSEG because the Utility Earmark is: (a) not the **form** of adequate assurance requested by NYSEG; (b) not a form recognized by Section 366(c)(1)(A); and (c) an otherwise unreliable form of adequate assurance.

> **2.      The Utility Motion Should Be Denied As To NYSEG Because the Debtors Have Not Set Forth Any Basis For Modifying NYSEG's Requested Deposit.**

In the Utility Motion, the Debtors fail to address why this Court should modify the amount of NYSEG's request for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amount of NYSEG's adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). However, the Debtors do not provide the Court with any evidence or factually supported documentation to explain why the amount of NYSEG's adequate assurance request should be modified. Accordingly, the Court should deny the relief

requested by Debtors in the Utility Motion and require the Debtors to comply with the

requirements of Section 366(c) with respect to NYSEG.

**B.**   **THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY NYSEG PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power*

*Company v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), that held that an administrative expense,

without more, could constitute adequate assurance of payment in certain cases.  Section

366(c)(1)(A) specifically defines the forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed upon between the utility and the debtor or the trustee.

Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility

services from a provider that holds a monopoly on such services, with the need of the utility to

ensure for itself and its rate payers that it receives payment for providing these essential services.

*See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990).  The deposit or other security "should

bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re*

*Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986).  In making such a

determination, it is appropriate for the Court to consider "the length of time necessary for the

utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d

Cir. 1985).

NYSEG bills the Debtors on a monthly basis for the charges already incurred by the Debtors in the prior month.  NYSEG then provides the Debtors with approximately 23 days to pay the bill, the timing of which is set forth in applicable state laws, tariffs and/or regulations. Additionally, if the Debtors fail to timely pay a post-petition bill from NYSEG, NYSEG has to wait at least another 20 days after the due date before it can issue a termination notice for non-payment.  Furthermore, NYSEG cannot terminate service for non-payment until at least 8 days after issuance of a notice of termination have elapsed.  Based on the foregoing state-mandated billing cycle, the minimum period of time the Debtors could receive service from NYSEG before termination of service for non-payment of post-petition bills is approximately two (2) months or more.  Moreover, even if the Debtors timely pay their post-petition utility bills, NYSEG still has potential exposure of 45 to 60 days based on its billing cycle.  Furthermore, the amount of NYSEG's deposit request is the amount that the New York State Public Service Commission, which is a neutral third-party entity, permits NYSEG to request from its customers.  NYSEG is not taking the position that the deposit that it is entitled to obtain under applicable state law is binding on this Court, but, instead is introducing that amount as evidence of amount that NYSEG's regulatory entity permits it to request from its customers.

Moreover, in contrast to the improper treatment proposed to the Debtors' utilities, the Debtors requesting that certain that post-petition professionals and supposed critical vendors are favored creditors over NYSEG by seeking (i) authority to pay supposed Critical Vendor Claims, and (ii) a professionals carve-out for the payment of their fees/expenses after a default and a guarantee of payment for fees incurred up to a default.  Therefore, despite the fact that NYSEG continues to provide the Debtors with crucial post-petition utility services on the same generous

terms that were provided prepetition, with the possibility of non-payment, the Debtors are seeking to deprive NYSEG of any meaningful adequate assurance of payment for which it is entitled to for continuing to provide the Debtors with post-petition utility goods/services.

WHEREFORE, NYSEG respectfully requests that this Court enter an order:

1.    Denying the Utility Motion as to NYSEG;

2.    Awarding NYSEG the post-petition adequate assurance of payment pursuant to Section 366 in the amount and form satisfactory to NYSEG, which is the form and amounts requested herein; and

3.    Providing such other and further relief as the Court deems just and appropriate.

Dated: Garden City, New York
     October 1, 2019

CULLEN AND DYKMAN LLP

By:       */s/ Thomas R. Slome*
       Thomas R. Slome
       Michael Kwiatkowski
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Telephone: (516) 357-3700
Facsimile: (516) 357-3792
Email: tslome@CullenandDykman.com
       mkwiatkowski@CullenandDykman.com

and

Russell R. Johnson III
John M. Craig
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
(804) 749-8861
Email: russell@russelljohnsonlawfirm.com
       john@russelljohnsonlawfirm.com

*Co-Counsel for New York State Electric and Gas Corporation*

14