**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-76260-ast |
| | ) Case No. 19-76263-ast |
| In re: | ) Case No. 19-76267-ast |
| | ) Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al.* | ) Case No. 19-76269-ast |
| | ) Case No. 19-76270-ast |
| Debtors.[1] | ) Case No. 19-76271-ast |
| | ) Case No. 19-76272-ast |
| | ) |
| | ) (Jointly Administered) |
| | ) |

**FINAL INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (C) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (D) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors, as debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 4001-5, the Debtors seek entry of a final interim order:

    (a)    authorizing the Debtors to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, that constitutes the Pre-Petition Collateral ("**Cash Collateral**") of Capital Finance, LLC and Capital Funding, LLC (together, the "**Pre-Petition Lenders**");

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or further herein, as applicable.

1

18238924.3

(b)   granting adequate protection to the Pre-Petition Lenders, pursuant to sections 361, 362 and 363(e) of the Bankruptcy Code, for any diminution in the value of their interests in the Pre-Petition Collateral resulting from the Debtors' use of the Cash Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)   authorizing, on a final basis, the Debtors to obtain from ABS DIP, LLC (the "**DIP Lender**") up to $819,000 in a superpriority, secured, debtor-in-possession, credit facility that is junior, in all respects, to the obligations, liens, claims and interests of the Pre-Petition Lenders (the "**DIP Facility**") on the terms and conditions set forth on Exhibit A to the Motion (the "**DIP Loan Agreement**");

(d)   modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Lender, and the Pre-Petition Lenders to implement and effectuate the terms and provisions of this Final Interim Order, subject to notice and a hearing as provided herein; and

(e)   waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Final Interim Order.

And notice of the Motion under the circumstances having been given and such notice having been good and sufficient; and the Court having conducted hearings for interim relief on the Motion on September 12 and September 18, 2019, and final interim relief on October 3, 2019 (the "**Final Interim Hearing**"); and the Court having reviewed the Motion, all documents and pleadings submitted in conjunction therewith, the other evidence adduced by the parties, the representations of counsel, and the entire record made at the Final Interim Hearing; and it appearing to the Court that granting the relief sought in the Motion, on the terms and conditions contained herein, is fair and reasonable and in the best interests of the Debtors' estates, their creditors, and all parties in interest, and is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appears therefor:

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

18238924.3

A.    **Petition Date**.  On September 10, 2019 (the "**Petition Date**"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "**Court**").  The Debtors have continued in the management and operation of their business and properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

B.    **Jurisdiction and Venue**.  The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the above-captioned cases (the "**Chapter 11 Cases**") and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation**.  An Official Committee of Unsecured Creditors was formed on October 3, 2019.

D.    **Notice**.  The Debtors have represented that notice of the final interim hearing and the relief requested in the Motion has been provided by the Debtors, by telecopy, e-mail, overnight courier and/or hand delivery to (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the DIP Lender; (vi) counsel to the Pre-Petition Lenders, (vii) counsel to the Arba Group and its affiliates (the "**Landlord**"), (viii) counsel to Specialty Rx, Inc., (ix) the consolidated 30 largest unsecured creditors of the Debtors; (x) counsel to the Committee, and (xi) all governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases.  Under the circumstances, such notice constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and the Local Rules.

E.      **Validity of Claims and Liens**.  Without prejudice to the rights, if any, of any statutory committee appointed under section 1102(a)(1) of the Bankruptcy Code (the "**Committee**") or any other party in interest (but subject to the limitations thereon contained in paragraph 15 below), the Debtors admit, stipulate, and agree that:

1.      Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; and Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (collectively, the "**HUD Borrowers**" and individually, a "**HUD Borrower**") are parties to that certain Credit and Security Agreement dated as of May 22, 2009 among the HUD Borrowers and Capital Finance, LLC (as amended, the "**HUD Pre-Petition Loan Agreement**").  Absolut Facilities Management, LLC and Absolut Nursing and Rehabilitation Center of Westfield, LLC (collectively, the "**Non-HUD Borrowers**") are parties to that certain Credit and Security Agreement dated as of May 22, 2009 among the Non-HUD Borrowers and Capital Finance, LLC (as amended, the "**Non-HUD Pre-Petition Loan Agreement**", and together with the HUD Pre-Petition Loan Agreement, the "**Pre-Petition Loan Agreements**").  Pursuant to the Pre-Petition Loan Agreements, each of the HUD Borrowers and the Non-HUD Borrowers granted a valid, binding, perfected and enforceable first-priority lien on and security interest (the "**Capital Finance Pre-Petition First Priority Liens**") in the Collateral (as defined in Section 1.1 of the Pre-Petition Loan Agreements) to Capital Finance, LLC.

2.      Each HUD Borrower and Absolut at Orchard Brooke, LLC, respectively, is a party to those certain Lessee's Security Agreements (collectively, the "**Capital Funding Security Agreements**"), pursuant to which each granted to Capital Funding, LLC and The Secretary of Housing and Urban Development a first-priority lien on and security interest (the "**Capital Funding Pre-Petition First Priority Liens**" and together with the Capital Finance Pre-Petition First Priority Liens, the "**Pre-Petition First Priority Liens**") in the Collateral (as defined in the Capital Funding Security Agreements, and which, together with the Collateral defined in paragraph 1 hereof, shall collectively be referred to herein as the "**Pre-Petition Collateral**").[4]  The priority between the Pre-Petition First Priority Liens is set forth in an Intercreditor Agreement and Rider, as amended, between Capital Finance, LLC and Capital Funding, LLC.

