Hearing Date and Time: February 25, 2020 at 11:30 a.m.
Response Deadline: February 18, 2020

Avery Samet
Jeffrey Chubak
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
*Attorneys for the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>ABSOLUT FACILITIES MANAGEMENT, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-76260-ast<br>Case No. 19-76263-ast<br>Case No. 19-76267-ast<br>Case No. 19-76268-ast<br>Case No. 19-76269-ast<br>Case No. 19-76270-ast<br>Case No. 19-76271-ast<br>Case No. 19-76272-ast<br><br>(Jointly Administered) |

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' SUPPLEMENTAL APPLICATION
<u>CONCERNING MICHAEL WYSE'S COMPENSATION</u>**

The Official Committee of Unsecured Creditors objects to the supplemental application

of the Debtors "to expand the scope of the retention of Michael Wyse of Wyse Advisors LLC"

filed January 9, 2020 [Dkt. No. 384] ("<u>Supplemental Application</u>"), and states:

---

[1] The Debtors are: Absolut Facilities Management, LLC; Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; Absolut at Orchard Brooke, LLC; Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC; and Absolut Center for Nursing and Rehabilitation at Westfield, LLC.

**INTRODUCTION**

1.      The Debtors are not seeking to expand the scope of Mr. Wyse's retention; rather, they are using estate resources to ask the Court to pay Mr. Wyse approximately $100,000, in chapter 11 cases already overburdened by professional fees, for time previously devoted to looking for a DIP loan intended to fund professional fees in these cases, that the Debtors did not and likely will not need.

2.      The Supplemental Application should be denied. Instead, the Court should approve the DIP Financing Fee sought in the original Application (defined below); or alternatively, grant Mr. Wyse a quantum meruit award for the subject services, determined after taking into account all relevant factors, including hourly compensation paid to or budgeted by him for restructuring advisory services and aggregate professional fees herein.

**BACKGROUND**

3.      On November 13, 2019, the Debtors filed an application [Dkt. No. 240] ("Application") to employ Michael Wyse of Wyse Advisors LLC ("WALLC") as Chief Restructuring Officer ("CRO"), nunc pro tunc to the petition date of September 10, 2019, on terms set forth in the Engagement Agreement annexed to the Application as Exhibit C.

4.      Paragraph 1(b)(i) of the Engagement Agreement provides his responsibilities as CRO include, inter alia, "(i) Leading the arrangement of DIP financing."[2]

---

[2] His other powers and duties as specified in the Engagement Agreement are nonspecific: those "normally associated with such position of corporations comparable to the Companies and such other powers and duties as may be deemed appropriate and necessary, including … (ii) Assisting in preparation of a restructuring, at the direction of the Board and CEO; (iii) Potentially serving as first day declarant and/or providing other potential testimony in court regarding restructuring issues; (iv) Performing such other services as may be reasonably requested or deemed appropriate; and (v) Taking any and all actions necessary to fulfill the responsibilities set forth above."

5. Paragraph 4(a) of the Engagement Agreement provides: "As compensation for the services to be provided hereunder as it relates to the arranging [sic] DIP Financing, WALLC will receive 3.0% of the total commitment. Such fee shall be payable upon closing of the financing and will be included in the flow of funds ('DIP Financing Fee')."

6. Paragraph 4(b) provides that "As compensation for the services to be provided hereunder as it relates to restructuring advisory services, WALLC will receive compensation at an hourly rate of $600.00 per hour." Hourly fees for restructuring advisory work are not capped. (Dec. 9, 2019 Hr'g Tr. (annexed hereto as Ex. 1, and cited herein as "Tr.") 42:6-8.)

7. Paragraph 4(e) provides that "The [Debtors] agree to seek the approval of the Wyse Parties' retention in respect of the DIP Financing Fee under Bankruptcy Code Section 328(e) [sic] and otherwise to seek approval of the Wyse Parties' retention contemplated hereunder pursuant to Bankruptcy Code section 363."

8. The Committee did not file an opposition to the Application.

9. The U.S. Trustee did, principally on the ground that it runs afoul of the Jay Alix Protocol's "one hat" rule [Dkt. No. 288, ¶¶22-27].

10. At the December 9, 2019 hearing, in response to an inquiry as to the amount of the DIP loan the Debtors were then contemplating, the Debtors disclosed they would likely be seeking approval of an $8 million DIP faciltiy (Tr. 39:16-17) to satisfy approximately $4 million then owed to the Debtors' accounts receivable lender Capital Finance, LLC and pay professional fees.[3]

11. Both the Committee and Landlords expressed concern about the need for DIP financing given that a sale hearing had been scheduled for January 2020. (Tr. 35:17-23, 44:8-23.)

---

[3] "Enough [additional] money to operate under a budget." (Tr. 40:1-2.) The Debtors subsequently advised that they are operationally solvent post-Orchard Park's closure as is reflected in the cash projection—consolidated, provided by Mr. Wyse (annexed hereto as Ex. 2).

12. The Court deferred consideration of the requested DIP Financing Fee, but otherwise granted the Application. (Tr. 42:9-20, 43:13-25, 45:18-19, 46:10-11.)

13. The Court stated if the hourly compensation otherwise approved wasn't adequate for the job, Mr. Wyse could "come in … and ask for more," provided the subject application is on notice, or he could quit. (Tr. 44:2-6, 44:22.)

