UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-76260 (AST) |
| | ) | Case No. 19-76263 (AST) |
| In re: | ) | Case No. 19-76267 (AST) |
| | ) | Case No. 19-76268 (AST) |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-76269 (AST) |
| | ) | Case No. 19-76270 (AST) |
| Debtors.[3] | ) | Case No. 19-76271 (AST) |
| | ) | Case No. 19-76272 (AST) |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Absolut Facilities Management, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Chapter 11 |
| v. | ) | |
| | ) | |
| Mark LaSurk as Administrator of the Estate of | ) | Adv. Pro. No. 8:19-AP-08155 |
| Rhonda LaSurk, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### AFFIRMATION IN SUPPORT OF MOTION FOR APPROVAL OF DEBTORS' AGREEMENT ADJOURNING THE MOTION TO EXTEND THE STAY AND FOR MEDIATION OF CERTAIN CLAIMS AGAINST THE DEBTORS, AND FOR RELATED RELIEF

I, William M. Hawkins, duly affirm (the "**Affirmation**"), under the penalties of

perjury as follows:

---

[3] The debtors and debtors-in-possession (the "**Debtors**") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

## FACTUAL BACKGROUND

1.      I am an attorney admitted to practice law in the United States District Court for the Eastern and Southern Districts of New York and a partner of Loeb & Loeb LLP, Debtors' counsel.

2.      This Affirmation is submitted in support of the Debtors' motion (the "**Approval Motion**") for an Order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (a) approving the Agreement Adjourning the Motion to Extend the Stay and for Mediation of Certain Claims against the Debtors dated February 19, 2020 (the "**Agreement**") by and among the Claimants (defined below), the Insurers (defined below), the Debtors and Israel Sherman; (b) authorizing settlement discussions, mediation procedures, and performance of all other provisions of the Agreement; (c) authorizing actions reasonably necessary or appropriate to effectuate the terms in the Agreement; and (d) granting related relief as this Court deems just and proper.

3.      On December 17, 2019 (the "**Commencement Date**"), the above-described Debtors commenced the above-captioned adversary proceeding (the "**Adversary Proceeding**") related to the above-captioned chapter 11 cases of the Debtors (the "**Cases**") against the defendant Mark LaSurk as Administrator of the Estate of Rhonda LaSurk (the "**Defendant**").

4.      Prior to the petition date in the Cases (the "**Petition Date**"), the Defendant had sued certain Debtors and Mr. Sherman, a principal of the Debtors, in the New York State Supreme Court for Erie County seeking a money judgment against each of the named Debtors and Mr. Sherman (the "**LaSurk State Court Action**").

5.      The Debtors brought their motion on the Commencement Date in the Adversary Proceeding, seeking a ruling of this Court (the "**Bankruptcy Court**") enjoining the

prosecution of the LaSurk State Court Action against Mr. Sherman and extending the automatic stay in bankruptcy to protect Mr. Sherman.

6.      Counsel for the Defendant, Brown Chiari LLP ("**Brown Chiari**"), represents a number of claimants (together with the Defendant, collectively, the "**Claimants**" and each a "**Claimant**"; the Claimants are listed on Exhibit A to the Agreement) asserting claims arising before or after the Petition Date against one or more of the Debtors and Mr. Sherman (collectively, the "**Claims**" and each a "**Claim**"), which Claims each seek a money judgment against one or more of the Debtors and Mr. Sherman.

7.      A copy of the Agreement is attached to this Affirmation as Exhibit 1.  The Debtors, the Claimants, Mr. Sherman and certain insurers of the Debtors (the "**Insurers**") are parties (collectively, the "**Parties**" and each a "**Party**") to the Agreement.  The Agreement provides for efficient timelines and orderly procedures for all Parties to make good faith efforts towards settling the Claims.  Further, the Agreement provides for a mediation program in aid of seeking acceptable settlements.  The negotiation, mediation, and potential settlement procedures contemplated under the Agreement will last until early May for some Claims, June for others, and likely longer should Claim settlements be forthcoming.  During this time, a "Standstill" would take effect, precluding Claim enforcement efforts against the Debtors or Mr. Sherman (including any prosecution of the LaSurk State Court Action).

8.      The Debtors believe that settlement discussions and potential mediation of each of the Claims would be beneficial as would be the Standstill's stay of any prosecution, litigation or other attempt to collect on or enforce any of the Claims during such settlement discussions and mediation, all subject to the terms set forth in the Agreement.

**LEGAL STANDARD**

9.      The settlement of disputes is encouraged and generally favored in bankruptcy.  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  Indeed, settlements and compromises are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co*., 308 U.S. 106, 130 (1939)).

10.      "The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the 'best interests of the estate.'"  *In re Adelphia Commc'ns Corp*., 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005) (citation omitted); *see also Nellis*, 165 B.R. at 122-23 (courts must make a determination that the settlement is fair and reasonable).  In deciding whether to approve the settlement, "[t]he settlement need not be the best that the debtor could have obtained."  *Adelphia Commc'ns*, 327 B.R. at 159.  "Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'"  *Id.* (*quoting In re Penn Centr. Transp. Co*., 596 F.2d 1102, 1114 (3d Cir. 1979)); *see also Cosoff v. Rodman (In re W.T. Grant and Co.)*, 699 F.2d 599, 607-08 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *In re Ionosphere Clubs, Inc*., 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *Matter of Carla Leather, Inc*., 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984) (court should not substitute its own judgment for that of the debtor-in-possession).

11.      Federal Rule of Bankruptcy Procedure 9019(a) empowers a bankruptcy court to approve compromises and settlements if such settlements and/or compromises meet the requirement of being in the best interests of the estate.  *See In re Ashford Hotels, Ltd.,* 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998); *Fischer* v. *Pereira (In re 47-49 Charles Street),* 209 B.R. 618, 620 (S.D.N.Y. 1997).  Approval of the compromise or settlement is within the sound

discretion of the court, and may not be overturned unless it is "manifestly erroneous and a clear abuse of discretion." *Fischer* v. *Pereira (In re 47-49 Charles Street),* 209 B.R. at 620 (citing *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y 1993)).

