# EXHIBIT 2

**Plan Administrator Agreement**

# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement ("Agreement") is entered into as of this ___ day of May, 2020, by and among Absolut Facilities Management, LLC, Absolut Center for Nursing and Rehabilitation at Allegany, LLC, Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, Absolut Center for Nursing and Rehabilitation at Gasport, LLC, Absolut at Orchard Brooke, LLC, Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC, Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC, and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (together, the "Debtors"), the debtors-in-possession in the chapter 11 bankruptcy cases jointly administered under Case No. 19-76260 (AST) (the "Chapter 11 Cases"), on the one hand, and Ronald Winters of Gibbins Advisors, LLC ("Gibbins"), not in his individual capacity but solely as Plan Administrator appointed under the Plan (as defined below), on the other (in such capacity, the "Plan Administrator" and together with the Debtors, collectively, the "Parties").

## RECITALS

WHEREAS, on September 10, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court"), thereby commencing the Chapter 11 Cases;

WHEREAS, on March 24, 2020, the Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Committee") filed the *Official Committee of Unsecured Creditors' Third Amended Joint Chapter 11 Plan* [Docket No. 560] (as amended, modified, or supplemented, the "Plan") with the Court;

WHEREAS, on [May __], 2020, the Court entered an order confirming the Plan [Docket No. ___] (as amended, the "Confirmation Order"). Copies of the Plan and Confirmation Order are attached hereto as **Exhibits A** and **B**, respectively, and all capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan and Confirmation Order;

WHEREAS, the effective date of the Plan occurred on May __, 2020 (the "Plan Effective Date");

WHEREAS, the Plan and Confirmation Order provide for, among other things, the appointment of the Plan Administrator to administer the Plan and conduct the wind down of the Debtors' affairs in accordance with section 1123 of the Bankruptcy Code (the "Wind Down"); and

WHEREAS, the Plan Administrator has been appointed pursuant to the Plan and the Confirmation Order and this Agreement sets forth inter alia the scope of services to be provided by the Plan Administrator pursuant to the terms hereof and the Plan ("Services") and the basis of compensation for those Services,

NOW, THEREFORE, for and in consideration of the promises and mutual covenants herein contained, pursuant to the Plan, the Parties do hereby covenant and agree as follows:

1. **Appointment of Plan Administrator**

    (a)     Ronald Winters of Gibbins Advisors, LLC is hereby appointed to act as the Plan Administrator under the Plan for the purposes, and upon the terms and conditions, specified herein. The Plan Administrator shall be a fiduciary of each of the Debtors after the Effective Date. The Plan Administrator will not be deemed a successor-in-interest of the Estates for any purpose other than as specifically set forth in the Plan and this Agreement. The Plan Administrator hereby accepts his employment and appointment.

    (b)     From and after the Effective Date, and, except as set forth in Section 4.8 of the Plan, the Plan Administrator shall be the sole director, officer, manager or managing member, as applicable, of each of the Debtors, and each of the Debtors shall be managed and administered through the Plan Administrator, who shall have full authority to administer the provisions of the Plan, except as set forth in Section 4.8 of the Plan.

2. **Scope of Services**

    The Plan Administrator will provide the following services:

    (a)     **General Plan Administrator Functions**. The Plan Administrator shall devote time to the performance of services hereunder and under the Plan as he determines appropriate in his discretion.

    (b)     **Duties, Powers, and Rights**. From and after the Plan Effective Date, and subject to the provisions of the Irrevocable Proxy (defined below) and the Plan, including without limitation Sections 4.7, 4.8 and 4.9 of the Plan and any other oversight or consultation rights provided for in the Plan, the Plan Administrator shall have all duties, powers, and rights set forth herein and in the Plan, and shall have the power and authority to perform or delegate the performance of the following acts with regard to the Debtors, in addition to any powers granted by law or conferred by any other provisions of the Plan, Confirmation Order, and any other orders of the Court; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Plan Administrator to act as specifically authorized by any other provision of the Plan, the Confirmation Order, this Agreement, and/or any applicable law, and to act in such manner as the Plan Administrator may deem necessary or appropriate to take any act deemed appropriate by the Plan Administrator, including, without limitation, to discharge all obligations assumed by the Plan Administrator or provided in the Plan, Confirmation Order, or this Agreement and to conserve and protect the Debtors' assets or to confer on holders of Claims the benefits intended to be conferred upon them by the Plan:

