Matteo Percontino, Esq.
**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
(212) 752-8000  Tel.
(201) 678-6328  Fax
mpercontino@coleschotz.com

*Counsel for Hewlett-Packard Financial Services Company*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Absolut Facilities Management, LLC, *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-76260 (AST)<br>Case No. 19-76263 (AST)<br>Case No. 19-76267 (AST)<br>Case No. 19-76268 (AST)<br>Case No. 19-76269 (AST)<br>Case No. 19-76270 (AST)<br>Case No. 19-76271 (AST)<br>Case No. 19-76272 (AST)<br><br>(Jointly Administered) |

**MOTION OF HEWLETT-PACKARD FINANCIAL
SERVICES COMPANY FOR ALLOWANCE AND PAYMENT OF
<u>ADMINISTRATIVE EXPENSE CLAIM AND RESERVATION OF RIGHTS</u>**

Hewlett-Packard Financial Services Company ("**HPFS**") files this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "**Proposed Order**"): (i) allowing HPFS' administrative expense claim, pursuant to 11 U.S.C. § 503(b)(1)(A), for services provided to or for the benefit of the Debtors on or after the Petition

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

Date (defined herein); (ii) directing payment of HPFS' administrative expense claim; and (iii) reserving HPFS' rights with respect to the Leases (defined below), including to assert claims relating to administrative expenses that continue to be incurred while the Debtors remain in possession of HPFS' equipment. In support of this Motion HPFS relies upon and incorporates by reference the *Declaration of Glenys Calzadilla in Support of Motion of Hewlett-Packard Financial Services Company for Allowance and Payment of Administrative Expense Claim and Reservation of Rights* (the "**Calzadilla Declaration**"), attached hereto as **Exhibit B**. In further support of the Motion, HPFS respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Request pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. The statutory predicates for the relief requested herein are in sections 105 and 503(a) and (b), and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**").

## II. BACKGROUND

3. On September 10, 2019 (the "**Petition Date**"), Absolut Facilities Management, LLC and several of its affiliates (collectively, the "**Debtors**") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors cases are being jointly administered.

**A.     Prepetition Contractual Relationship**

5. HPFS is a party to three (3) business lease agreements with Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC ("**Absolut Center**") set forth below:

      (a)    That certain Business Lease with Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, dated April 29, 2016, including specific

      Schedules and Annexes which include various computer equipment units (the "**First Business Lease**");

(b) That certain Business Lease with Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, dated May 23, 2016, including specific Schedules and Annexes which include various computer equipment units (the "**Second Business Lease**"); and

(c) That certain Business Lease with Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, dated October 29, 2016, including specific Schedules and Annexes which include various computer equipment units (the "**Third Business Lease**" and collectively with the First Business Lease and Second Business Lease hereafter referred to as the "**Leases**").[2]

*See* Calzadilla Declaration at ¶ 4.

6. Each of the Leases provides for a sixty (60) month payment term whereby the Debtors are required to remit monthly payments to HPFS for the following amounts: (i) for the First Business Lease, $4,298.09 is due each month; (ii) for the Second Business Lease, $1,480.45 is due each month; and (iii) for the Third Business Lease, $4,228.40 is due each month. Failure to timely remit the monthly payments due results in a recurring late charge that is assessed on a percentage basis. *See Id.* at ¶ 5.

**B. The Debtors' Bankruptcy Cases**

7. From and after the Petition Date, the Debtors continued to possess, control and upon information and belief, utilize HPFS' equipment. *See Id.* at ¶ 6.

8. HPFS has attempted to work with the Debtors in determining the intention with respect to HPFS' equipment associated with the Leases. In particular, the Debtors notified HPFS that certain equipment had been distributed between and among facilities of certain Debtor entities and non-debtor entities. The Debtors agreed to facilitate a transfer and assignment of the equipment alleged to be located at non-debtor entity facilities to such non-debtor entities but failed

---

[2] True copies of the Leases are attached as <u>Exhibit</u> 1 to the Calzadilla Declaration.

to do so. Therefore, the Debtors still owned and controlled their interests under the Leases for all of HPFS's equipment during their chapter 11 cases. *See Id.* at ¶ 7.