3.      Five debtors (collectively, the "**HUD Debtors**") are operators of skilled nursing facilities located on real property financed pursuant to programs run by the U.S. Department of Housing and Urban Development ("**HUD**") and insured by HUD (the "**HUD Projects**," each a "**HUD Project**").  Each HUD Project was financed by Capital Funding, LLC.  Five entities own real property from which the HUD Projects are operated (collectively, the "**Owners**"): 292 Main Street LLC, 6060

---

[4] The Capital Funding Security Agreements include: (i) Lessee's Security Agreement by Absolut Center for Nursing and Rehabilitation at Allegany, LLC dated as of May 21, 2009; (ii) Lessee Security Agreement by Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC dated as of June 16, 2011; (iii) Lessee's Security Agreement by Absolut Center for Nursing and Rehabilitation at Gasport, LLC dated as of May 21, 2009; (iv) Lessee Security Agreement by Absolut at Orchard Brooke, LLC dated as of June 16, 2011; (v) Lessee Security Agreement by Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC dated as of June 16, 2011; and (vi) Lessee Security Agreement by Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC dated as of September 1, 2013.

18238924.3

Armor Road, LLC, 101 Creekside Drive, LLC, 2178 N. Fifth Street, LLC, and 4540 Lincoln Drive, LLC. The HUD Debtors and the Owners are each parties to regulatory agreements with HUD (collectively, the "**Regulatory Agreements**," each a "**Regulatory Agreement**"). The HUD Debtors are parties to operator Regulatory Agreements and the Owners are parties to Owner Regulatory Agreements.

4.      Pursuant to the Pre-Petition Loan Agreements and all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection with Pre-Petition Loan Agreements or related thereto, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated or replaced at any time prior to the Petition Date (collectively, the "**First Lien Loan Documents**"), (i) the HUD Borrowers are jointly and severally indebted and liable to Capital Finance, LLC, under the HUD Pre-Petition Loan Agreement and (ii) the Non-HUD Borrowers are jointly and severally indebted and liable to Capital Finance, LLC under the Non-HUD Pre-Petition Loan Agreement (collectively, the "**Pre-Petition Obligations**") arising under the First Lien Loan Documents and (i) such Pre-Petition Obligations are legal, valid, binding and enforceable against the Debtors and (ii) constitute "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

5.      As of the Petition Date, in accordance with the terms of the First Lien Loan Documents, (i) the HUD Borrowers were each jointly and severally indebted and liable to Capital Finance, LLC, under the HUD Pre-Petition Loan Agreement, in the aggregate amount of not less than $4,951,478.58, and (ii) the Non-HUD Borrowers were each jointly and severally indebted and liable to Capital Finance, LLC, under the Non-HUD Pre-Petition Loan Agreement, in the aggregate amount of not less than $688,900.74, together with (A) all accrued and unpaid interest, fees, expenses (including, without limitation, the reasonable and documented fees and expenses of the Pre-Petition Lenders' attorneys, consultants, attorneys, consultants, accountants, experts and financial advisors required to be reimbursed by the Debtors pursuant to the Pre-Petition Loan Agreements, (B) costs, other charges or amounts paid, incurred or accrued prior to the Petition Date, and (C) other obligations incurred in connection therewith, in each case in accordance with the terms of the First Lien Loan Documents, plus all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code (collectively, the "**Pre-Petition Indebtedness**").

6.      Each of the First Lien Loan Documents and the Capital Funding Security Agreements is valid, binding, and enforceable in accordance with its terms. The Pre-Petition Indebtedness is secured by valid, binding, properly perfected, enforceable, non-avoidable, first-priority liens and security interests in and against the Pre-Petition Collateral (including, without limitation, Cash Collateral). There exists no basis upon which the Debtors can properly challenge or avoid the validity, enforceability, priority or perfection of the Pre-Petition Indebtedness or the Pre-Petition First Priority Liens, and the Debtors shall not assert any claim, challenge or counterclaim in respect of the Pre-Petition Indebtedness, the Pre-Petition First Priority Liens or the amounts paid or payable to the Pre-Petition Lenders. No portion of the Pre-Petition Indebtedness, the Pre-Petition First Priority Liens, or any amounts paid or payable to the Pre-Petition Lenders or applied to the obligations owing under the First Lien Loan Documents or the Capital Funding Security Agreements prior to the Petition Date is subject to avoidance, subordination (whether equitable, contractual or otherwise), recharacterization, recovery, attack, offset, counterclaim, cross-claims, disallowance, impairment, recoupment, defense, challenge, objection, reduction, disgorgement, or claim (as defined in section

101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

7.     All cash proceeds of the Pre-Petition Collateral and the Adequate Protection Collateral (as defined below), including all such cash proceeds of such Pre-Petition Collateral or Adequate Protection Collateral held at any time and from time to time in any of the Debtors' banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts), are and will be Cash Collateral of the Pre-Petition Lenders within the meaning of section 363(a) of the Bankruptcy Code.

8.     The Pre-Petition Lenders are entitled, under sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for any Collateral Diminution (as defined herein).

F.     **Need for Post-Petition Financing and Use of Cash Collateral**.  Good cause has been shown for entry of this Final Interim Order.  An immediate need exists for the Debtors to obtain funds and liquidity during the period of time from the Petition Date through and including the earlier of the date of the Final Hearing and the date of occurrence of a Termination Event (the "**Interim Period**") in order to continue operations, to satisfy the costs and expenses of administering these Chapter 11 Cases during the Interim Period, and to preserve the value of their estates.

G.     **No Credit Available on More Favorable Terms**.  For purposes of the Interim Period, the Debtors have been unable to obtain financing on more favorable terms and conditions from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the Motion and this Final Interim Order, and are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  For purposes of the Interim Period, the Debtors are also not able to obtain credit without providing the superpriority claims and granting a lien to the DIP Lender on the terms and conditions set forth in this Final Interim Order.