14. In response to a post-hearing inquiry as to time devoted by Mr. Wyse to looking for DIP financing, the Debtors advised he devoted 149.5 hours from September 1-December 16, 2019, which at $600/hour would equal $89,700.

15. That amount has subsequently increased to $99,900, as set forth in the cash projection—restructuring fees provided by Mr. Wyse (Ex. 2, final page), which projects restructuring advisory fees of over $500,000 inclusive of amounts set forth in the Wind Down Budget [Dkt. No. 446-1, Schedule 1].

16. On January 8, 2020, the Debtors filed a notice of cancellation of auction, in contemplation of seeking approval of a sale of the Debtors' facilities to RCA Healthcare Management LLC [Dkt. No. 376].

17. On January 14, 2020, the Court entered an Order approving Michael Wyse's employment on terms set forth in the Engagement Agreement, subject to the proviso that the DIP Financing Fee is not approved thereby, and further reserving the right of "WALLC to seek payment of the DIP Financing Fee or other compensation for seeking replacement or additional DIP financing at a later date," and other parties' rights to oppose payment of such fee or compensation [Dkt. No. 400, ¶¶2-3].

18. On February 4, 2020, the Debtors filed monthly fee statements on behalf of Mr. Wyse for the period September 10, 2019-December 31, 2019 [Dkt. No. 435], seeking restructuring advisory fees and reimbursement expenses as follows:

|  | September | October | November | December | Total |
|---|---|---|---|---|---|
| Fees | $59,700 | $102,060 | $74,400 | $74,400 | $310,560 |
| Expenses | $1,238.40 | $3,639.25 | $5,260.93 | $2,356.93 | $12,495.51 |

**Blended Monthly Fee (Ex. Expenses): $77,640**

19. The Committee did not object to payment of the subject fees but requested on February 6, 2020 that the Supplemental Application be withdrawn on the ground that, inter alia, it amounted to an inappropriate use of estate resources.

20. No response was received. Instead, on February 11, 2020 the Debtors noticed the Supplemental Application for hearing [Dkt. No. 448].

21. On February 10, 2020, the Court entered an order approving the sale of substantially all of the Debtors' assets [Dkt. No. 446].

22. The projected effective date of the Administrative Services and Consulting Agreement approved thereby is March 1, 2020. The Committee expects to file a proposed chapter 11 plan and disclosure statement soon thereafter.

## ARGUMENT

### I. THE DEBTORS HAVE NOT MET THEIR BURDEN

23. It is black letter law "that there has to be some articulated justification, other than appeasement of a particular creditor, for the use, sale or lease of a debtor's property outside of the ordinary course of business" under Bankruptcy Code section 363(b). *In re Boston Generating, LLC*, 440 B.R. 302, 321 (S.D.N.Y. 2010) (citing *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1993)). *See also In re CPJFK, LLC*, 496 B.R. 290, 304 (Bankr. E.D.N.Y. 2011).

24. "Thus, a court rendering a section 363(b) determination must 'expressly find from the evidence presented … good business reason to grant such application." *Boston Generating, LLC*, 440 B.R. at 321.

25. The Debtors have not met their burden under section 363(b) to use estate property to pay Mr. Wyse the requested fees. The sole asserted justification is "the size and complexity of these Chapter 11 cases." (Supplemental Application ¶13.) That is insufficient. No evidence in support of the relief sought in the Supplemental Application has been submitted.

26. In addition, the subject relief will only benefit Mr. Wyse, an insider (officer) who has already been paid $323,056 for under four months of work in these cases, plus $10,000 for prepetition services. (Application ¶15.)

## II.   THE REQUESTED FEES ARE UNREASONABLE

27. The Supplemental Application is a disguised fee application and the requested fees are not reasonable under the circumstances.

28. The only DIP financing proposal made (annexed hereto as Ex. 3) appears to have been designed to pay one set of creditors (professionals) hourly fees including Mr. Wyse's own restructuring advisory fees, to the detriment of non-priority creditors that would have borne the cost of proposed interest of not less than 16%/year on funds borrowed from the contemplated $8 million DIP facility, DIP lender projected fees of $142,000 (uncapped), plus "additional legal fees charged as incurred" by the DIP lender.

29. The DIP financing proposal did not result in a motion, and given the posture of these cases it appears unlikely further financing will be needed. Approval of the DIP financing proposed likely would have hindered prospects for confirming a chapter 11 plan. *See also* 11 U.S.C. § 330(a)(3)(C).

30. As one court aptly stated, "the estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought." *In re Chas A. Stevens & Co.*, 105 B.R. 866, 872 (Bankr. N.D. Ill. 1989).

WHEREFORE, the Court should deny the Supplemental Application, and instead approve the DIP Financing Fee, or alternatively, grant Mr. Wyse a quantum meruit award determined after considering all relevant factors, and such other and further relief as the Court deems just and proper.

Dated: February 18, 2020  
       New York, New York

Respectfully submitted,

/s/ Jeffrey Chubak  
Avery Samet  
Jeffrey Chubak  
AMINI LLC  
131 West 35th Street, 12th Floor  
New York, New York 10001  
(212) 490-4700  
asamet@aminillc.com  
jchubak@aminillc.com  
*Attorneys for the Official Committee of Unsecured Creditors*