   12. A bankruptcy court, in considering a settlement or compromise, should not substitute its judgment for that of the debtor or determine the legal and factual issues raised by the proceeding that the parties seek to settle. *See Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994); *In re Drexel Burnham Lambert Grp, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Rather, the court should simply review the issues presented to determine whether the settlement is within the minimal bounds of reasonableness. *See Newman v. Stein,* 464 F.2d 689, 693-94 (2d Cir. 1972); *In re Drexel Burnham Lambert Grp, Inc.*, 134 B.R. at 505; *see also Cosoff*, 699 F.2d at 608.

## THE COURT SHOULD APPROVE THE AGREEMENT

   13. After balancing the possibility of success in litigating the Adversary Proceeding and considering the future, substantial benefits of the settlement discussions and mediation procedures contemplated in the Agreement for *all Claims*, the Debtors submit the Agreement should be approved by the Bankruptcy Court. Not only does the Agreement send the Defendants' Claim to a negotiation and mediation program which will involve the implicated Insurer, but the Agreement also establishes that same program for *all Claims*, involving Insurers in most of those negotiation / mediation protocols as well. Thus, the Agreement represents the prudent exercise of the Debtors' business judgement and maximizes the benefits to the Debtors' estates and their creditors as a whole, leading to a possible resolution of numerous Claims by an efficient process. Moreover, absent settlement, complex and protracted litigation with its attendant expense, inconvenience, and delay could follow regarding the Claims of the Defendant and the other Claimants, potentially causing significant detriment to the Debtors' estates. Therefore, the

potential for settling Claims pursuant to the Agreement represents a substantial advantage for the Debtors and their estates.

14.     Further, the Agreement is the result of vigorous arms' length negotiations among the Debtors, the Claimants, the Insurers, and Mr. Sherman.  This fact provides additional grounds for the Bankruptcy Court to approve the Agreement.

15.     No prior relief as set forth herein has been requested from this or any other court.

WHEREFORE, it is respectfully requested that this Bankruptcy Court grant the Debtors' Approval Motion in its entirety, enter an order in a form substantially similar to the proposed order attached hereto as <u>Exhibit 2</u>,  and grant any related relief as this Bankruptcy Court deems just and proper.

Dated: New York, New York
       February 25, 2020

*/s/  William M. Hawkins*
William M. Hawkin

**Exhibit 1**

Agreement

**LOEB & LOEB LLP**
Schuyler G. Carroll
William M. Hawkins
Evan K. Farber
Mary Jean Kim
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
         whawkins@loeb.com
         efarber@loeb.com
         mjkim@loeb.com

*Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-76260 (AST) |
| | ) | Case No. 19-76263 (AST) |
| In re: | ) | Case No. 19-76267 (AST) |
| | ) | Case No. 19-76268 (AST) |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-76269 (AST) |
| | ) | Case No. 19-76270 (AST) |
| Debtors.[1] | ) | Case No. 19-76271 (AST) |
| | ) | Case No. 19-76272 (AST) |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

---

[1] The debtors and debtors-in-possession (the "**Debtors**") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Absolut Facilities Management, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Chapter 11 |
| v. | ) | |
| | ) | |
| Mark LaSurk as Administrator of the Estate of | ) | Adv. Pro. No. 8:19-AP-08155 |
| Rhonda LaSurk, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### AGREEMENT ADJOURNING
### THE MOTION TO EXTEND THE STAY AND FOR
### MEDIATION OF CERTAIN CLAIMS AGAINST THE DEBTORS

Whereas, on December 17, 2019 (the "**Commencement Date**"), the above-described Debtors commenced the above-captioned adversary proceeding (the "**Adversary Proceeding**") related to the above-captioned chapter 11 cases of the Debtors (the "**Cases**") against the defendant Mark LaSurk as Administrator of the Estate of Rhonda LaSurk (the "**Defendant**"); and

Whereas, prior to the petition date in the Cases (the "**Petition Date**"), the Defendant had sued certain Debtors and Israel Sherman, a principal of the Debtors, in the New York State Supreme Court for Erie County (the "**Erie County State Court**") seeking a money judgment against each of the named Debtors and Mr. Sherman (the "**LaSurk State Court Action**"); and

Whereas, the LaSurk State Court Action is entitled *LaSurk v. Absolut Facilities Management, LLC, Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC and Israel Sherman*, Index No. 805925/2019, New York Supreme Court, Erie Cty.; and

Whereas, after the Petition Date, and before the Commencement Date, Defendant had taken the position that the automatic stay under 11 U.S.C. § 362(a) did not stay prosecution of the LaSurk State Court Action against Mr. Sherman; and

Whereas, the Debtors brought their *Motion to Extend the Automatic Stay or, In the Alternative, for Injunctive Relief Enjoining Prosecution of Certain Litigation Against Debtors' Officer and Manager* dated December 17, 2019 (the "**Motion**") in the Adversary Proceeding, seeking a ruling of this Court (the "**Bankruptcy Court**") to enjoin the prosecution of the LaSurk State Court Action against Mr. Sherman; and

Whereas, counsel for the Defendant, Brown Chiari LLP ("**Brown Chiari**"), represents a number of claimants (together with the Defendant, collectively, the "**Claimants**" and each a "**Claimant**"; the Claimants are listed on Exhibit A hereto) asserting claims arising before or after the Petition Date against one or more of the Debtors and Mr. Sherman (collectively, the "**Claims**" and each a "**Claim**"), which Claims each seek a money judgment against one or more of the Debtors and Mr. Sherman; and

Whereas, the Debtors own certain insurance policies which are identified on Exhibit B hereto (the "**Policies**" and each a "**Policy**"), issued by certain insurers (the "**Insurers**", also identified on Exhibit B hereto); and

Whereas, "**Indicated Insurer(s)**" shall mean each Insurer or Insurers on the Policy/ies (if any) in connection with the Claim of each specific Claimant, such Indicated Insurer(s) as to each Claimant and Claim being set forth on Exhibit A; and

Whereas, the Claims and Claimants followed by "LLOYDS I" as the / an Indicated Insurer on Exhibit A may be referred to herein as the "**LLOYDS I Claim(s)**" and the "**LLOYDS I Claimant(s)**"; and

Whereas, the Claims and Claimants followed by "AXIS" as the / an Indicated Insurer on Exhibit A may be referred to herein as the "**AXIS Claim(s)**" and the "**AXIS Claimant(s)**"; and

Whereas, February 11, 2020, is the "**Effective Date**" as referred to herein; and