    (i)     monetize or abandon all property vesting in the Debtors on the Plan Effective Date;

    (ii)    review, object to, and if appropriate, seek estimation of, Proofs of Claim (other than Tort Claims) filed against the Debtors;

    (iii)   compromise and settle Disputed Claims (other than Tort Claims) and Causes of Action, subject to Oversight Committee review and approval as set forth in the Plan and without supervision or approval by the Court and

(iv) make Distributions to holders of Allowed Claims as set forth in the Plan and determine the timing of such Distributions in accordance with the Plan and this Agreement;

(v) establish and manage the Reserves pursuant to the Plan;

(vi) support the Debtors' fulfillment of obligations under the Purchase Agreement;

(vii) oversee the collection of Healthcare Receivables;

(viii) take control of, preserve, and convert to cash any other assets to be administered by the Plan Administrator, subject to Oversight Committee review and approval as set forth in the Plan;

(ix) retain professionals including counsel, and specifically including Gibbins and Amini LLC, to assist in carrying out the powers and duties enumerated in the Plan and this Agreement (including, but not limited to, reasonable fees and expenses of counsel in reviewing this Agreement);

(x) pay expenses incurred in carrying out the powers and duties of the Plan Administrator, including professional fees incurred after the Plan Effective Date, subject to Oversight Committee review and approval as set forth in the Plan;

(xi) prepare and file post-confirmation reports for the Debtors, and pay any U.S. Trustee Fees due under 28 U.S.C. § 1930(a)(6);

(xii) purchase or continue insurance protecting the Debtors, the Plan Administrator and property of the applicable Estates;

(xiii) prepare and file applicable tax returns for the Debtors;

(xiv) seek entry of a final decree in any of the Debtors' Chapter 11 Cases at the appropriate time and in accordance with the Plan;

(xv) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization (as such term is described in Internal Revenue Code section 501(c)(3) (whose contributions are deductible under Internal Revenue Code section 170)) of the Plan Administrator's choice, any Estate assets that are of no material benefit, including distributable Cash under the Plan;

(xvi) if at any time the Plan Administrator determines, in reliance upon such professionals as the Plan Administrator may retain, that the expense of administering the Plan so as to make a final Distribution is likely to exceed the value of the remaining distributable Net Available Cash, the Plan Administrator may apply to the Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Cases, (ii) donate the balance to a charitable organization, and (iii) close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules;

(xvii) seek any relief from or resolution of any disputes concerning this Agreement, the Plan, Confirmation Order, or the Debtors' Estates by the Court or any other court with proper jurisdiction;

(xviii) appear and participate in any proceeding before the Court or any other court with proper jurisdiction with respect to any matter regarding or relating to this Agreement, the Plan, Confirmation Order, or the Debtors' Estates;

(xix) execute all documents appropriate to carry out the powers and duties enumerated in the Plan and this Agreement; and

(xx) take such other and further actions as the Plan Administrator deems necessary to effect the provisions of the Plan.

To the extent required by the Plan and as otherwise appropriate in the Plan Administrator's business judgment, the Plan Administrator will consult in good faith with the Debtors' Officers through the Sale Effective Date in connection with his performance of the foregoing activities.

(c) <u>Voting Proxy</u>. The Plan contemplates that Israel Sherman will execute and deliver an irrevocable proxy coupled with an interest (the "<u>Irrevocable Proxy</u>"), which interest the Parties acknowledge and agree the Plan Administrator holds in his capacity as Plan Administrator, a copy of which is a part of the Plan Supplement. For the avoidance of doubt, (i) the Plan Administrator shall have no liability to any party for any act of Israel Sherman in violation of the Irrevocable Proxy and (ii) any successor Plan Administrator shall automatically, with no further action or notice, be entitled to exercise all of the rights of the Plan Administrator under the Irrevocable Proxy. Following the Plan Effective Date, AFM shall not engage in any business activities or take any actions, except those necessary to effectuate the Plan, this Agreement, the Wind Down, or the Purchase Agreement.