9. On February 10, 2020, the Court entered an Order authorizing the sale of substantially all the Debtors' assets (the "**Sale**") [Doc. No. 446]. The Leases were not assumed as part of the Sale and thus the Debtors retained their interests in the Leases following the Sale.

10. On March 24, 2020, the official committee of unsecured creditors (the "**Committee**") filed the Second Amended Disclosure Statement to Accompany Official Committee of Unsecured Creditors' Second Amended Joint Chapter 11 Plan (the "**Disclosure Statement**") [Doc. No. 517]. Section C. of the Disclosure Statement provides that the transactions contemplated by the Sale cannot be implemented until among other things the New York State Department of Health has granted the purchaser's applications for Certificates of Need for the subject facilities, and therefore the purchaser and Debtors agreed prior to a closing of the Sale to enter into an Administrative Services and Consulting Agreement dated as of January 30, 2020, which interim agreement became effective March 1, 2020. Section C. of the Disclosure Statement further provides that upon the effective date of the proposed plan of reorganization the Debtors will remain in existence and shall conduct the business of ensuring that the sale is consummated, including performing its operational and other obligations under the agreement with the purchaser.

11. On May 1, 2020, the Committee filed the Third Amended Joint Chapter 11 Plan in the Debtors' chapter 11 cases (the "**Plan**") [Doc. No. 560]. Article VII of The Plan provides that all executory contracts and leases not assumed as part of the Debtors' Sale are rejected. Article IV, Section 4.5 of the Plan further appointed Ronald Winters of Gibbins Advisors, LLC as plan administrator (the "**Plan Administrator**").

12. Article II, Section 2.1(a) of the Plan provides that "except to the extent that a holder of an Allowed General Administrative Expense Claim agrees to less favorable treatment…each such holder shall receive on account of such Claim cash in an amount equal to the Allowed amount of such Claim, on the later of the Plan Effective Date and the date on which such General Administrative Expense Claim becomes an Allowed General Administrative Expense Claim…" Article II, Section 2.1(a) of the Plan further provides that each holder of a General Administrative Expense Claim must file an application for allowance of such claim within thirty (30) days following the effective date of the Plan.

13. On May 18, 2020 the Court entered an Order confirming the Debtors' third amended chapter 11 plan (the "**Confirmation Order**") [Doc. No. 583].

14. The effective date of the Plan was May 20, 2020. *See* Doc. No. 595

15. On May 13, 2020, HPFS contacted the purchaser's counsel seeking to coordinate the retrieval of HPFS' equipment under the Leases. Counsel responded on the same date indicating that the closing for the Sale had not yet occurred and that HPFS could not retrieve its equipment from the Debtors' facilities for "weeks or months" due to restrictions in place as a result of COVID-19. *See Id.* at ¶ 9.

16. To date, HPFS has not received any postpetition payments under the terms of the Leases for the Debtors' use of its equipment. *See Id.* at ¶ 10. As of May 20, 2020, the date the Leases were rejected under the Plan, the total postpetition amounts due to HPFS under the Leases total $79,822.04 representing the monthly lease amounts and assessed late fees, of which $30,288.53 is owed under the First Business Lease, $12,602.92 is owed under the Second Business Lease, and $36,930.59 is owed under the Third Business Lease. *See Id.* at ¶ 10 and Exhibit 2 attached thereto.

17. Since the Sale has not yet closed, the Debtors continue to possess and control the HPFS equipment but have not remained current on their obligations thereunder.

18. Additionally, notwithstanding the rejection of the Leases under the Plan, the Debtors and purchaser have not allowed HPFS to retrieve its equipment. Therefore, since the Debtors have not completed the Sale and continue to possess, control, and/or use HPFS' equipment, albeit under a contractual relationship with the purchaser, HPFS' administrative expense claim continues to accrue.

19. The deadline established by the Plan to assert administrative expense claims is June 19, 2020. HPFS files this Motion, but reserves all of its rights to supplement this administrative expense claim request or file an additional administrative expense claim request for any reason, including to assert amounts that become due and owing to HPFS from and after the date hereof.