H.     **Use of Proceeds of DIP Facility**.  All proceeds of the DIP Facility shall be used and applied in accordance with the terms and conditions of the DIP Loan Agreement, as approved in this Final Interim Order.

18238924.3

I.    **Extension of Financing; Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility and the DIP Loan Agreement for this Interim Period are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration.  All of the Debtors' obligations under the DIP Facility and the DIP Loan Agreement for amounts extended during the Interim Period shall be deemed to have been extended by the DIP Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that the Interim Orders, this Final Interim Order, the Final Order or any provision hereof or thereof is vacated, reversed, or modified on appeal or otherwise; *provided*, *however*, that (a) the Landlords have objected to and reserve the right, if any, to contest the foregoing finding of "good faith" and related protections pursuant to section 364(e) of the Bankruptcy Code, and the foregoing remains subject to the Landlord's objection which the Landlords contend is unresolved, has not been waived by the Landlords, and remains preserved for the final hearing on the DIP/Cash Collateral Motion currently scheduled for November 4, 2019 at 2:00 p.m. Eastern time, as set forth in Paragraph 19 below (the "<u>Final Hearing</u>"); (b) such reservation shall expire if not exercised by or before the Final Hearing or such later date as agreed to by the parties; and (c) the rights of all parties to contest or respond to any objection or potential objection asserted under the reservation set forth herein are preserved in their entirety including, but not limited to, the contention by other parties that the Landlords objection was withdrawn or resolved, the Landlords consented to a form of interim order that included the good faith findings above, or the Landlords otherwise waived their right to assert such an objection.

J.    **Relief Essential; Best Interest**.  The relief requested in the Motion for the Interim Period (and provided in this Final Interim Order) is necessary, essential, and appropriate for the

continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility during the Interim Period as contemplated herein.

K.      **No Control**.  Neither of the Pre-Petition Lenders controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' properties or operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Orders, this Final Interim Order, the DIP Facility, the Pre-Petition Loan Agreements, the First Lien Loan Documents and/or the the Capital Funding Security Agreements.

**NOW THEREFORE**, on the Motion of the Debtors and the record before this Court, and good and sufficient cause appearing therefore,

**IT IS ORDERED** that:

1.      **Motion Granted As Set Forth Herein**.  The Motion is **GRANTED** in accordance with the terms and conditions set forth in this Final Interim Order.  The DIP Loan Agreement is approved on an interim basis for the Interim Period as set forth herein.  The Debtors are authorized to enter into the DIP Loan Agreement on the terms and conditions set forth herein.  Any objections to the Motion with respect to the entry of this Final Interim Order, to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled. In the event of a conflict between this Final Interim Order and the DIP Loan Agreement, this Final Interim Order shall control.

2.      **DIP Facility**.

(a)     **Obligations**.  The Debtors are expressly and immediately authorized and empowered to enter into the DIP Loan Agreement and to incur all obligations under the DIP Loan Agreement in accordance with and subject to this Final Interim Order, and to take all actions, which

8

may be reasonably required and/or otherwise necessary for the performance by the Debtors under the DIP Facility and the DIP Loan Agreement, including, but not limited to, the creation and perfection of the DIP Liens and superpriority administrative expense claims described and provided for in the DIP Loan Agreement for funds advanced during this interim period.  All amounts previously advanced by the DIP Lender to the Debtors as approved on the record at the hearings on September 12, 2019 and September 18, 2019, are approved on an interim basis under this Final Interim Order and are deemed to have been advanced under this Final Interim Order, and subject to all obligations, rights and remedies set forth herein.  The Debtors are hereby authorized and directed to pay all principal, interest, fees, attorneys' fees, expenses and all other amounts required to be paid under the DIP Loan Agreement for amounts advanced in accordance with this Final Interim Order as such shall accrue and become due thereunder.  The DIP Facility, to the extent approved in this Final Interim Order, shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors and their estates, jointly and severally, and/or against any successors thereto.  No obligation, payment, transfer, right or grant of security under the DIP Facility and the DIP Loan Agreement as approved under this Final Interim Order for amounts advanced pursuant to the terms of this Final Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code and/or under any applicable non-bankruptcy law, and/or subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)    **Authorization to Borrow**.  From the Petition Date through the end of the Interim Period, the Debtors shall be authorized to borrow up to the maximum amount outstanding of $819,000 under the DIP Facility, with all of such borrowing having been previously approved.

(c)    **Collateral**.  As used herein, "**Collateral**" shall have the same meaning as the term "DIP Collateral" in the DIP Loan Agreement.

(d)    **Lien**.  Effective immediately upon the entry of this Final Interim Order, and subject and subordinate only to the Carve-Out (as defined below) and the liens of the Pre-Petition Lenders granted herein and under the First Lien Loan Documents and the Capital Funding Security Agreements (the "**Pre-Petition Lenders' Liens**"), and any other valid, unavoidable and properly perfected pre-Petition Date security interests in or liens on the Collateral, the DIP Lender is hereby granted a secured lien on the Collateral (the "**DIP Liens**").  For the avoidance of doubt, the DIP Liens shall be deemed effective, validly perfected and not subject to avoidance as of the Petition Date, and no further filing, notice or act will be required to effect such perfection.

(e)    **Superpriority Administrative Claim**.  The DIP Lender is granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim, junior to all claims of the Pre-Petition Lenders granted herein and pursuant to the First Lien Loan Documents and the Capital Funding Security Agreements, for the amounts advanced to the Debtors under the DIP Loan Agreement (the "**DIP Lender Superpriority Administrative Claim**").