Whereas, the Claimants allege that one or more Policies may provide coverage insuring the Debtors against a loss arising from the Claims; and

Whereas, each of the Debtors, Mr. Sherman, the Insurers, and the Claimants (collectively, the "**Parties**" and each a "**Party**") believes that settlement discussions and potential mediation of each of the Claims would be beneficial as would be a stay of any prosecution, litigation or other attempt to collect on or enforce any of the Claims by or on behalf of any of the Claimants, including against any of the Debtors, the Insurers or Mr. Sherman during such settlement discussions and mediation, subject to the terms set forth below in this agreement (the "**Agreement**");

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each Party, it is stipulated and agreed as follows:

A.      **LLOYDS I Claimants**.

1.      **Each LLOYDS I Claimant Shall Make an Offer**.  Each LLOYDS I Claimant shall deliver a single Package (defined below) regarding its LLOYDS I Claim to the Debtors, Mr. Sherman and the Indicated Insurer(s) on or before February 14, 2020.  Each "**Package**" shall contain a good faith demand or offer from the Claimant to settle the Claim with the other Parties (an "**Offer**") as well as information and documents relevant to such Claim and Offer, as determined in good faith by the Claimant.  The Debtors, Mr. Sherman, the Indicated Insurer(s) and the LLOYDS I Claimant for each LLOYDS I Claim shall engage in a good-faith discussion about the respective Package delivered and such LLOYDS I Claim on or about March 11, 2020, which discussion may occur in person, by teleconference or some combination.  The details, specific scheduling, arrangements for, and terms governing such discussion (including confidentiality, settlement purposes, etc.) shall be initiated and reasonably coordinated by counsel for the Claimants, Brown Chiari; provided, however, that each non-Claimant Party shall have the right,

in its sole discretion, to object to the terms governing any such discussion.  Any LLOYDS I Claim

for which no Package is timely delivered in accordance with the terms of this Paragraph "1" shall

be permanently waived, foregone and released by the Claimant as against all other Parties (and

thereby deemed satisfied in full); no LLOYDS I Claimant shall further seek to enforce, prosecute

or collect on such LLOYDS I Claim; and any Party that is a defendant in an action before a Non-

Bankruptcy Court (defined below) with regard to such Claim may, at its sole discretion, move to

dismiss such Claim with prejudice (and without fees or costs assessed against any of the Debtors,

Mr. Sherman or any Insurer) in such Non-Bankruptcy Court, and the Claimant shall not oppose

such motion.  Notwithstanding the foregoing in this Paragraph "1", the Debtors, Mr. Sherman and

the Indicated Insurer(s) on any Claim may agree to extend the time for a LLOYDS I Claimant to

deliver a Package with regard to any LLOYDS I Claim, in their sole discretion.  In the case of such

extension, the time for the Debtors, Mr. Sherman and the Indicated Insurer(s) to respond to any

and all LLOYDS I Claims and their Packages, as otherwise calculated in Paragraph "2"

immediately below, and the Standstill (defined below) with respect thereto, as described in

Paragraph "11" below, shall be additionally extended by the same number of days as such

extension.

2.        **The Other Parties Respond to each Offer by a LLOYDS I Claimant**.  On or before

April 20, 2020, the Debtors, Mr. Sherman and the Indicated Insurer(s) shall respond to the

respective Offer for each LLOYDS I Claim in writing (a "**Response**") by delivering (a) an

acceptance of the Offer (an "**Acceptance**"); (b) a rejection of the Offer (a "**Rejection**") with a

counter-proposal for settlement of the LLOYDS I Claim in question among the Parties (a

"**Counter-proposal**"); or (c) a Rejection and a statement demanding that such Parties to such

LLOYDS I Claim (*i.e.*, the LLOYDS I Claimant, the Debtors, Mr. Sherman and the Indicated

Insurer(s)) submit such Claim to the Mediation Procedure (defined below) (a "**Mediation Demand**").  The Debtors, Mr. Sherman and the Indicated Insurer(s) shall endeavor in good faith to provide a single, jointly-prepared Response regarding each such Offer; provided, however, each of the Debtors, Mr. Sherman and the Indicated Insurer(s) shall have the right at their sole discretion to deliver a separate Response to any Offer.  Any LLOYDS I Claimant may extend the time for the other Parties to interpose a Response to any Offer with regard to its Claim, at such Claimant's sole discretion.  Notwithstanding the foregoing in this Paragraph "2", should any of the Debtors, Mr. Sherman or the Indicated Insurer(s) fail to respond on a timely basis to any Offer, such Party shall be deemed to have properly delivered a Mediation Demand with regard to the Claim at issue, as otherwise contemplated by this Agreement.

B.      **AXIS Claimants**.

3.      **Each AXIS Claimant Shall Make an Offer**.  Each AXIS Claimant shall deliver a single Package regarding its AXIS Claim to the Debtors, Mr. Sherman and the Indicated Insurer(s) on or before March 6, 2020.  The Debtors, Mr. Sherman, the Indicated Insurer(s) and the AXIS Claimant for each AXIS Claim shall engage in a good-faith discussion about the respective Package delivered and such AXIS Claim on or about April 8, 2020, which discussion may occur in person, by teleconference or some combination.  The details, specific scheduling, arrangements for, and terms governing such discussion (including confidentiality, settlement purposes, etc.) shall be initiated and reasonably coordinated by Brown Chiari; provided, however, that each non-Claimant Party shall have the right, in its sole discretion, to object to the terms governing any such discussion.  Any AXIS Claim for which no Package is timely delivered in accordance with the terms of this Paragraph "3" shall be permanently waived, foregone and released by the Claimant as against all other Parties (and thereby deemed satisfied in full); no AXIS Claimant shall further

seek to enforce, prosecute or collect on such AXIS Claim; and any Party that is a defendant in an action before a Non-Bankruptcy Court with regard to such Claim may, at its sole discretion, move to dismiss such Claim with prejudice (and without fees or costs assessed against any of the Debtors, Mr. Sherman or any Insurer) in such Non-Bankruptcy Court, and the Claimant shall not oppose such motion.  Notwithstanding the foregoing in this Paragraph "3", the Debtors, Mr. Sherman and the Indicated Insurer(s) on any Claim may agree to extend the time for an AXIS Claimant to deliver a Package with regard to any AXIS Claim, in their sole discretion.  In the case of such extension, the time for the Debtors, Mr. Sherman and the Indicated Insurer(s) to respond to any and all AXIS Claims and their Packages, as otherwise calculated in Paragraph "4" immediately below, and the Standstill with respect thereto, as described in Paragraph "11" below, shall be additionally extended by the same number of days as such extension.