(d) <u>Privileges</u>. On the Plan Effective Date and subject to the terms of the Plan, all of the Debtors' privileges, including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections relating to the Causes of Action shall be vested in the Debtors without waiver, limitation or release on the Plan Effective Date.

(e) <u>No Implied Duties or Covenants</u>. The Plan Administrator shall have no duty or obligations hereunder other than to take such specific actions as are expressly required of it from time to time under the provisions of this Agreement and the Plan, and the Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be

authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, breach of fiduciary duty, gross negligence or willful misconduct.

(f) No Other Duties. Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement or under the Confirmation Order or Plan, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to his employment or position as such.

3. **Preservation of Rights; Causes of Action; Standing**

(a) The Plan Administrator shall retain any and all rights of, and on behalf of, the Debtors and the Estates not released pursuant to the terms of the Plan, to commence and pursue any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, regardless of whether or not such rights are specifically enumerated in the Plan, Disclosure Statement, Plan Supplement, or elsewhere, and all such rights shall not be deemed modified, waived, released in any manner (except to the extent modified, waived or released pursuant to the Plan). Any and all Causes of Action not released pursuant to the Plan, including, without limitation, setoff, offset and recoupment rights not released pursuant to the Plan, may, but need not, be pursued by the Plan Administrator after the Plan Effective Date, to the extent warranted. For the avoidance of doubt, nothing in this paragraph 3(a) is intended to resuscitate any claim, Cause of action, right of offset, setoff or recoupment or any other right that is released or otherwise expressly modified or waived pursuant to the Plan.

(b) Subject to the other terms and provisions of the Plan, the Plan Administrator shall be granted standing, authority, power and right to assert, prosecute and/or settle the Causes of Action and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based upon its powers as a bankruptcy appointed representative of the Debtors' Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators or similar officials. The Plan Administrator shall also have standing in the Chapter 11 Cases in all respects, including without limitation to seek enforcement of this Agreement and to resolve any dispute or disagreement between the Plan Administrator and the Responsible Officer (as defined the Plan).

(c) The Debtors and the Plan Administrator do not intend, and it should not be assumed (nor shall it be deemed) that because any existing or potential Causes of Action, including, without limitation, setoff, offset and recoupment rights, have not yet been pursued by the Debtors or are not set forth in the Plan, in the Disclosure Statement, or otherwise, that any and all Causes of Action, including, without limitation, setoff, offset and recoupment rights, has been waived or expunged; provided, that nothing in this paragraph 3(c) is intended to resuscitate any claim, Cause of action, right of offset, setoff or recoupment or any other right that is released or otherwise expressly modified or waived pursuant to the Plan.

4. **Establishment and Maintenance of Accounts and Reserves**

(a) Initial Establishment of Accounts and Reserves. On or around the Plan Effective Date, the Debtors or the Plan Administrator, as applicable shall establish accounts

5

designed as the "Disputed Claims Reserve" and the "Wind Down Expense Reserve", in each case in accordance with Section 5.4 of the Plan. The Wind Down Expense Reserve will be immediately funded with $250,000 from the collection of Healthcare Receivables as set forth in the Wind Down Budget, which amount may be augmented in accordance with the terms of the Plan.

(b) <u>Subsequent Establishment of Accounts and Reserves</u>. After the Plan Effective Date, and in consultation with the Responsible Officer, the Plan Administrator may, but is not required to, establish and maintain such additional accounts and reserves as the Plan Administrator deems necessary or desirable to carry out the provisions of the Plan, Confirmation Order, and this Agreement; <u>provided</u>, <u>however</u>, that, unless otherwise expressly set forth in the Plan, Confirmation Order, or this Agreement, the Plan Administrator shall not be obligated to physically segregate and maintain separate accounts for reserves, which reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate. Unless otherwise provided in the Plan or Confirmation Order, no reserves shall be required to be established or maintained with respect to Claims filed after the applicable Bar Date.