### III. BASES FOR ALLOWING OF ADMINISTRATIVE EXPENSE CLAIM

20. Section 503(b) of the Bankruptcy Code provides, in relevant part, that:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including— (1)(A) the actual, necessary costs and expenses of preserving the estate . . .

11 U.S.C. § 503(b)(1)(A).

21. The test to determine whether an applicant is entitled to payment of an administrative expense is whether the efforts of the applicant resulted in actual benefit to a debtor's estate. *See*, *e.g.*, *In re CIS Corp.*, 142 B.R. 640, 642 (S.D.N.Y. 1992) (stating that "[a]lthough [Section 503(b)(1)(A) does not fully define 'necessary expenses,' the phrase 'including' is not limiting" and citing 3 Collier on Bankruptcy ¶ 503.04[1] (15th ed. 1989) for the proposition that "administrative expenses can also include 'costs of operating a business, for storage of property, for rent, for taxes and other costs incidental to protection and conservation'"); *In re John's Meat*

6

*Emporium, Inc.*, 176 B.R. 700, 707 (Bankr. E.D.N.Y. 1995) ("to obtain an administrative expense, the creditor must first show 'either that the debtor-in-possession ... incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the debtor-in-possession. Second, the creditor must show that the transaction resulted in a direct benefit to the debtor-in-possession…'").

22. It is undisputed that the Debtors were in possession, and it should be presumed that they used and controlled HPFS' equipment from the time that the Debtors filed their chapter 11 cases until the Leases were rejected. *See In re John's Meat Emporium, Inc.* 176 B.R. at 707. It is inequitable and "frustrates the policy of the Bankruptcy Code which promotes doing business with a Chapter 11 debtor" to allow the Debtors to use HPFS' equipment without making a single payment. *Id.* at 704.

23. In addition to the foregoing, the Bankruptcy Code requires debtors to remain current in their obligations under non-real property leases, such as the Leases in question, pursuant to section 365(d)(5) of the Bankruptcy Code. The Debtors have failed to meet their obligations under the Bankruptcy Code by failing to timely pay the amounts due and owing under the Leases.

24. The Debtors have failed to timely pay amounts due for equipment all of which is still in their possession, including the equipment set forth in the annexes to the Leases.

25. The Debtors and their estates accordingly directly benefited by HPFS' continued provision of equipment. Therefore, HPFS is entitled to an administrative expense claim in the amount of $79,822.04, pursuant to section 503(b) of the Bankruptcy Code.

## IV. RESERVATION OF RIGHTS

26. HPFS reserves the right to supplement, amend, or otherwise modify this Motion and to, among other things, claim additional amounts arising from or related to the Leases as administrative expenses. Such reservation of rights is necessary because the Debtors continue in

7

possession of HPFS' equipment under the Leases, which Leases have not been assumed by the purchaser of the Debtors' assets, and which equipment HFPS has not been allowed to retrieve.

27. All HPFS' rights and remedies under the Leases are reserved.

## V. CONCLUSION

**WHEREFORE**, HPFS respectfully requests that the Court enter an order (i) granting HPFS an allowed administrative expense claim in the amount of $79,822.04, pursuant to section 503 of the Bankruptcy Code, (ii) directing the Debtors and/or Plan Administrator to make payment of such allowed administrative expense claim; (iii) preserving all of HPFS' rights to file subsequent administrative expense claims given the Debtors' continued possession of HPFS' equipment; and (iv) providing for such other and further relief as it deems just and proper.

DATED: New York, New York
           June 19, 2020

Respectfully submitted,

**COLE SCHOTZ P.C.**
*Attorneys for Hewlett-Packard Financial Services Company*

By: */s/ Matteo Percontino*
    Matteo Percontino, Esq.
    1325 Avenue of the Americas, 19th Floor
    New York, NY 10019
    E-mail: mpercontino@coleschotz.com
    Tel. (212) 752-8000
    Fax. (201) 678-6328

8
76009/0149-20657206v3