(e)(f)    **No lien on avoidance actions or recoveries.**  Nothing contained in this Order grants any party a lien on any avoidance actions or recoveries therefrom.

3.    **Authorization and Approval to Use Proceeds of DIP Facility**.  Subject to the terms and conditions of this Interim Order and the DIP Loan Agreement (to the extent approved herein), the Debtors are authorized to request and use the DIP Facility from the Petition Date through the end of the Interim Period or a default under the DIP Loan Agreement.

4.    **Limitation on Use of DIP Facility Proceeds**.  No proceeds of the DIP Facility may be used in contravention of this Final Interim Order or the DIP Loan Agreement.

5.    **Carve-Out**.  As used in this Final Interim Order, the "**Carve Out**" means the sum of all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee

10

18238924.3

under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate, during the period covered by this Final Interim Order.

6.      **Cash Management**.  All amounts collected in the Debtors' cash collection accounts may be used in accordance with this Final Interim Order and the DIP Loan Agreement and shall be made available to the Debtors on the terms set forth in the *Interim Order (I) Authorizing the Debtors to (A) Continue Using their Cash Management System and (B) Maintain Existing Bank Accounts and Business Forms; (II) Waiving Certain Deposit Guidelines; and (III) Granting Related Relief*, the terms of which are incorporated herein by reference.

7.      **Use of Cash Collateral; Adequate Protection**.

(a)      **Authorization to Use Cash Collateral**. Subject to the terms and conditions of this Final Interim Order and the DIP Loan Agreement, for the Interim Period and until a Termination Event, the Debtors shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) in accordance with the 13-week cash flow projections attached hereto as **Exhibit A** (the "**Budget**"); provided that: (i) the Debtors' expenditures of cash (including proceeds of the DIP Facility) shall be within 10% of the aggregate weekly gross disbursements identified on the Budget, measured on the last business day of each week, which budget may be updated every two weeks, *provided further*, solely with respect to the cash collateral generated by the Orchard Park Facility, the Debtors are only authorized to use 10% of the amount of accounts receivable collected, during the period from October 3, 2019 through October 10, 2019, and only (i) to the extent to make ordinary, necessary, and reasonable payments with respect to such facility, and (ii) to the extent set forth in the Budget, *provided further*, the Debtors are not authorized to use and shall not use the cash collateral generated by the Orchard Park Facility during the period from October 10, 2019 through November 4, 2019.  The Debtors' use of Cash Collateral shall automatically terminate upon the occurrence of a Termination Event without further order or relief from the Court.  The Debtors shall

11

18238924.3

provide the Pre-Petition Lenders, the Landlord and the Committee, on a weekly basis, no later than 1 p.m. E.T. on Wednesday of each week, a report reconciling the Debtors' actual performance to the Budget, an accounts payable aging schedule, and an accounts receivable aging schedule.  The Debtors shall also (i) provide HUD and the Pre-Petition Lenders with (i) monthly financial statements during the pendency of these Chapter 11 Cases, and (ii) confer in good faith with the Pre-Petition Lenders and HUD on any reasonable requests for additional information.  The Debtors shall further provide the Pre-Petition Lenders immediate updates (the same business day) on all of their discussions with the New York Department of Health.  Nothing in this Final Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business absent further order of this Court, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Interim Order and the DIP Loan Agreement.

(b)    **Access**.  In addition to, and without limiting, whatever rights to access the Pre-Petition Lenders have under the Pre-Petition Loan Agreements (including the rights set forth in Section 4.6 of the Pre-Petition Loan Agreement), and upon reasonable prior written notice, at reasonable times during normal business hours mutually agreeable to the Debtors and the Pre-Petition Lenders, the Debtors shall permit representatives, advisors, agents, and employees of the Pre-Petition Lenders and the Landlords (1) to have access to and inspect the Debtors' properties, (2) to examine the Debtors' books and records, and (3) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors and counsel.

(c)    **Replacement Liens**. The Court finds that the Pre-Petition Lenders are entitled, pursuant to sections 361, 362, 363(c)(2) and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Pre-Petition Collateral (including the Cash Collateral), to the extent of any diminution of its value (the "**Adequate Protection Obligations**").  As adequate protection for any diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on

12

account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral) and the imposition of the automatic stay (collectively, the "**Diminution in Value**"), the Pre-Petition Lenders are hereby granted pursuant to §§361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral, including any and all property purchased or acquired with Collateral and any proceeds thereof (the "**Pre-Petition Lenders' Adequate Protection Liens**"), Pre-Petition Lender Capital Finance, LLC shall receive monthly payments of interest, at the non-default rate set forth in the Pre-Petition Loan Agreements ("**Adequate Protection Interest**"), and the Pre-Petition Lenders shall receive payment of their fees and expenses, including, without limitation, the reasonable fees and disbursements of their respective counsel ("**Adequate Protection Fees**" and collectively with the Adequate Protection Interest, the "**Adequate Protection Payments**"). The Pre-Petition Lenders' Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral.  The Adequate Protection Payments will be payable by the Debtors as follows: (i) on the first business day of each month, the Debtors shall pay the Adequate Protection Interest; (ii) monthly, within ten business days of Debtors' receipt of an invoice, with a copy to the Committee, with time-entry detail, identifying the reasonable fees and expenses constituting the Adequate Protection Fees with any necessary redactions thereto, the Debtors shall pay that portion of the Adequate Protection Fees to which the Debtors and the Committee have no objection.  In the event of any objection by the Debtors or the Committee to any Adequate Protection Fees, such Adequate Protection Fees that are the subject of such objection shall not be paid by the Debtors until the dispute over such amounts are resolved by the Debtors or the Committee and the Pre-Petition Lenders or by this Court.  The parties shall work in good faith to resolve any such objection, and to the extent the parties cannot resolve such objection, the Court will have exclusive jurisdiction to determine it.  In the event the Debtors do not timely pay the Adequate Protection Payments in the manner described