4.     **The Other Parties Respond to each Offer by an AXIS Claimant**.  On or before May 11, 2020, the Debtors, Mr. Sherman and the Indicated Insurer(s) shall provide a Response to the respective Offer for each AXIS Claim by delivering (a) an Acceptance; (b) a Rejection with a Counter-proposal with regard to such AXIS Claim; or (c) a Rejection and Mediation Demand with regard to such AXIS Claim.  The Debtors, Mr. Sherman and the Indicated Insurer(s) shall endeavor in good faith to provide a single, jointly-prepared Response regarding each such Offer; provided, however, each of the Debtors, Mr. Sherman and the Indicated Insurer(s) shall have the right at their sole discretion to deliver a separate Response to any Offer.  Any AXIS  Claimant may extend the time for the other Parties to interpose a Response to any Offer with regard to its Claim, at such Claimant's sole discretion.  Notwithstanding the foregoing in this Paragraph "4", should any of the Debtors, Mr. Sherman or the Indicated Insurer(s) fail to respond on a timely basis to any Offer,

such Party shall be deemed to have properly delivered a Mediation Demand with regard to the Claim at issue, as otherwise contemplated by this Agreement.

C       **Other Claimants**.

5.      **Efforts to Mediate**.  For all Claims or Claimants which are not LLOYDS I or AXIS Claims or Claimants ("**Other Claims**" and "**Other Claimants**"), the Debtors shall make good-faith, reasonable efforts to seek participation of insurers who may provide coverage for such Other Claims (or some of them) in procedures for settlement discussions regarding such Other Claims similar to those applicable to the LLOYDS I and AXIS Claims in this Agreement.  Each such Other Claimant, the Debtors and Mr. Sherman, through counsel, shall cooperate to establish a settlement discussion and mediation program similar to that described in this Agreement with regard to the LLOYDS I and AXIS Claims to apply to the Other Claims.  On or about March 20, 2020, such Other Claimants, the Debtors and Mr. Sherman shall meet telephonically or in person, through counsel, to discuss the timing and logistics of such settlement discussion and mediation program and the involvement of any such additional insurers in such mediation program (and such Parties shall consider, in good faith, conducting mediation for such Other Claim(s) even absent any additional insurers as to Other Claim(s)).  The Standstill with regard to the Other Claims shall continue until a date which is not earlier than May 1, 2020.

D.      **Terms Applicable Regarding All Claims and Claimants**.

6.      **Finalizing an Accepted Offer**.  Upon an Acceptance of an Offer by the Debtors, Mr. Sherman and the Indicated Insurer(s), the respective Claimant, the Debtors, Mr. Sherman and the Indicated Insurer(s) shall promptly take steps to finalize the settlement of the Claim in question, including, among any other terms to be agreed upon by the settling Parties, as follows (a) the Claimant shall provide releases in favor of the Debtors and Mr. Sherman in a form acceptable to

the Indicated Insurer; (b) the Claimant, the Debtors and Mr. Sherman shall provide releases in favor of the Indicated Insurer in a form acceptable to the Indicated Insurer; (c)  the Claimant shall execute a Stipulation of Discontinuance with Prejudice as to any related action; (d) the Claimant shall satisfy any Medicare, Medicaid, collateral source or other lien against the settlement amount, by payment to be made directly to the lien holder(s) by the Indicated Insurer out of the agreed upon settlement amount, and the Claimant shall hold harmless the Debtors, Mr. Sherman and the Indicated Insurer with respect to any such claim or demand for liens, known, or unknown at the time of the settlement of the Claim; (e) settlement of the Claims shall remain confidential except to the extent necessary to comply with the terms of this Agreement; (f) the Claimant shall acknowledge that the settlement of the Claim does not constitute any admission of liability on the part of any settling Party; and (g)  the Debtors shall obtain an order approving such settlement from the Bankruptcy Court.

7.    **Addressing a Counter-Proposal to an Offer**.  Upon a Counter-proposal, the respective Claimant shall deliver an acceptance of such Counter-proposal or other communication regarding the Counter-proposal, in good faith, to the Debtors, Mr. Sherman and the Indicated Insurer(s) by a date which is 5 consecutive days immediately following the receipt of the Counter-proposal.  Upon such Counter-proposal's acceptance by the Claimant (and agreement by the other Parties involved), all such Parties shall promptly take steps to finalize the settlement of the Claim in question, including as set forth at Paragraph "6" above.  Should any Counter-proposal not be timely accepted by the Claimant in question, the Counter-proposal shall be deemed rejected and a Mediation Demand shall be deemed to have been made by the Claimant regarding such Claim as of the date of any rejection or deemed rejection by the Claimant.

8.       **A Mediation Demand**.  Upon the delivery or deemed delivery of a Mediation Demand by any Party to another Party with regard to a Claim, the Party making or deemed to have made the Mediation Demand shall, on or before the date which is 3 consecutive days immediately thereafter, notify the Mediator (defined below) thereof in writing and deliver a copy of the related Mediation Demand with such notification.  The Parties shall thereafter adhere to the Mediation Procedure for such Claim.