5. **Compensation and Staffing**

The Plan Administrator shall be entitled to reasonable compensation at his current standard hourly rate, subject to periodic increase in the ordinary course, and reimbursement of actual, necessary costs and expenses, subject to the line item set aside for the Plan Administrator's professional fees in the Wind Down Budget, as may be modified from time to time in accordance with the Plan. Hourly rates for the Plan Administrator and Gibbins employees expected to be staffed on this engagement are as follows:

| Gibbins Advisors Professional[†] | Hourly Rate Range | | |
|---|---|---|---|
| Principal/Managing Director | $575 | to | $675 |
| Senior Director / Director | $375 | to | $475 |
| Senior Associate | $275 | to | $350 |
| Associate | $175 | to | $275 |
| Analyst | $175 | | |

† And contractors so-designated by Gibbins Advisors.

The Plan Administrator will bill for fees and expenses no less frequently than monthly by submitting a fee statement, describing time detail and expenses incurred, to all members of the Oversight Committee. In accordance with the Plan, the Oversight Committee shall have the right, within ten (10) days from the delivery of a fee statement by the Plan Administrator, to object to the fees or expenses requested thereby in whole or in part. The Plan Administrator may submit to the Court for resolution any objection that remains unresolved fifteen (15) days after it has been made. The uncontested portion of each fee statement shall be paid within twenty (20) days after

its delivery to the Oversight Committee, provided the amount requested has been budgeted for in the Wind Down Budget.

6. **Retention of Professionals**

The Plan Administrator shall be entitled to employ professionals to assist him in fulfilling his duties under the Plan and this Agreement (including, but not limited to, review of this Agreement and related matters as reasonably necessary). The Plan Administrator shall be entitled to retain professionals in his or her sole discretion, including Gibbins and any professionals employed by the Committee in the Debtors' Chapter 11 Cases (for the avoidance of doubt, including Amini LLC). Other than Gibbins, the Plan Administrator shall be expressly prohibited from retaining any professional employed by Arba Group (or any of its affiliates) in the Debtors' Chapter 11 Cases. The provision of services by a professional to the Committee or, in the case of Gibbins, the Arba Group, in such cases shall not disqualify such professional from employment by the Plan Administrator and the Parties expressly waive the right to assert any conflict of interest with respect to such prior representation. Gibbins's engagement with the Arba Group (the "Arba Engagement") will be terminated as of the Plan Effective Date in accordance with the terms thereof. The Parties acknowledge and agree that, notwithstanding termination of the Arba Engagement, Gibbins, and for the avoidance of doubt the Plan Administrator, are required to (i) continue to maintain all of Gibbins's confidentiality obligations under the Arba Engagement, (ii) not share with any party, including without limitation the Debtors, the Responsible Officer (as defined in the Plan), and the Oversight Committee, any privileged and/or confidential reports, work product, or communications prepared by Gibbins or counsel to the Arba Group in the course of the Arba Engagement, and (iii) continue to abide by any other terms of the Arba Engagement that by its terms survive termination thereof, except to the extent such terms require the sharing of privileged and/or confidential information, reports, work product, or communications prepared of the Debtors with Arba Group or any of its affiliates, officers, directors, employees, related parties or advisors (other than Gibbins); provided, that nothing herein shall prohibit the Plan Administrator from sharing such information, reports, work product, or communications with the designee of the Arba Group on the Oversight Committee in its capacity as a member of the Oversight Committee to the extent necessary for such designee to carry out his or her duties as a member of the Oversight Committee as contemplated by the Plan.

Persons employed by the Plan Administrator including his counsel shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable expenses, subject to the terms of the Plan. Fee statements of professionals employed by the Plan Administrator shall be subject to Oversight Committee review and approval pursuant to the Plan.