18238924.3

above, without the necessity of any further Court order or filing any request therefor, but after providing written notice to the Debtors of not less than five business days of the date and amount of any deduction or setoff, the Pre-Petition Lenders may deduct or setoff any Adequate Protection Payments payable under this Final Interim Order, from amounts on deposit in the Debtors' depository accounts held at CFG Community Bank; provided that, to the extent there are insufficient funds in the Deposit Accounts to satisfy in full any Adequate Protection Payment then due and payable, the Debtors shall promptly, and in any event within five (5) business days of written request therefor from the Pre-Petition Lenders, pay such Adequate Protection Payment in cash to the Pre-Petition Lenders.

(d)     **Section 507(b) Priority Claims**. As adequate protection for any Diminution in Value, the Pre-Petition Lenders are hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any successor bankruptcy cases (the "**Pre-Petition Lenders' Adequate Protection Superpriority Claims**"). The Pre-Petition Lenders' Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors and their estates now existing or hereafter arising, of any kind or nature whatsoever.

(d)(e)   **No lien on avoidance actions or recoveries**.  Nothing contained in this Order grants any party a lien on any avoidance actions or recoveries therefrom.

8.     **Termination**.  The Debtors' right to use the Cash Collateral pursuant to this Final Interim Order shall terminate (the date of any such termination, the "**Termination Date**") without further notice or court proceeding on the earliest to occur of (i) November 4, 2019, (ii) the entry of an order by this Court terminating the use of cash collateral; (iii) the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee or examiner or other representative with expanded powers for the Debtors; (v) the dismissal of the Chapter 11 Cases; (vi) the Debtors' failure to perform any of their obligations under this Final Interim Order or

14

their failure to comply with any of the terms or conditions of this Final Interim Order; provided that no Termination Event shall have occurred under this subsection (vi) until the DIP Lender or the Pre-Petition Lenders, as applicable, has provided two business days' written notice of any such purported failure to perform to the Debtors, or (vii) modification (without the express written consent of the Pre-Petition Lenders or the DIP Lender), reversal or vacatur of this Final Interim Order (each, a "**Termination Event**").

        9.      **Rights and Remedies Upon Event of Default**.

        (a)      Upon the occurrence and during the continuance of a Termination Event (unless such occurrence and continuance is waived by the Pre-Petition Lenders in their sole discretion), (a) the Debtors shall immediately cease using Cash Collateral, (b) the Adequate Protection Obligations, if any, shall become due and payable, and (c) the Pre-Petition Lenders may file a motion for relief from the automatic stay seeking to exercise the rights and remedies available under the First Lien Loan Documents, this Final Interim Order, the Capital Funding Security Agreements, or applicable law, as applicable, including, without limitation, foreclosing upon and selling all or a portion of the Pre-Petition Collateral or Adequate Protection Collateral in order to collect and satisfy the Adequate Protection Obligations, and Pre-Petition Indebtedness, in accordance with this Final Interim Order, on shorten notice of not less than five (5) business days.  Any delay or failure of the Pre-Petition Lenders to exercise rights under the First Lien Loan Documents, the Capital Funding Security Agreements, or this Final Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document.  Subject and subordinate only to the Carve Out and as otherwise set forth herein, the Pre-Petition Lenders shall be entitled to apply the payments or proceeds of the Pre-Petition Collateral and the Adequate Protection Collateral in accordance with the provisions of the First Lien Loan Documents and the Capital Funding Security Agreements.  Notwithstanding the

18238924.3

occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Pre-Petition Lenders under this Final Interim Order shall survive the Termination Date.  In any hearing regarding any exercise of remedies under this order, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, a Termination Event has occurred and is continuing, and the Debtors, the Committee and all other parties in interest shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Pre-Petition Lenders set forth in this order and the First Lien Loan Documents and the Capital Funding Security Agreements.

(b)    Upon and after the occurrence of a Termination Event or the occurrence of an Event of Default as set forth in the DIP Loan Agreement, the DIP Lender shall have all of the rights, remedies and obligations set forth in the DIP Loan Agreement; provided that the DIP Lender shall be required to seek relief from the automatic stay before giving effect to any such rights, remedies or obligations; provided further that the DIP Loan Agreement is modified to delete the following Event of Default:  "The Court enters an order requiring the Debtors to pay rent to any landlords within the first 60 days of the Chapter 11 Cases."  The Debtors acknowledge and agree that the DIP Lender shall be permitted to bring any such motion for relief from the automatic stay on shortened notice of not less than five business days.  Notwithstanding the foregoing, the DIP Lender shall not be required to seek or obtain relief from the automatic stay to declare a default under or to terminate the DIP Loan Agreement or the DIP Facility if it provides at least 48 hours' written notice of any such declared default or termination to the Debtors, the Pre-Petition Lenders and the Landlords.  The automatic stay imposed under section 362 of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Facility and the DIP Loan Agreement as necessary to (i) permit the Debtors to grant the liens contemplated by the DIP Facility to the DIP Lender, and (ii) authorize the DIP Lender to retain and

18238924.3

apply payments, and/or otherwise enforce its rights and remedies and the DIP Loan Agreement as approved under this Final Interim Order. Nothing included herein shall prejudice, impair or otherwise affect the DIP Lender's rights to seek any other and/or supplemental relief with respect to the Debtors (including, as the case may be, other and/or additional adequate protection).