9.       **Selecting the Mediator and Establishing a Mediation Procedure**.  On or before a date which is 7 consecutive days immediately after the Effective Date, the Parties shall collaborate in good faith to identify one or more individuals to mediate a potential settlement of one or more Claims ("**Mediator**").  Together with each such Mediator, the Parties shall promptly collaborate in good faith to establish and agree upon procedures for mediation to be invoked upon the delivery or deemed delivery of a Mediation Demand (the "**Mediation Procedure**").  The Mediation Procedure shall provide for (without limitation) prompt submission of the Package, the Offer and any Counter-proposal regarding any Claim to the Mediator following the delivery of a Mediation Demand (actual or deemed) concerning such Claim, and at least one day of in-person mediation session among the Mediator, the Claimant, the Debtors, Mr. Sherman and the Indicated Insurer(s) to occur, (a) for any LLOYDS I Claim(s) subject to a Mediation Demand, at a location in New York, New York on a date between April 27 and May 5, 2020, (b) for any AXIS Claim(s) subject to a Mediation Demand, at a reasonable location to be determined by the Parties, on a date between June 1 and June 5, 2020, and (c) for any Other Claim(s), as good faith discussions and agreement among the Debtors, Mr. Sherman and the Other Claimant(s) may provide.  The Mediation Procedure shall also (without limitation) (a) establish the amount of fees and any costs to be charged by the Mediator with regard to LLOYDS I and AXIS Claims, one half of which will be

paid by the Claimant, and one half to be split equally for payment among the Indicated Insurer, the Debtors and Mr. Sherman, and (b) permit any Party involved in a Mediation Procedure a fair opportunity to propose additional issues for such mediation which concern the Claim in question. The Parties shall agree to a Mediator, willing to conduct the Mediation Procedure(s) (y) for the LLOYDS Claims that may become subject to Mediation Demand(s), on or before February 21, 2020, or (z) for the AXIS Claims that may become subject to Mediation Demand(s), on or before March 6, 2020; provided, that should the Parties fail to select Mediator(s) on or before such foregoing date(s) or should such Mediator(s) and the Parties fail to agree to Mediation Procedure(s) which would be applicable to such Claim(s) on or before a date which is 30 consecutive dates immediately after each such Mediator's selection by the Parties, any Party may seek a hearing on expedited notice before the Bankruptcy Court with regard thereto.

10.    **Court Approval of a Settlement; Dismissal in Non-Bankruptcy Court**.  With regard to the settlement of any Claim, any Party may timely condition its acceptance of such settlement upon an order (which has become final) of (a) the Bankruptcy Court that approves or "so orders" the terms of such Claim settlement and / or (b) any Non-Bankruptcy Court with regard to such Claim, which dismisses with prejudice any and all pending proceedings, actions or litigations of any type with regard to such Claim (such dismissal order being otherwise consistent with the settlement terms).  The Parties shall discuss the proper forum in which approval of a settlement should be obtained (if any).  If a Claim settlement follows from a Mediation Procedure, such a Mediation Procedure shall not be deemed concluded until the orders described in clauses (a) and (b) above shall have become final and, notwithstanding the provisions of Paragraphs "2", "4" and "11" of this Agreement which may provide otherwise, the Standstill with regarding to any such settled

Claim shall extend through and include the occurrence of the events described in Subparagraphs "(a)" and "(b)" of this Paragraph "10", above.

11.    **Standstill**.  As of the Effective Date, a standstill shall be in effect, immediately enforceable against all Parties as to all Claims, such that no Claimant or other person acting therefor or otherwise alleging an interest in any Claim, shall advance, prosecute, interpose, litigate, continue to litigate, enforce or collect on any Claim in any way, nor seek or attempt to do any of the foregoing (the "**Standstill**").  The Standstill shall preclude, without limitation, any Claimant or other party described above from advancing, prosecuting, interposing, litigating, continuing to litigate, enforcing or collecting any claim, action or cause of action (which shall constitute a "Claim" for the purposes of this Paragraph "11") against any defendant which shares insurance coverage with any Debtor or which has, or would be able to assert, an indemnification, "hold harmless" or co-liability claim against any Debtor.  The Standstill shall remain in effect against the Claimants and all other parties described above until the earliest of the following (unless the Claimant in question agrees to an extension of such Standstill): (a) for each LLOYDS I Claimant with regard to each LLOYDS I Claim, (i) for which the Response to the related Offer is a Rejection with no Counter-proposal or Mediation Demand, the date of such Rejection, or (ii) for which a Mediation Demand is made or deemed made, May 10, 2020 (as may be further extended as described in Paragraphs "2" and "10", above), (b) for each AXIS Claimant with regard to each AXIS Claim, (i) for which the Response to the related Offer is a Rejection with no Counter-proposal or Mediation Demand, the date of such Rejection, or (ii) for which a Mediation Demand is made or deemed made, June 10, 2020 (as may be further extended as described in Paragraphs "4" and "10", above), and (c) for each Other Claimant with regard to each Other Claim, as provided in Paragraph "5", above.  Without limiting its effect, pursuant to the Standstill, (w) the Defendant,

upon its execution of this Agreement, shall immediately withdraw the LaSurk State Court Action from the trial calendar, and no trial date shall be calendared, scheduled or set by the Erie County State Court which is earlier than June 24, 2020; (x) each Claimant shall take steps to notify the Erie County State Court or such other non-bankruptcy court in which litigation may have already been initiated on a Claim (any of the foregoing, a "**Non-Bankruptcy Court**") of the Standstill and assure that such litigation is stayed or suspended in such court; (y) the time within which any of the Debtors or Mr. Sherman must or should interpose any counterclaim or defense, file or serve any notice, objection, response, answer or other pleading, or otherwise take any other step in the LaSurk State Court Action or in any Non-Bankruptcy Court or the Bankruptcy Court, or otherwise with regard to any Claim, which time would otherwise occur, transpire or expire during the Standstill, to the prejudice of any Debtor or Mr. Sherman, shall not occur, and shall be extended, effective immediately, to a date which is not earlier than 30 consecutive days immediately after the end of the Standstill (and the Claimant shall provide not less than 30 days' prior notice of the extended date of any such time deadline to Mr. Sherman, the Debtors and the Indicated Insurers); and (z) the Defendant shall not seek to establish any trial date in the LaSurk State Court Action until a date which is not earlier than 45 consecutive days immediately after the end of the Standstill with respect to the Claim of the Defendant (and the Defendant shall provide not less than 30 days' prior notice of any trial date as so scheduled or rescheduled to the Debtors, Mr. Sherman and any Indicated Insurers).