7. **Service of Plan Administrator**

The Plan Administrator shall serve until termination of this Agreement, the removal of the Plan Administrator for Cause, or the death or incapacity of the Plan Administrator; provided, however, that if the Plan Administrator resigns he shall continue to serve until a new Plan Administrator begins to serve. "Cause" as used herein and as defined in the Plan means gross negligence, breach of fiduciary duty, fraud, or willful misconduct. In the event of the resignation or removal, death, or incapacity of the Plan Administrator, the Oversight Committee shall designate another person to become Plan Administrator and such person will become the successor

Plan Administrator and, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan Administrator.

8. **Termination**

This Agreement shall terminate with respect to a Debtor, when the Court enters a final decree under section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Debtor's Chapter 11 Case.

9. **No Liability**

The Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors, Israel Sherman, the Responsible Officer (as defined in the Plan), or holders of Claims against or Equity Interests in the Debtors other than for acts or omissions that a court of competent jurisdiction determines by Final Order constituted gross negligence, breach of fiduciary duty, fraud, or willful misconduct on the part of the Plan Administrator.

10. **Indemnification**

The Debtors jointly indemnify the Plan Administrator, Gibbins, and its members, managers, officers, employees, agents, and affiliates (together, "Indemnified Persons") from and against any and all pending or threatened claims, demands, suits, investigations, proceedings, judgments, awards, liabilities, losses, damages, fees and expenses paid or incurred by any Indemnified Person in connection with, arising out of or related to (whether from direct claims or third party claims) the engagement, this Agreement, or the Irrevocable Proxy, including any Indemnified Person's reasonable counsel fees and expenses. In accordance with Section 4.8(e) of the Plan, until all of the Debtors have been dissolved the Plan Administrator (including for the avoidance of doubt, in his capacity as holder of the Irrevocable Proxy) shall be named as an additional insured under the Debtors' directors and officers liability insurance policies, which shall have policy limits and coverage not less than that maintained by the Debtors on the Petition Date. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Debtors' charter, bylaws, or other organizational documents or policies shall affect the Plan Administrator's rights hereunder. The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction determines by Final Order that such claims resulted directly from gross negligence, breach of fiduciary duty, willful misconduct, or fraudulent acts of the Plan Administrator or Gibbins.

11. **Reliance by Plan Administrator**

The Plan Administrator may rely, and shall be fully protected personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Plan Administrator has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy himself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of the Plan

Administrator's fraud, willful misconduct, gross negligence, breach of fiduciary duty, willful disregard of the Plan Administrator's duties or material breach of this Agreement, the Plan Administrator may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon.

**12.     Action Upon Instructions**

If in performing the Plan Administrator's duties under this Agreement, the Plan Administrator is required to decide between alternative courses of action, or the Plan Administrator is unsure of the application of any provision of this Agreement or the Plan, then the Plan Administrator may promptly apply to the Court seeking clarification of this Agreement and his duties under the Plan.

**13.     Other Matters**

(a)     <u>Access to Information</u>. In connection with this engagement, upon reasonable request, the Plan Administrator shall have complete and full access the Debtors' books and records that the Plan Administrator deems appropriate. Additionally, the Plan Administrator will have reasonable access to the Officers and Billit employees (collectively, "<u>Representatives</u>") necessary to perform the services as outlined in this Agreement and the Plan. It is understood that the Plan Administrator is relying solely upon the information supplied by the Debtors and the Representatives without assuming any responsibility for independent investigation or verification thereof. All privileged and/or confidential information concerning the Debtors that is given to the Plan Administrator, including but not limited to information protected from disclosure under HIPAA, will be used solely in the course of performance of his duties hereunder. Except as required by law, such privileged and/or confidential information will not be disclosed to a third party without the Responsible Officer's consent, or as permitted under HIPAA. For the avoidance of doubt, the Plan Administrator, acting as director, officer, manager or managing member, as applicable, of each of the Debtors, shall not be deemed to be a "business associate" under HIPAA and will not be required to execute a business associate agreement or similar agreement.