(c)      Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the DIP Liens, the DIP Lender Superpriority Administrative Claim, the Pre-Petition Lenders' Adequate Protection Liens, and the Pre-Petition Lenders' Adequate Protection Superpriority Claims, shall continue in full force and effect and shall maintain their priorities as provided in this Final Interim Order until the DIP Facility and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Liens, the DIP Lender's Superpriority Administrative Claim, the Pre-Petition Lenders' Adequate Protection Liens, and the Pre-Petition Lenders' Adequate Protection Superpriority Claims shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Interim Order.

10.    **Reservation of Rights of the Pre-Petition Lenders**.  Notwithstanding any other provision hereof, the grant of adequate protection to the Pre-Petition Lenders pursuant hereto is without prejudice to the rights of the Pre-Petition Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection with respect to any postpetition Diminution in Value of the Pre-Petition Lenders' interests in any Pre-Petition Collateral from and after the Petition Date, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify, or otherwise impair the respective rights of the Pre-Petition Lenders under the First Lien Loan

17

Documents, the Capital Funding Security Agreements, or under equity or law, and the Pre-Petition

Lenders expressly reserve all of their respective rights and remedies whether now existing or hereafter

arising under the First Lien Loan Documents and/or the Capital Funding Security Agreements,

respectively, and/or equity or law in connection with all the First Lien Loan Documents and/or Capital

Funding Security Agreements whether arising prior to or after the Petition Date.

11.     **Reservation of Rights of HUD and HHS**.

(a)     The U.S. Department of Health & Human Services, and its component, the

Centers for Medicare and Medicaid Services, reserves all rights in connection with the implementation

of the Medicare program, including with respect to the provision of reimbursement to the Debtors as

payment for services rendered under the Medicare program.   Furthermore, custody and control over

the accounts into which Medicare reimbursement payments are deposited will remain consistent with

the applicable Medicare laws, regulations, and enrollment agreements, including, but not limited to,

the Electronic Funds Transfer (EFT) Authorization Agreement (Form CMS-588).

(b)     Nothing in the order prohibits Centers for Medicare and Medicaid Services

from exercising its Medicare recoupment rights, claims, and/or defenses in the ordinary course.

Nothing in this Final Interim Order shall affect or impair the rights of the Pre-Petition Lenders, the

DIP Lender, the Debtors, the Committee or any other party-in-interest to oppose, object or defend

against such asserted recoupment and other rights, claims, and/or defenses the United States, HUD or

any Federal Agency may assert.  Notwithstanding anything in this Final Interim Order, nothing herein

shall authorize the Debtors to avoid complying with applicable non-bankruptcy law, including,

without limitation, (i) HUD statutes, regulations, rules, procedures, policies, regulatory agreements,

and all loan documents granted in favor of any HUD authorized lender, and (ii) HHS and the Centers

for Medicare & Medicaid Services statutes, regulations, rules, procedures, policies, and enrollment

agreements.  Notwithstanding anything in this Final Interim Order, nothing shall enjoin, estop, or

18238924.3

otherwise preclude the United States of America from pursing the Debtors or any non-debtor for any past, present, or future violations of non-bankruptcy law, including without limitation, what is listed in the preceding sentence, provided, however, that the foregoing does not limit the effectiveness or applicability of the automatic stay of 11 U.S.C. § 362 in any way, and provided further than the Debtors and all non-debtors reserve their rights and defenses in respect of any claims asserted by the United States of America.

(c)     Nothing contained in this Final Interim Order should be construed to affect a waiver of HUD's right to assert it has exclusive jurisdiction with respect to enforcement actions in the ordinary course. This Final Interim Order does not affect in any way HUD's authority to send any required notices pursuant to HUD programs, statutes, regulations, policies, procedures, rules or any Regulatory Agreements in the ordinary course. For the avoidance of doubt, the filing of these Chapter 11 Cases does not operate as a stay of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

12.     **Modification of Automatic Stay**. The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors, the DIP Lender and the Pre-Petition Lenders to accomplish the transactions contemplated by this Final Interim Order.

13.     **Perfection of DIP Liens and Pre-Petition Lenders' Adequate Protection Liens**.

18238924.3

(a)       Without in any way limiting the automatically effective perfection of the DIP Liens and Pre-Petition Lenders' Adequate Protection Liens granted herein, the DIP Lender and the Pre-Petition Lenders are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, notices of liens or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lender or the Pre-Petition Lenders shall, in their sole discretion, choose to file such financing statements, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Final Interim Order. Upon the request of the DIP Lender or the Pre-Petition Lenders, each of the Debtors, without any further consent of any party, is authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Lender or the Pre-Petition Lenders to further validate, perfect, preserve and enforce the DIP Liens and Pre-Petition Lenders' Adequate Protection Liens, respectively. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)       A certified copy of this Final Interim Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Final Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit all

18238924.3

actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

14.    **Proofs of Claim**.  Capital Finance, LLC is hereby authorized and entitled, in its sole and absolute discretion, but not required, to file (and amend and/or supplement, as its sees fit) a proof of claim and/or aggregate proofs of claim in these Chapter 11 Cases for any claim allowed herein, and the Debtors' stipulations in paragraph E *supra* shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s) by Capital Finance, LLC.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or successor cases shall not apply to Capital Finance, LLC with respect to the Pre-Petition Indebtedness.