12.     **Preservation of Claims; Tolling as to the Claimants**.  Notwithstanding the Standstill described above, each Claimant with regard to its Claim may, at its discretion, file a summons and complaint in a Non-Bankruptcy Court (provided that no litigation before any Non-Bankruptcy Court is or was at any time pending) naming Mr. Sherman as a defendant (such Claimant expressly

not being permitted to name any of the Debtors) and counsel for Mr. Sherman shall accept service and waive any jurisdictional defenses with regard thereto (without prejudice, however, to any rights or defenses of the Debtors).  Claimant shall immediately and automatically grant to Mr. Sherman (for Mr. Sherman's, the Debtors' and the Insurers' benefit), without any notice or request necessary, a general, continuing extension to answer or otherwise respond to such summons and complaint, which Claimant shall not revoke (nor shall be permitted to revoke) before a date which is 30 consecutive days immediately after the end of the Standstill with respect to such Claim, and which shall only be revoked after 30 days' prior notice to Mr. Sherman, the Debtors and any Indicated Insurer(s) by the Claimant.  Claimants' counsel and counsel for Mr. Sherman agree that, in the place of such authority for any Claimant to file a summons and complaint, a tolling agreement may be entered into between such Claimant and Mr. Sherman, in a form to be reasonably agreed to between Claimants' counsel and counsel for Mr. Sherman, subject to the consent of the Debtors and any Indicated Insurer(s) to such form, with the same revocation procedures as set forth relative to the general, continuing extension to answer as described above.

D.      **Other Terms**.

13.     **Debtors Provide Policies**.  The Debtors and Mr. Sherman shall provide a description of all insurance policies providing coverage to any of the Debtors or Mr. Sherman, which policies are known to the Debtors or Mr. Sherman, and copies of all such policies, as and to the extent that the Debtors or Mr. Sherman possess such copies (without any representation or warranty as to the accuracy or completeness of such copies), to Brown Chiari on or before (a) February 21, 2020, for such policies as may cover any LLOYDS I Claim, and (b) March 21, 2020, for all other policies which cover or could cover any Claims made during or after 2012.

14.     **Good Faith Commitment**.  Each Party agrees to participate in good faith in the processes and procedures set forth in this Agreement.  With regard to each Claim, the Indicated Insurer(s) will participate pursuant to a full reservation of rights as to all coverage terms and defenses, including with respect to the self-insured retention provisions of the respective Policies; and further will consider contributing toward a settlement(s) notwithstanding any self-insured retention provisions in the Policy(ies).  No term herein requires, nor is it intended to be construed as or reflect, any agreement by any Insurers to pay any claim against the Debtors and / or Mr. Sherman seeking reimbursement or payment of Defense Costs and / or Claims Expenses within the self-insured retention provisions of its Policies, or otherwise.

15.     **Bankruptcy Court Approval of this Agreement; Effect of this Agreement**.   The Debtors shall move the Bankruptcy Court for an order approving this Agreement and enforcing the terms of the Standstill.  Each non-Debtor Party consents to, and shall not oppose, such motion and entry of such order.  The Debtors may seek such an order as partial relief on the Motion.  The execution and delivery of this Agreement by the Debtors shall not prejudice or compromise any claims, rights, causes of action or the like of the Debtors against any other Party nor against any insurer (which is not a Party) or other third-party.  The Debtors may, at their sole discretion, seek and require a provision in an order of the Bankruptcy Court approving this Agreement to set forth the terms contained in the immediately preceding sentence as a condition to the Debtors' obligations pursuant to this Agreement.  Upon the occurrence of the Effective Date and the entry of an order by the Bankruptcy Court as described in this Paragraph "15", the Debtors shall (a) seek to adjourn the hearing on the Motion for additional consideration to a date on or after 60 consecutive days immediately after the Effective Date or (b) withdraw the Motion, without prejudice, at the sole discretion of the Debtors.

16.    **Debtors' Rights and Plan Unaffected; Debtors Retain Exclusivity**.  Notwithstanding any other term of this Agreement which may appear to the contrary, nothing in this Agreement shall (a) limit any rights or defenses of the Debtors pursuant to 11 U.S.C. §§ 105 and 362(a); (b) extend any time limit or deadline for the filing of any proof of claim or interest or any request for payment of an administrative claim in the Cases (which shall remain unchanged and unaffected hereby, including as to all Claimants and Claims); (c) limit or prejudice any rights of the Debtors and Mr. Sherman with regard to any insurance coverage (whether as to liability or defense) or otherwise in relation to any of (i) the Policies or (ii) the Insurers; nor (d) limit or affect the terms that any of the Debtors may include in (or seek to include in) a plan under 11 U.S.C. §§ 1122 - 1124 in any of the Cases (a "**Plan**").  The Parties (other than the Debtors) hereby agree to, and shall support the Debtors' motion for, extension of the exclusivity periods of the Debtors as follows: (a) the exclusive period for the Debtors to file a Plan under 11 U.S.C. §§ 1121(b) and (c)(2) shall be extended until a date on or after a date which is 30 consecutive days immediately after the end of the latest-ending Standstill; and (b) the exclusive period for the Debtors to seek and achieve acceptance of a Plan under 11 U.S.C. § 1121(c)(3) shall be extended until a date on or after a date which is 90 consecutive days immediately after the end of the latest-ending Standstill.  The foregoing extensions shall be and remain effective and enforceable against all non-Debtor Parties regardless of whether the Bankruptcy Court would or does enter an order so extending such exclusive periods.

17.    **Bankruptcy Court Retains Jurisdiction**.  Notwithstanding any other term of this Agreement, any disagreement or dispute about the terms of this Agreement or its enforcement shall be heard and determined by the Bankruptcy Court; provided that, if the Bankruptcy Court shall

not exercise such jurisdiction, any such disagreement or dispute may be heard and determined by any court with jurisdiction.

18.    **Representations and Warranties**.  Each of the Claimants represents and warrants to all the other Parties that it owns and controls all interests in all Claims attributed to it and that it has not sold, assigned, hypothecated, pledged or otherwise transferred any interest in any Claim against any of the Debtors to any other party or entity, nor received the assignment of such Claim from any other entity or person (except as may be expressly set forth to the contrary on Exhibit A).  Each person or entity executing this Agreement represents and warrants to all Parties that such person or entity has the due, full and effective authority to execute and deliver this Agreement, thereby making it binding by its terms on and upon the Parties for which such person or entity signs, together with such Parties' current and future heirs, representatives, trustees, agents, administrators, attorneys, executors, successors and assigns.  This Agreement shall be subject to the approval of the Bankruptcy Court, and as to AXIS Insurance Company shall be null and void without final approval of the Bankruptcy Court.  Each person or entity executing this Agreement represents and warrants to all Parties that the Parties which it purports to represent with regard to any Claims and / or this Agreement have been represented and advised by counsel of their choice with regard to all issues and matters concerning this Agreement and such Claim(s) and such Parties freely and knowingly agree and stipulate to this Agreement.  Brown Chiari represents and warrants to the Debtors and Mr. Sherman that the "Claims" listed on Exhibit A are all Claims as described in this Agreement, are accurately described on Exhibit A, and constitute and are all of, and the only, claims, causes of action, liabilities, assertions, off-sets, recoupments or actions of any kind or nature, whether matured or unmatured, quantified or undetermined, contingent or fixed, primary or secondary, arising at any time and based on any alleged facts or occurrences, against any of the

Debtors or Mr. Sherman, that any of the Claimants or any other clients of Brown Chiari have or may have as of the Effective Date.