(b)     <u>No Bond</u>. The Plan Administrator shall not be required to post a bond.

(c)     <u>Governing Law</u>. This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York, and the Court shall have exclusive jurisdiction in relation to any claim arising out of this Agreement.

(d)     <u>Dispute Resolution</u>. Without permission of the Court, no judicial, administrative, arbitral or other action or proceeding shall be commenced against the Plan Administrator, with respect to his status, duties, powers, acts or omissions as Plan Administrator in any forum other than the Court.

(e)     <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction over the Estates to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

(f)     <u>Conflict with the Plan or Confirmation Order</u>. The principal purpose of this Agreement is to aid in the implementation of the Plan and Confirmation Order and, therefore,  this

Agreement incorporates and is subject to the provisions of the Plan and Confirmation Order. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and Confirmation Order. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or Confirmation Order, the provisions of the Plan and Confirmation Order shall control.

(g) <u>Amendments</u>. Except as otherwise set forth herein, any provisions of this Agreement may be amended, modified, terminated, revoked, or altered only in writing by the Plan Administrator and pursuant to an Order of the Court.

(h) <u>Severability</u>. Should any provision in this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Agreement.

(i) <u>Assignment</u>. No party hereto shall have the right to assign its rights hereunder, in whole or in part without the prior written consent of the other party, other than to such party's affiliates or subsidiaries which shall not require such consent.

(j) <u>Successors</u>. This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and permitted assigns.

(k) <u>Notices</u>. Any notice required or permitted to be provided under this Agreement, unless otherwise provided herein, shall be in writing and served by either (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) overnight mail, postage prepaid, and addressed as follows:

If to the Plan Administrator:

 Gibbins Advisors, LLC
 1900 Church Street, Suite 300
 Nashville, Tennessee 37203
 Attn: Ronald Winters

 - and -

 Amini LLC
 131 West 35th Street, 12th Floor
 New York, NY 10001
 Attn: Jeffrey Chubak

If to the Debtors:

 Absolut Facilities Management, LLC
 111 Marcus Avenue, Suite 107
 Lake Success, New York 11042
 Attn: Israel Sherman

- and -

WKL Advisors, LLC
400 Seasage Drive, Apt. 602
Delray Beach, Florida 33483
Attn: William K. Lenhart

(l) <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties hereto regarding the subject matter hereof and supersedes any and all prior agreements (whether written or oral) between the parties regarding the subject matter hereof. This Agreement may be executed in any number of counterparts each of which shall be an original, but all of which together shall constitute one and the same instrument.

(m) <u>Further Assurances</u>. Each Party hereto (and their respective successors and assigns) shall, upon the Plan Administrator's reasonable request, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such further instruments, and do or cause to be done, such further acts, as may be necessary to carry out the purposes of this Agreement and to vest in the Plan Administrator the powers and duties contemplated hereunder.

[Signature Page to Follow]

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Plan Administrator Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

| PLAN ADMINISTRATOR | ABSOLUT FACILITIES MANAGEMENT, LLC, |
|---|---|
| _____ <br> Ronald Winters <br> Manager, Gibbins Advisors LLC | ABSOLUT CENTER FOR NURSING AND REHABILITATION AT ALLEGANY, LLC |
| | ABSOLUT CENTER FOR NURSING AND REHABILITATION AT AURORA PARK, LLC |
| | ABSOLUT CENTER FOR NURSING AND REHABILITATION AT GASPORT, LLC |
| | ABSOLUT AT ORCHARD BROOKE, LLC |
| | ABSOLUT CENTER FOR NURSING AND REHABILITATION AT ORCHARD PARK, LLC |
| | ABSOLUT CENTER FOR NURSING AND REHABILITATION AT THREE RIVERS, LLC |
| | ABSOLUT CENTER FOR NURSING AND REHABILITATION AT WESTFIELD, LLC |
| | _____ <br> Israel Sherman |