15.    **Effect of Stipulations**.  The Debtors have admitted, stipulated, and agreed to the various stipulations and admissions contained in this Final Interim Order, including, without limitation, the stipulations and admissions included in paragraph E, which stipulations and admissions shall be binding upon the Debtors and any successors thereto in all circumstances (although such stipulations are not findings of the Court). The stipulations and admissions contained in this Final Interim Order, including without limitation, in paragraph E of this Final Interim Order, shall also be binding upon the Debtors' estates and all other parties in interest, including the Committee or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "**Trustee**"), for all purposes unless (a) (i) any party in interest other than the Committee, no later than the date that is thirty (30) days from the entry of this Final Interim Order Date, and (ii) the Committee, no later than sixty (60) days from the date of the entry of this Final Interim Order (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so and subject to extension by the Court for cause shown or by written agreement of the Pre-Petition Lenders) (as applicable for clauses (i) and (ii), the "**Initial Challenge Period**"), has properly filed an adversary

proceeding as required under the Bankruptcy Rules (x) challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Indebtedness or the liens on the Pre-Petition Collateral, or (y) otherwise asserting any other claims, counterclaims, causes of action, objections, contests or defenses against the Pre-Petition Lenders on behalf of the Debtors' estates ((x) and (y), collectively, the "**Claims and Defenses**"), *provided, however*, if during the Initial Challenge Period, a party in interest or the Committee files a motion for standing with a draft complaint identifying and describing all Claims and Defenses consistent with applicable law and rules of procedure, the Initial Challenge Period will be tolled for the party in interest or the Committee, as applicable, solely with respect to claims asserted in the complaint until three (3) business days from entry of an order granting the party in interest or the Committee standing to prosecute any such Claims and Defenses described in the complaint (the "**Extended Challenge Period**" together with the Initial Challenge Period, the "**Challenge Period**"); and (b) the Court rules in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; *provided that*, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished effective as of the Petition Date to the extent set forth herein.  If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period, without further order of the Court, or, if applicable, on the date of an order of the Court denying a party in interest or the Committee standing:  (1) the Debtors' stipulations and admissions contained in this Final Interim Order shall be binding on all parties in interest, including the Debtors' estates, the Committee, and any Trustee; (2) the Pre-Petition Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case; (3) the Pre-Petition Lenders' Liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, and of the priority specified in paragraph E, not subject to defense, counterclaim, recharacterization, subordination or

18238924.3

avoidance; and (4) the Pre-Petition Indebtedness, Pre-Petition Lenders' Liens on the Pre-Petition Collateral, and the Pre-Petition Lenders (and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors) shall not be subject to any other or further challenge by the Committee or any other party in interest, and the Committee or a party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period); provided that if the Chapter 11 Cases are converted to chapter 7 or a Trustee is appointed prior to the expiration of the Challenge Period, any such estate representative or Trustee shall receive the full benefit of any remaining Challenge Period, subject to the limitations described herein. If any such adversary proceeding is timely and properly filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Final Interim Order, including without limitation, in paragraph E of this Final Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and any other person, including any Trustee, except solely as to any such findings and admissions that were expressly challenged in the original complaint initiating the adversary proceeding and excluding any amended or additional claims that may or could have been asserted thereafter through an amended complaint under Federal Rule of Civil Procedure 15 or otherwise. Nothing in this Final Interim Order vests or confers on any person, including the Committee or any Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates. This stipulation shall be binding upon the Debtors, their estates, all parties in interest in these Chapter 11 Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in these Chapter 11 Cases or any subsequently converted bankruptcy case(s) of any Debtors and shall inure to the benefit of the Pre-Petition Lenders and the Debtors and their respective successors and assigns (collectively, the "**Successor Cases**").

16.     **Limitation on Use of Cash Collateral**.  The Debtors shall use the proceeds of the Pre-Petition Collateral solely as provided in this Final Interim Order.  No Cash Collateral may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of the Pre-Petition Indebtedness, the Pre-Petition First Priority Liens, or the liens or claims granted under this Final Interim Order, and any other interim orders authorizing the Debtors' use of cash collateral ("**Interim Orders**"), the First Lien Loan Documents or the Capital Funding Security Agreements; (b) assert any Claims and Defenses against the Pre-Petition Lenders or their agents, affiliates, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Pre-Petition Lenders hereunder, or (d) pay any amount on account of any claims arising prior to the Petition Date unless in accordance with the Budget and such payments are approved by an order of the Court.

17.     **Limitation of Liability**.  In permitting the use of the Pre-Petition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Interim Order, the Pre-Petition Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Final Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Pre-Petition Lenders of any liability for any claims arising from the pre-Petition Date or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

18.     **Other Rights and Obligations.**

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code**.  Based on the findings set forth in this Final Interim Order and in accordance with section 364(e) of the Bankruptcy

18238924.3

Code, which is applicable to the DIP Facility and the DIP Loan Agreement, to the extent approved by this Final Interim Order, in the event any or all of the provisions of this Final Interim Order are hereafter modified, amended and/or vacated by a subsequent order of this Court and/or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code for all funds advanced to the Debtors, and no such appeal, modification, amendment and/or vacation shall affect the validity and/or enforceability of any advances made hereunder and/or the liens and/or priority authorized and/or created hereby or thereby.    Notwithstanding any such modification, amendment and/or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment and/or vacation of any lien granted to the DIP Lender shall be governed in all respects by the provisions of this Final Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and/or benefits, including the liens granted herein, with respect to any such claim.    Because the DIP Facility is made in reliance on this Final Interim Order, the obligations incurred by the Debtors and/or owed to the DIP Lender prior to the effective date of any stay, modification or vacation of this Final Interim Order shall not, as a result of any subsequent order in the Case or in any successor case, be disallowed and/or subordinated, lose its lien priority or administrative expense claim status, and/or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Final Interim Order for funds advanced to the Debtors; *provided*, *however*, that (a) the Landlords have objected to and reserve the right, if any, to contest the foregoing finding of "good faith" and related protections pursuant to section 364(e) of the Bankruptcy Code, and the foregoing remains subject to the Landlord's objection which the Landlords contend is unresolved, has not been waived by the Landlords, and remains preserved for the final hearing on the DIP/Cash Collateral Motion currently scheduled for November 4, 2019 at 2:00 p.m. Eastern time, as set forth in Paragraph 19 below (the "Final Hearing"); (b) such reservation shall expire if not exercised by or before the Final Hearing or such later date as agreed to by the parties;

18238924.3

and (c) the rights of all parties to contest or respond to any objection or potential objection asserted under the reservation set forth herein are preserved in their entirety including, but not limited to, the contention by other parties that the Landlords objection was withdrawn or resolved, the Landlords consented to a form of interim order that included the good faith findings above, or the Landlords otherwise waived their right to assert such an objection.