19.     **Severability**.  Should any term or provision of this Agreement be determined or deemed ineffective or unenforceable, all other terms and provisions of this Agreement shall remain fully effective and enforceable as against and among all of the Parties and as against all third parties; provided, however, that, should the Standstill be determined or deemed ineffective or unenforceable by its terms, in whole or in part, the other terms and provisions of this Agreement shall no longer be enforceable or effective as against the Debtors.

20.     **Binding Effect on Heirs, Assigns, Etc**.  This Agreement, and all terms hereof, shall be effective and enforceable against all current and future heirs, representatives, trustees, agents, administrators, attorneys, executors, successors and assigns of each of the Parties, by each other Party and the current and future heirs, representatives, trustees, agents, administrators, attorneys, executors, successors and assigns thereof.

21.     **Entire Agreement; No Oral Modification**.  This Agreement constitutes the entire agreement of the Parties with regard to the matters set forth herein.  This Agreement may not be modified except in a writing, duly subscribed to by all Parties against which such modification may seek to be enforced.

22.     **Governing Law**.  This Agreement shall be governed by the laws of the State of New York, including as such laws incorporate U.S. federal law, but without regard to any provision of the laws of the State of New York which might make the substantive laws of any other state or non-U.S. jurisdiction applicable.

23.     **Execution in Counterparts**.  This Agreement may be executed and delivered by the Parties in counterparts, separately executed, all of which shall together constitute one and the same

agreement. PDF or other facsimile signatures of this Agreement shall be fully valid and enforceable as if they were original ink signatures.

24. **Notices; Deliveries**. Notices and deliveries to any Party hereunder shall be made to the attorney therefor as indicated below or on Exhibit B for such Party. All notices pursuant to or described in this agreement must be in writing. Any notice and delivery shall be effective upon actual receipt by the intended recipient, via email at the specified email address; by fax transmission at the specified fax number; or by hand delivery, overnight courier or U.S. mail at the specified physical address.

25. **Headings and Title**. The headings and title of this Agreement are inserted for the reader's convenience; they do not affect the interpretation or meaning of the Agreement's terms.

Dated: February 19, 2020

BROWN CHIARI LLP

By_____
Michael Scinta

2470 Walden Ave.
Buffalo, New York 14225-4751
D: 716-681-7190
F: 716-681-8136
Email: mscinta@brownchiari.com

*Counsel for the Claimants*

FIELDS HOWELL LLP

By   /s/ Jonathan D. Kramer
      Jonathan D. Kramer

1180 W. Peachtree Street, NW
Suite 1600
Atlanta, GA 30309
D: 404-214-1274
F: 404-214-1251
Email: jkramer@fieldshowell.com

*Counsel for Underwriters at Lloyd's,
London for Policy No.
B0868PUSHC1500076*


CATALANO GALLARDO &
  PETROPOULOS, LLP

By   /s/ Gary Petropoulos
      Gary Petropoulos

100 Jericho Quadrangle, Suite 326
Jericho, New York 11753
D: 516-931-1800
F: 516-931-1033
Email: GPetropoulos@cgpllp.com

*Counsel for Axis Surplus Insurance
Company*


FRYMAN P.C.

By
      David J. Fryman

10 East Merrick Road, Ste 305
Valley Stream, NY 11580
D: 516-714-4147
F: 518-670-0117
Email: dfryman@frymanpc.com

*Counsel for Israel Sherman*

LOEB & LOEB LLP

By   /s/ Schuyler G. Carroll
      Schuyler G. Carroll

345 Park Avenue
New York, New York 10154
D: 212-407-4820
F: 212-202-5431
Email: scarroll@loeb.com

*Counsel for the Debtors and Debtors-in-
Possession*

**EXHIBIT A**

| **Claimant** | **Indicated Insurer(s) (defined on Exh. B)** |
| --- | --- |
| Abagnale, Jerry | |
| Adames, Juan | |
| Archer, Judy | AXIS |
| Babiarz, Florence | AXIS |
| Baco, Mary Jane | AXIS |
| Bacon, Jack | AXIS |
| Baker, Ann | LLOYDS I |
| Bantle, Donna | LLOYDS I |
| Barry, Mary | |
| Bazulka, Sally Ann | LLOYDS I |
| Bernacki, Stella* | |
| Bettker, Viola | |
| Blount, Jean* | |
| Bova, Rosemary | AXIS |
| Brooks, Claude** | |
| Burdick, Anne | AXIS |
| Button, Paula | |
| Cala, Vincent | |
| Casciano, Amelia*** | |
| Casciano, Joseph*** | |

Chmieleski, Shirley***

Choinski, Kevin

Cieslinski, Paul                          AXIS

Clontz, Effie                             AXIS

Cox, Gary                                 AXIS

Cwiklinski, Lucy

Damcott, Carolyn**

Danser, Rebecca                           LLOYDS I

Davis, Rochelle                           AXIS

Dejewski, Paul                            AXIS

Delaughter, Anna***

Dolbow, Lois

Drewniak, Sally                           AXIS

Dunlap, Eileen                            AXIS

Dziarnowski, Helene                       AXIS

Earley, Joan

Ellis, Dolores

Erhardt, Marha                            LLOYDS I

Fiannaca, Maria

Fierle, Lucille***

Fiorello, Carmela                         LLOYDS I

Franks, Camile                            AXIS

Gietler, Stephanie                        LLOYDS I

Ginnick, Janet                            LLOYDS I

Glogowski, Chester                        AXIS

| | |
|---|---|
| Gross, Lucille | |
| Guenther, James | AXIS |
| Hakes, Donald | LLOYDS I |
| Harrigan, Joann | AXIS |
| Harris, Beverly | AXIS |
| Heary, Nancyanne | |
| Holmes, William | |
| Horton, Ethel | |
| Humphrey, Thomas | AXIS |
| Jackson, Eugene | AXIS |
| Johnson, Jacqueline | AXIS |
| Johnson, John | AXIS |
| Junger, Rita*** | |
| Jurcevic, Terezija | AXIS |
| Keller, Ann | AXIS |
| Kensinger, Donald | LLOYDS I |
| Klein, Jeanette | |
| Klein, William | AXIS |
| Knoblauch, Evelyn | |
| Kolpack, David | AXIS |
| Kozub, John*** | |
| Krajewski, Jamie | LLOYDS I |
| Kupka, Louis | AXIS |
| LaSurk, Rhonda | LLOYDS I |
| Lauria, Cynthia | AXIS |