(b)    **Binding Effect**.   The provisions of this Final Interim Order, including all findings herein (subject to paragraph 15), shall be binding upon all parties in interest in the Chapter 11 Cases, including without limitation, the Pre-Petition Lenders, the DIP Lender, the Committee, the Debtors, the Debtors' estates, and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of each of the Pre-Petition Lenders, the DIP Lender and the Debtors and their respective successors and assigns, provided that except to the extent expressly set forth in this Final Interim Order, the Pre-Petition Lenders shall have no obligation to permit the use of the Pre-Petition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor.  For all adequate protection and stay relief purposes throughout these Chapter 11 Cases, the Pre-Petition Lenders shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date.

(c)    **No Waiver**.   The failure of the DIP Lender or the Pre-Petition Lenders to seek relief or otherwise exercise their rights and remedies under this Final Interim Order shall not constitute a waiver of any of the DIP Lender or the Pre-Petition Lenders' respective rights hereunder.

(d)    **No Third-Party Rights**.   Except as explicitly provided for herein, this Final Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or

any direct, indirect, third party or incidental beneficiary.  Nothing herein shall release, waive or impair any and all rights, claims, demands, or causes of action which the Pre-Petition Lenders are capable of asserting against any and all co-makers, guarantors or sureties of the Debtors' obligations to the Pre-Petition Lenders, and the Pre-Petition Lenders specifically reserve any and all rights, claims, demands or causes of action.

(e)  **No Marshalling**.  The DIP Lender and the Pre-Petition Lenders shall not be subject to the equitable doctrine of "marshaling" and/or any other similar doctrine with respect to any of the Collateral (including Cash Collateral).

(f)  **Headings**.  The headings in this Final Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Interim Order.

(g)  **Enforceability**.  This Final Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 solely to the extent set out herein, and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(h)  **Controlling Effect of Final Interim Order**.  To the extent any provision of this Final Interim Order conflicts or is inconsistent with any provision of the Motion, the DIP Credit Agreement or the Interim Orders, the provisions of this Final Interim Order shall control to the extent of such conflict.

(i)  **Order Immediately Effective**.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

(j)  **Debtor Authorization to Effectuate Relief**.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

(k)  **Retention of Jurisdiction**.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

18238924.3

(l)     **Parties' Reservation of Setoff and Recoupment Rights**.  The Landlords and the Debtors express reserve all rights in respect of any setoff and recoupment rights asserted by the Landlords, including, but not limited to, any setoff and recoupment rights in connection with any security deposits paid by the Debtors; provided that the Landlords shall, in all events, be required to seek relief from the automatic stay before giving effect to any such purported rights.

19.     **Final Hearing**.  A final hearing to consider the relief requested in the DIP/Cash Collateral Motion shall be held on **November 4~~————————~~, 2019 at 2:00 ~~1:30~~ p.m. (Eastern Time)**~~,~~, at Courtroom 2554, United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza East, Suite 1595, Brooklyn, New York; and the October 8, 2019 Scheduling Order [dkt item 132] is modified in part and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to **October 30~~————~~, 2019 at 4:00 p.m. (Eastern Time),** and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10154 (Attn: Schuyler G. Carroll, Esq.), scarroll@loeb.com; (b) the U.S. Trustee for the Eastern District of New York, Christine Black, Esq. christine.h.black@usdoj.gov; (c) counsel to the Capital Finance, LLC, Blank Rome LLP, 444 W. Lake Street, Suite 1650, Chicago, IL 60606 (Attn: Kenneth J. Ottaviano, Esq. and Paige B. Tinkham), KOttaviano@blankrome.com and PTinkham@blankrome.com; (d) counsel to the DIP Lender, Bodner Law PLLC, 40 Cutler Mill Road, #301, Great Neck, NY 11021 (Attn: Jonathan S. Bodner, Esq.), jbodner@bodnerlawpllc.com; (e) counsel to the Union, Levy Ratner, P.C., 80 Eighth Avenue, 8th Floor, New York, NY 10011 (Attn: Suzanne Hepner, Esq.) shepner@levyratner.com;  (f) counsel to Capital Funding, LLC, Whiteford, Taylor & Preston LLP, 220 White Plains Road, Tarrytown, New York 10591 (Attn:  Kenneth M. Lewis, Esq.), klewis@wtplaw.com; (g) counsel to the Landlords, Arent Fox LLP, 1301 Avenue of the Americas, 42nd Floor, New York , NY 10019 (Attn: George Angelich, Esq.),

george.angelich@arentfox.com; and (h) counsel to any statutory committees appointed in these Chapter 11 Cases.

19.20.   Debtors shall serve the DIP/Cash Collateral Motion and this Order on all parties who have filed notices of appearance and the United States Trustee on or before **October 17, 2019**, and shall file an affidavit of service of the same by **October 21, 2019**.



**Dated: October 16, 2019**
      **Central Islip, New York**

_____
     **Alan S. Trust**
  **United States Bankruptcy Judge**

18238924.3

**Exhibit A**

**(Budget)**

18238924.3