Lips, Melvin***

MacFarland, Margaret                        AXIS

Manzo, Mary

Mascaria, Patricia                          LLOYDS I

Matos, Jose

McLaughlin, Annette                         AXIS

McMillan, Sheila

Miller, Betty***

Morvant, Loretta

Nagel, Mary

Nowicki, Robert                             AXIS

Phillips, Deborah                           AXIS

Piazza, Pearl***

Quigley, Sara

Quinlan, Margaret*

Richie, Priscilla

Richter, Sheila

Roberson, Christina

Rosier, Earl***

Ross, Raymond                               LLOYDS I

Rosselli, Lee                               LLOYDS I

Ruchalski, Dorothy*

Salamone, Michael

Sandor, Rose

Sanmarco, Stephene

Seitz, Rose

Severn, Theresa                                    AXIS

Sikora, Gloria

Skinner-Isome, Vivian                              LLOYDS I

Stockman, David                                    AXIS

Stone, Joanne                                      AXIS

Swan, Karen

Szczepanski, Josephine***

Tabone, Wendy

Terranova, Concetta

Vianese, Mary                                      AXIS

Violanti, Sally*

Watson, Michael (LOCATION: AP)

Watson, Michael (LOCATION: OP)                     AXIS

Whittaker, Mae

Wojcik, Stella***

Wolins, Bernice                                    LLOYDS I

Wooledge, Donna

Woolston, Sylvia****

Zajac, Robert                                      AXIS

Zgoda, Mary Jane

Zimmerman, Dorothy


Zmozynski, Irene                                   LLOYDS I

* Indicates purported class members of asserted class action entitled <u>Violati v. Absolut at Aurora Park</u>.

**    Indicates purported class members of asserted class action entitled <u>Damcott v. Absolut at Westfield</u>.

***    Indicates class members of certified class action entitled <u>Fierle/Passucci v. Absolut et al.</u>

****    Indicates purported class members of asserted class action entitled <u>Woolston v. Absolut at Houghton.</u>

**EXHIBIT B**

Insurer: LLOYDS I
Name: Underwriters at Lloyd's, London
Policy No.: B0868PUSHC1500076
Dates: 7/9/2015 – 7/9/2016
Attorney and Contact:        Jonathan D. Kramer, Esq.
                                      Fields Howell LLP
                                      1180 W. Peachtree Street, NW
                                      Suite 1600
                                      Atlanta, GA 30309
                                      D: 404-214-1274
                                      F: 404-214-1251

Insurer: AXIS
Name: AXIS Surplus Insurance Company
Policy No. (first policy): E3H795591/01/2016
Dates: 7/9/2016 – 7/9/2017
Policy No. (second policy): E3H795591/01/2017
Dates: 7/9/2017 – 7/9 2018
Attorney and Contact:        Gary Petropoulos, Esq.
                                        Catalano Gallardo & Petropoulos, LLP
                                      100 Jericho Quadrangle, Suite 326
                                      Jericho, New York 11753
                                      D: 516-931-1800
                                      F: 516-931-1033

**Exhibit 2**

Proposed Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-76260 (AST) |
| | ) | Case No. 19-76263 (AST) |
| In re: | ) | Case No. 19-76267 (AST) |
| | ) | Case No. 19-76268 (AST) |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-76269 (AST) |
| | ) | Case No. 19-76270 (AST) |
| Debtors.[1] | ) | Case No. 19-76271 (AST) |
| | ) | Case No. 19-76272 (AST) |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| Absolut Facilities Management, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Chapter 11 |
| v. | ) | |
| | ) | |
| Mark LaSurk as Administrator of the Estate of | ) | Adv. Pro. No. 8:19-AP-08155 |
| Rhonda LaSurk, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **ORDER**

Upon the motion, dated February 25, 2020 (the "Approval Motion") of the Debtors,

pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, seeking the entry of an

order approving the Agreement Adjourning the Motion to Extend the Stay and for Mediation of

---

[1] The debtors and debtors-in-possession (the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

Certain Claims against the Debtors dated February 19, 2020 (the "Agreement") among the Debtors, Mr. Sherman, the Insurers (as defined in the Agreement), and the Claimants (as defined in the Agreement); and there having been filed the affirmation dated February 25, 2020 (the "Affirmation") of William M. Hawkins in support of the Approval Motion; and there being no filed opposition to the relief requested; and a hearing on the Approval Motion having been held before the Court; and the Court having found that: (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, (ii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iv) notice of the Approval Motion was sufficient and no additional notice of a hearing on the Approval Motion is required under the circumstances, (v) the relief sought in the Approval Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest and is supported by good business reasons in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure, and (vi) the Agreement was negotiated at arms' length and in good faith; and the Court having reviewed the Approval Motion and the Affirmation and having determined that the legal and factual bases set forth in the Approval Motion establish just cause for the relief granted herein; now, therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Approval Motion is granted to the extent provided herein.

2.      Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Agreement and all of its terms and conditions are approved.

3.      The Debtors are authorized to engage in settlement discussions, mediation procedures and performance of all other provisions of the Agreement and take all actions reasonably necessary or appropriate to effectuate the terms in the Agreement.

4

4.      The hearing on the pending motion of the Debtors to enjoin and extend the automatic stay to Mr. Sherman in the LaSurk State Court Action (as defined in the Agreement) (the "Motion") has been adjourned to _____, and this Order shall not be deemed to have adjudicated nor precluded relief on the Motion.

5.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.