**Hearing Date: August 23, 2023 at 11:00 a.m. (ET)**
**Objection Deadline: August 16, 2023 at 5:00 p.m. (ET)**

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, NY 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Attorneys for the Movants*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ABSOLUT FACILITIES MANAGEMENT, LLC, et al.[1] | : | Case No. 19-76260 (AST) |
| | : | (Jointly Administered) |
| Debtor. | : | |

**MOTION PURSUANT TO 11 U.S.C. §§ 105(A), 524, AND 1141, RULES 3020(D), 9014, AND 9020 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, (I) ENFORCING THE DISCHARGE AND PERMANENT INJUNCTION CONTAINED IN THE DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN AND THE ORDER CONFIRMING THIRD AMENDED JOINT CHAPTER 11 PLAN AND APPROVING DISCLOSURE STATEMENT BY (A) DIRECTING STATE COURT PLAINTIFFS TO CEASE AND DESIST FROM FURTHER PROSECUTING THE STATE COURT ACTIONS, AND (B) DIRECTING STATE COURT PLAINTIFFS TO DISMISS THE STATE COURT ACTIONS, (II) DECLARING BROWN CHIARI LLP AND STATE COURT PLAINTIFFS TO BE IN CIVIL CONTEMPT; AND (III) IMPOSING SANCTIONS ON BROWN CHIARI LLP AND STATE COURT PLAINTIFFS BY AWARDING MOVANTS' THEIR REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN CONNECTION WITH MOTION AND STATE COURT ACTIONS**

TO THE HONORABLE ALAN S. TRUST,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

[1] The Debtors are: Absolut Facilities Management, LLC; Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; Absolut at Orchard Brooke, LLC; Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC; and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (collectively, the "Debtors")

RCA Healthcare Management, LLC ("RCA Healthcare Management"), RCA Servicer at Aurora Park, LLC ("RCA Servicer"), Edward Farbenblum, Michael Farbenblum, Menachem Tauber, Yehuda B. Sherman and Yehudah Newman (collectively, the "Movants"), by their undersigned attorneys, as and for their motion seeking entry of an order pursuant to U.S.C. §§ 105(A), 524, and 1141, Rules 3020(d), 9014, and 9020 of the Federal Rules of Bankruptcy Procedure, (i) enforcing the discharge and permanent injunction contained in the Debtors' Third Amended Joint Chapter 11 Plan [ECF No. 560] (the "Plan") and the Order Confirming Third Amended Joint Chapter 11 Plan and Approving Disclosure Statement [ECF No. 583] (the "Confirmation Order"), by directing State Court Plaintiffs (defined below) to dismiss the State Court Actions (defined below), (ii) finding Brown Chiari LLP ("Brown Chiari") and State Court Plaintiffs to be in civil contempt; and (iii) imposing sanctions on Brown Chiari and State Court Plaintiffs by awarding Movants' their reasonable attorneys' fees and costs incurred in connection with the Motion and the State Court Actions (the "Motion"), respectfully sets forth as follows:

## PRELIMINARY STATEMENT

By this Motion, Movants seek entry of an order enforcing the terms of the discharge and injunction provisions contained in the Plan and Confirmation Order, which, among other things, enjoin all persons who have held, currently hold, or may hold Claims (as defined in the Plan) against the Debtors or their Estates that arose prior to the Plan Effective Date from commencing or continuing in any manner any action or other proceeding of any kind against or with respect to any Debtor or any additional insured under the Debtors general liability insurance policies.

In the State Court Actions (defined below), the State Court Plaintiffs seek to recover derivatively against the Movants based upon alleged wrongful deaths that occurred after the commencement of these cases but prior to the Effective Date. The State Court Plaintiffs seek to recover against the Movants as alleged control persons because of the relationship that existed between the Debtors and Movants under the ASA. To be clear, Movants have no privity with the State Court Plaintiffs or the decedents they represent and are named only because RCA Servicer provided certain consulting and administrative services to the Debtors pursuant to the ASA. Each of the causes of action asserted against the Debtors, and derivatively against the various other defendants, is barred by Section 8.1 (Discharge) and 8.2 (Injunction) of the Plan and is barred against the remainder of the Movants under Section 8.2 (Injunction) of the Plan. Notably, each of the non-debtor defendants named in the State Court Actions is an additional insured under the insurance policies that provide the Debtors with general liability insurance. As such, pursuant to Section 8.2 of the Plan, the State Court Plaintiffs were enjoined from commencing the State Court Actions and are enjoined from continuing same.

Despite Movants' written demand that the State Court Actions be dismissed as against all of the named defendants because the State Court Actions violate the terms of the Plan and Confirmation Order, the State Court Plaintiffs have refused to do so.

Movants hereby request that the Court enter an order (i) enforcing the terms of the Plan and Confirmation Order and enjoining the State Court Actions, by (a) directing State Court Plaintiffs (as defined below) to cease and desist from further prosecuting the State Court Actions, and (b) directing State Court Plaintiffs to dismiss the State Court Actions, (ii) finding Brown Chiari and State Court Plaintiffs to be in civil contempt; and (iii) imposing sanctions on

Brown Chiari and State Court Plaintiffs by awarding Movants' their reasonable attorneys' fees and costs incurred in connection with the Motion and the State Court Actions.

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 as a related matter. Furthermore, the Court expressly retained jurisdiction in the Confirmation Order to among other things:

> issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Court;
>
> to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, or any transactions or payments contemplated under this Plan or the Confirmation Order, any agreement, instrument, or other document governing or relating to any of the foregoing;
>
> to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, the Responsible Officer Agreement, or the Plan Administrator Agreement, including any exculpation or injunction provisions set forth in this Plan, or to maintain the integrity of this Plan following consummation.

See Confirmation Order, ¶ 12.

## BACKGROUND

2. The Debtors commenced these Chapter 11 Cases on September 10, 2019. The Chapter 11 Cases are being jointly administered under AFM's Case No., 19-76260 (AST).

3. The Debtors operate six skilled nursing facilities and one assisted living facility in New York State. On February 10, 2020, the Court entered a Sale Order approving the sale to RCA Healthcare Management and certain affiliates (the "Purchaser") of substantially all of the Selling Debtors' assets, excluding principally their receivables, cash and causes of action. The actual sale terms are set forth in the Asset Purchase Agreement, dated as of January 30, 2020,

among the Debtors and the Purchaser (the "Purchase Agreement"). However, because the transactions contemplated by the Purchase Agreement could not be implemented until, among other things, the New York State Department of Health ("DOH") has granted the Purchaser's applications for Certificates of Need ("CON") for the subject facilities, the parties agreed that prior to the closing of the Purchase Agreement ("Sale Effective Date"), the Purchaser would provide administrative and consulting services that were allowed under applicable law, pursuant to terms set forth in an Administrative Services and Consulting Agreement, dated as of January 30, 2020, among the Debtors and Purchaser ("ASA"), which interim agreement became effective March 1, 2020. A draft of the ASA was filed on the Court's docket at ECF Docket No. 432. Movants have no role with the Debtors other than as set forth in the ASA. See Farbenblum Affidavit, ¶ 9.

4. On March 16, 2020, the Official Committee of Unsecured Creditors filed the Official Committee of Unsecured Creditors Joint Chapter 11 Plan [ECF Docket No. 491], which was subsequently amended on March 23, 2020 [ECF Docket No. 512], March 24, 2020 [ECF Docket No. 516] and May 1, 2020 [ECF Docket No. 560].

5. On March 30, 2020, the Court entered the Amended Order (i) Approving Solicitation and Voting Procedures (ii) Approving Forms of Notices and Ballots, (iii) Scheduling Combined Hearing To Consider Disclosure Statement Approval and Plan Confirmation, and (iv) Granting Related Relief [ECF Docket No. 522] (the "Procedures Order"), wherein in the Court directed that:

> The Debtors shall give notice to Patients of the contents of the Combined Hearing Notice by posting a copy of this Order and the following notice in the reception area located in the main entrance of each of the Debtors' facilities and publishing a conformed copy in the Buffalo News and Orchard Park Sun no later than seven (7) days after entry of this Order. The Court finds the foregoing methods reasonably calculated under the

> circumstances to apprise Patients of the contents of and dates and deadlines in the Combined Hearing Notice, and determines such methods to be effective, adequate, and sufficient to notify Patients of the foregoing.

See Procedures Order, ¶ 10.

6. On or before April 1, 2020, the Debtors posted a notice in each of its facilities as required by the Procedures Order, which stated as follows in each of its facilities:

> Debtors Absolut Facilities Management, LLC; Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; Absolut at Orchard Brooke, LLC; Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC; and Absolut Center for Nursing and Rehabilitation at Westfield, LLC have filed a plan of reorganization with the United States Bankruptcy Court for the Eastern District of New York. To obtain a ballot to vote on that plan of reorganization, you may contact Prime Clerk LLC by e-mail to absolutballots@primeclerk.com, and submit such ballot through a customized online Balloting portal accessible via the Debtors' case website https://cases.primeclerk.com/absolutcare.

*See* Declaration of Lorry Dotter Regarding Debtors' Compliance with Solicitation Order [ECF Docket No. 524].

7. On April 1, 2020, a copy of the Notice of Combined Hearing to Consider Chapter 11 Plan Confirmation and Disclosure Statement Approval, and Associated Deadlines (the "Notice of Combined Hearing") was published in The Buffalo News. See Affidavit of Publication [ECF Docket No. 531].

8. On April 9, 2020, a copy of the Notice of Combined Hearing was published in The Orchard Park Sun. See Affidavit of Publication [ECF Docket No. 536].

9. On May 18, 2020, the Court entered the Confirmation Order. On May 20, 2020 (the "Plan Effective Date"), the Debtors filed Notice of Effective Date of the Plan [ECF Docket No. 595] ("Notice of Effective Date").

10. Upon the Plan Effective Date, the Debtors remained in existence and continued to operate their businesses. Ronald Winters of Gibbins Advisors, LLC was appointed Plan Administrator.

11. Section 8.1 of the Plan (the "Plan Discharge"), provides as follows:

8.1 Discharge.

> Upon the Plan Effective Date and in consideration for Distributions under the Plan, except as otherwise provided herein or in the Confirmation Order, each holder of a Claim or Equity Interest shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights, and liabilities that arose prior to the Plan Effective Date. Except as otherwise provided herein, upon the Plan Effective Date, all such holders shall be forever precluded and enjoined from prosecuting or asserting any such discharged Claims, rights, and liabilities against or in any Debtor.

12. Section 8.2 of the Plan (the "Plan Injunction") provides as follows:

8.2 Injunction.

> Except as otherwise provided in this Plan or the Confirmation Order, on and after the Plan Effective Date, all persons who have held, currently hold, or may hold Claims[2] against or Equity Interests in the Debtors or the Estates that arose prior to the Plan Effective Date shall be permanently enjoined from, on account of such Claims or Equity Interests, taking any of the following actions, either directly or indirectly, against or with respect to any Debtor, any Estate, or any of their respective properties or assets, or against or with respect to the Plan Administrator, the Officers[3], or any additional insureds under the Debtors' general liability insurance policies[4]: (a) commencing or continuing in any manner any action or other proceeding of any kind; (b) enforcing, executing, levying, collecting, prosecuting, seeking, or recovering in any manner any judgment, award, decree, or order, or attaching any property pursuant to the foregoing; (c)

---

[2] The Plan defines "Claims" to mean any claim (as defined in section 101(5) of the Bankruptcy Code against a Debtor. Section 105(5) defines claim to mean "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

[3] The Plan defines "Officers" to include Israel Sherman.

[4] The Plan defines "Insurance Policies" to mean in part, "any issued policy of insurance and any agreements relating thereto covering the Debtors, the Estates, or their members, managers, officers, employees, or fiduciaries, or that may be available to provide coverage for Claims against the Debtors or any of the foregoing…"

> creating, perfecting, or enforcing any Lien or encumbrance of any kind; (d) asserting or effecting any setoff, recoupment, or right of subrogation of any kind against any Claim or Cause of Action; (e) enjoining or invalidating any conveyance of any property of the Debtors; (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Plan Administrator, the Officers, the Debtors, or the Estates under this Plan and the Confirmation Order; and (g) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of this Plan. The foregoing injunction shall not enjoin or prohibit the holder of a Disputed Claim from seeking to have such Claim declared Allowed and paid in accordance with this Plan or any party in interest from seeking the interpretation or enforcement before the Court of any obligations of the Debtors, the Plan Administrator, or the Officers under this Plan.

13. Section 8.7 of the Plan provides that:

> Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Plan Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors, the Estates, and their respective successors or assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Plan, whether or not such holder has accepted this Plan, and whether or not the holder has filed a Proof of Claim

14. As evidenced by a (i) Certificate of Liability Insurance for General Liability Policy No GI0201001094 (the "GI Policy"), the GI Policy provided general liability coverage as of the Plan Effective Date, to (a) the Debtors, and their owners, (b) RCA Healthcare Management, and its owners, including without limitation, Edward Farbenblum, Michael Farbenblum, Menachum Tauber and Yehuda Newman (collectively, the "RCA Owners") (c) RCA Servicer at Aurora Park, LLC ("RCA Servicer"), and its owners, and (d) 292 Main Street LLC and (ii) a Certificate of Liability Insurance for General Liability Policy No. IHFFP029C (the "IHFF Policy" and together with the GI Policy, the "Insurance Policies"), the IHFF Policy provided general liability coverage to the same parties as of the date the State Court Actions

were commenced. A copy of the Certificates of Liability Insurance are annexed to the Farbenblum Affidavit as **Exhibit "A"**.

15. The fact that each of RCA, RCA Servicer, the RCA Owners, the Debtors' owners, and 292 Main is an additional insured under the Insurance Policies render the terms of the Plan Injunction applicable to each of them.

16. On or about November 3, 2022, Kristin Steigert, as Administratrix of the Estate of Carol A. Spencer, and on behalf of all others similarly situated, ("Steigert"), commenced an action against RCA, RCA Servicer, the RCA Owners, the Debtors' owners, and 292 Main Street, LLC ("292 Main") in Supreme Court for the State of New York, Erie County, Index Number: 813531/2022 (the "Steigert Action") asserting causes of action allegedly arising from Carol A. Spencer's death on May 13, 2020. A copy of the Complaint filed in the Steigert Action is annexed to the Farbenblum Affidavit as **Exhibit "B"**.

17. In the Complaint filed in the Steigert Action, Steigert seeks to serve as a class representative in her capacity as administratrix of Ms. Spencer's estate on behalf of a purported class of all persons who contracted COVID-19 while residing at Defendants' nursing home facility, and suffered injury and/or death as a result. Upon information and belief, the Class currently consists of one identified person, i.e., Ms. Spencer. Ms. Steigert seeks to recover based upon alleged (i) violations of 2801-D of the New York State Public Health Law, (ii) negligence, (iii) and wrongful death of Ms. Spencer, which occurred prior to the Plan Effective Date. Ms. Steigert seeks to recover against the Movants, as alleged control persons, based upon the relationship that existed between the Debtors and RCA Servicer under the ASA.

18. On or about December 30, 2022, Dorothy Anne Carlone, as Administratrix of the Estate of Maxine J. Schwartz ("Carlone", and together with Steigert, the "State Court

Plaintiffs”), commenced an action against RCA, RCA Servicer, the RCA Owners, the Debtors’ owners, and 292 Main in Supreme Court for the State of New York, Erie County, Index Number: 800137/2023 (the “Carlone Action”, and together with the Steigert Action, the “State Court Actions”) asserting causes of action allegedly arising from Maxine J. Schwartz’s death on March 27, 2020. A copy of the Complaint filed in the Carlone Action is annexed to the Farbenblum Affidavit as **Exhibit “C”**.

19. In the Complaint filed in the Carlone Action, Ms. Carlone alleges that Ms. Schwartz died as the result of defendants’ conscious and reckless disregard of Ms. Schwartz’s rights, failed to arrange for and/or provide healthcare services in good faith, and violated applicable laws, including but not limited to New York Public Health Law § 2801 *et seq*., 42 CFR §483 *et seq*., 10 NYCRR § 415 *et seq.,* New York State Department of Health Guidance, Centers for Disease Control Guidance, and/or Executive Order(s) issued by the Governor of New York State, thereby causing injury and death to Ms. Schwartz prior to the Plan effective Date. Ms. Carlone seeks to recover against the Movants, as alleged control persons, based upon the relationship that existed between the Debtors and RCA Servicer under the ASA.

20. The State Court Plaintiffs are both represented by Brown Chiari in the State Court Actions.

21. On April 3, 2023, the undersigned sent a letter, with the Certificate of Liability Insurance for General Liability Policy No GI0201001094 and the Certificate of Liability Insurance for General Liability Policy No. IHFFP029C enclosed, to Brown Chiari discussing the applicability of the Plan Injunction and Plan Discharge to the State Court Actions and demanding that the State Court Actions be promptly dismissed in their entirety as against all parties with prejudice (the “KWJSS Letter”). A copy of the KWJSS Letter without enclosures

is annexed to the Farbenblum Affidavit as **Exhibit "D"**. On June 1, 2023, Brown Chiari sent an email in response to the KWJSS Letter, indicating that the State Court Actions would not be dismissed (the "Brown Chiari Email"). A copy of the Brown Chiari Email is annexed to the Farbenblum Affidavit as **Exhibit "E"**. On June 9, 2023, the undersigned sent an email to Brown Chiari to respond to the Brown Chiari Email (the "KWJSS Email"). A copy of the KWJSS Email is annexed to the Farbenblum Affidavit as **Exhibit "F"**. Brown Chiari did not respond to the KWJSS Email.

## REQUESTED RELIEF

22. By this Motion, Movants seek entry of an order pursuant to U.S.C. §§ 105(A), 524, and 1141, Rules 3020(d), 9014, and 9020 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. §1927 (i) enforcing the terms of the Plan and Confirmation Order and enjoining the State Court Actions, by (a) directing State Court Plaintiffs (as defined below) to cease and desist from further prosecuting the State Court Actions, and (b) directing State Court Plaintiffs to dismiss the State Court Actions, (ii) finding Brown Chiari and State Court Plaintiffs to be in civil contempt; and (iii) imposing sanctions on Brown Chiari and State Court Plaintiffs by awarding Movants' their reasonable attorneys' fees and costs incurred in connection with the Motion and the State Court Actions.

## BASIS FOR RELIEF

### I. The Commencement and Continued Prosecution of the State Court Actions against the Debtors, its owners and Officers (as defined in the Plan), RCA, RCA Servicer, the RCA Owners, and 292 Main is Prohibited by the Plan Injunction and the Plan Discharge

a. The State Court Plaintiffs' Claims Against the Debtors Were Discharged Pursuant to Section 8.1 of the Plan and Are Enjoined By Sections 8.1 and 8.2 of the Plan.

23. A review of the complaints filed in the State Court Actions reveals that all of the causes of action asserted in the State Court Actions arose prior to entry of the Confirmation Order and the Plan Effective Date. Indeed, all of the causes of action asserted allegedly arise from the respective deaths of Maxine J. Schwartz and Carol A. Spencer prior to the Plan Effective Date, which deaths were allegedly caused by wrongful conduct that occurred prior to entry of the Confirmation Order and the Plan Effective Date. On that basis alone, the Claims are barred as against the Debtors because all such Claims were waived, released and discharged under Section 8.1 of the Plan. See Plan, Sections 8.1 and 8.2.

24. Further, Section 1141(d) of the Bankruptcy Code provides as follows:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) **discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title,** whether or not--
> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
> (ii) such claim is allowed under section 502 of this title; or
> (iii) the holder of such claim has accepted the plan.

(Emphasis Added).

25. Section 524(a)(2) of the Bankruptcy code provides as follows:

> A discharge in a case under this title –
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

26. Given that the decedents died before the entry of the Confirmation Order and the Plan Effective Date, it is indisputable that the alleged claims arising from the deaths of Ms. Spencer and Ms. Schwartz arose prior to the Plan Effective Date. As such, those claims were

discharged against the Debtors. Consequently, the commencement and continuation of the State Court Actions against the Debtors constitutes a violation of the Plan, the Confirmation Order and the Bankruptcy Code.

*27.* Even assuming *arguendo* that the causes of action asserted in the State Court Actions were not discharged pursuant to Section 1141 of the Bankruptcy Code because they were post-petition claims, they were nonetheless discharged because the definition of "claim" in the Plan is not limited to pre-petition claims. The term "Claim" as defined in the Bankruptcy Code encompasses pre-petition claims as well as post-petition claims. This is consistent with Plan's inclusion of the defined term "Administrative Expense Claim," which refers to the defined term Claim in its definition. The definition of Administrative Expense Claim, in the Plan is as follows:

> "Administrative Expense Claim" means a Claim arising under sections 503(b), 507(a), 507(b), or 1114(e) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Plan Effective Date of preserving the Estates or operating the Debtors' businesses, and (b) Professional Fee Claims, to the extent Allowed by the Court.

28. "General Administrative Expense Claim" is defined in the Plan to mean "any Administrative Expense Claim other than a Professional Fee Claim."

29. Notably, Section 2.1(a) of the Plan (emphasis added) provides in part as follows:

> Each holder of a General Administrative Expense Claim, other than (i) the holder of the DIP Loan Claim, (ii) the holder of a General Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of business by a Debtor, or arising in the ordinary course of business out of the employment of an individual from and after the Petition Date, or (iii) the IRS, must file with the Court an application for Allowance of such General Administrative Expense Claim within thirty (30) days following the Plan Effective Date. Such application must include at a minimum the name of the applicable Debtor that is purported

> to be liable for such Claim, the asserted amount of the General Administrative Expense Claim, the basis for such Claim, and supporting documentation. Any holder of a General Administrative Expense Claim required to apply for Allowance of the same within the foregoing thirty (30) day period, and that fails to do so, shall be forever barred from asserting such Claims against the Plan Administrator, the Debtors, or their property, and such holder shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Claim.

30. To the extent any Person held a post-petition General Administrative Expense Claim, such Person was required to apply for allowance of the same within 30 days after the Plan Effective Date.

31. To the extent the holder of an Administrative Expense Claim did not comply with the filing requirement in Section 2.1, the provisions of Sections 2.1, 8.1 and 8.2 of Plan bar such holder from asserting such Claim. Neither of the State Court Plaintiffs filed a request for payment of an Administrative Expense Claim.

b. The State Court Plaintiff's Claims Against the Debtors, RCA, RCA Servicer, the RCA Owners, the Debtors' owners, and 292 Main Are Enjoined Pursuant to Section 8.2 of the Plan.

32. As noted above, each of RCA, RCA Servicer, the RCA Owners, the Debtors' owners, and 292 Main are additional insureds under the Insurance Policies, which provide general liability insurance coverage to the Debtors. *See* Farbenblum Affidavit, **Exhibit "A"**.

33. As also noted above, the Plan provides that all persons who have held, currently hold, or may hold Claims against the Debtors or the Estates that arose prior to the Plan Effective Date are permanently enjoined from (i) (a) commencing or continuing in any manner any action or other proceeding of any kind and (b) enforcing, executing, levying, collecting, prosecuting, seeking, or recovering in any manner any judgment, award, decree, or order, either directly or indirectly, against or with respect to any Debtor, any Estate, or any of their

respective properties or assets, or against or with respect to the Plan Administrator, the Officers[5], **or any additional insureds under the Debtors' general liability insurance policies**. See Plan, Section 8.2 (emphasis added). The purpose of the Plan provisions was to provide certainty to parties who provided services to the Debtors prior to the Plan Effective Date, that all derivative claims arising from the provision of such services to the Debtors must be asserted by a time certain, and could not be asserted years later. The State Court Actions, which seek to recover derivatively against the non-debtor defendants, on the basis that the ASA resulted in those defendants becoming control person under applicable public health law prior to the Plan Effective Date, are precisely the type of actions that were enjoined by the Plan.

34. Notably, NY PBH § 2808-a, which provides the statutory basis for the plaintiffs to name RCA, RCA Servicer, the RCA Owners, the Debtors' owners, and 292 Main as defendants in the State Court Actions, as alleged controlling persons of the subject residential health care facility[6], provides in relevant part as follows:

> 1. Every person who is a controlling person of any residential health care facility liable under any provision of this article to any person or class of persons for damages or to the state for any civil fine, penalty, assessment or damages, shall also be liable, jointly and severally, with and to the same extent as such residential health care facility, to such person or class of persons for damages or to the state for any such civil fine, penalty, assessment or damages.

35. The "residential healthcare facility" in this instance is Absolut Aurora Park. Both of the State Court Actions seek recovery based upon alleged actionable conduct that occurred at the Debtor's "residential healthcare facility" prior to the Plan Effective Date. All Claims (as defined in the Plan), rights, and liabilities that arose against Absolut Aurora Park

[5] The Plan defines "Officers" to include Israel Sherman.

[6] For the avoidance of doubt, Movants dispute the State Court Plaintiffs' allegations that they are or were at any relevant time controlling persons as relating to any of the Debtors' facilities, which allegations are wholly inconsistent with the terms of the ASA.

prior to the Plan Effective Date were waived, released, discharged and enjoined as of the Plan Effective Date. See Plan, Section 8.1.

36. Pursuant to NY PBH § 2808-a, the alleged controlling persons are liable only to the same extent as Absolut Aurora Park. In other words, the alleged controlling person's liability is derivative of and dependent upon a finding of liability against Absolut Aurora Park. Pursuant to Section 8.1 of the Plan, Absolut Aurora Park can have no liability for the claims asserted in the State Court Actions since those claims were waived and enjoined. Therefore, pursuant to Section 8.1 of the Plan and NY PBH § 2808-a, none of the other named defendants, who are each alleged to be controlling persons, can have any liability.

37. Based upon the foregoing, the commencement and continued prosecution of the State Court Actions against the Debtors, its owners and Officers (as defined in the Plan), RCA, RCA Servicer, the RCA Owners, and 292 Main is futile and constitutes a violation of the Plan Injunction and the Plan Discharge.

## II. The Court Has Jurisdiction to Enforce the Plan and Confirmation Order.

38. In the Second Circuit, district courts typically conduct a two-part inquiry to determine if a bankruptcy court has post-confirmation jurisdiction. "First, the matter must have a 'close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement.' ... Second, the plan must provide for the retention of jurisdiction over the dispute." *In re Gen. Media, Inc.*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005); see *also In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002); *In re Metro–Goldwyn–Mayer Studios Inc.*, 459 B.R. 550, 556 (Bankr. S.D.N.Y. 2011).

39. Here, there is an obvious "close nexus" to the Plan because Movants seek enforcement of the terms of the Plan and Confirmation Order. Bankruptcy courts unquestionably have subject matter jurisdiction to interpret and enforce their orders, even after the bankruptcy proceedings have concluded. *See e.g., Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) ("The Bankruptcy Court plainly had jurisdiction to interpret and enforce its prior orders"); *In re Petrie Retail, Inc.,* 304 F.3d 223, 228-31 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders"); *Gupta v. Quincy Medical Center,* 858 F.3d 657,663 (1st Cir. 2017) ("Bankruptcy Courts - like all federal courts - may retain jurisdiction to interpret and enforce their prior orders.") (citation omitted); *In re Millenium Seacarriers, Inc.,* 419 F.3d 83, 97 (2d Cir. 2005) ("Bankruptcy Courts retain jurisdiction to enforce and interpret their own Orders.") (citation omitted); *Bombart v. Family Center at Sunrise, LLC,* 520 B.R. 300, 305 (S.D. Fla. 2014) (a bankruptcy court retains the power to enforce its injunctions even after the passage of significant time because the enforcement and interpretation of a bankruptcy court's injunction should remain with the same court that issued the injunction); *In re Motors Liquidation Co.,* 457 B.R. 276, 287 (Bankr. S.D.N.Y. 2011) ("it's well established, of course, that bankruptcy courts, like other federal courts, have the jurisdiction to enforce their earlier orders, even after confirmation"); *In re Ames Department Stores, Inc.,* 317 B.R. 260, 272 (Bankr. S.D.N.Y. 2004) ("this Court has subject matter jurisdiction to enforce its orders not only because they were entered in proceedings in a case under title 11 ... with respect to which it undoubtedly had subject matter jurisdiction, but also by reason of the power granted to any federal court to enforce its own orders").

40. Paragraph 12 of the Confirmation Order provides that the Court retained jurisdiction over those matters set forth in Section 10.1 of the Plan. Section 10.1 of the Plan provides in part that the Court retained jurisdiction to, among other things:

> issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Court;
>
> to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, or any transactions or payments contemplated under this Plan or the Confirmation Order, any agreement, instrument, or other document governing or relating to any of the foregoing;
>
> to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, the Responsible Officer Agreement, or the Plan Administrator Agreement, including any exculpation or injunction provisions set forth in this Plan, or to maintain the integrity of this Plan following consummation.

41. This Court therefore retains jurisdiction to enforce the terms of the Plan and Confirmation Order by enjoining the State Court Actions and awarding sanctions for violation of the terms of the Plan and Confirmation Order.

**III. The Court Should Award Sanctions Against the State Court Plaintiffs and Brown Chiari.**

42. The courts' inherent powers include the ability to award attorneys' fees and costs "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991). Section 105(a) of the Bankruptcy Code empowers a bankruptcy court with authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). "The statutory contempt powers given to a

bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own order." *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010).

43. Under section 105(a) of the Bankruptcy Code, the Court has broad authority to issue contempt orders and award sanctions to enforce compliance with its orders. *In re Manchanda*, 2016 WL 3034693 at *4 (Bankr. S.D.N.Y. May 19, 2016). A finding of contempt and an award of sanctions requires that "(1) the order the party failed to comply with is clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *In re Lehman Bros. Holdings Inc.*, 2013 WL 6283572, at *1 (Bankr. S.D.N.Y. Dec. 3, 2013), *aff'd sub nom. In re Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016).

44. Courts routinely use sanctions to encourage a party to comply with court orders. *See In re Covelli*, 550 B.R. 256, 269 (Bankr. S.D.N.Y. 2016) ("*Covelli*"); *In re Davitch*, 336 B.R. 241, 252 (Bankr. W.D. Pa. 2006) (requiring a creditor to pay to a trustee $100 per day of noncompliance); *In re Nat'l Heritage Found., Inc.*, 2013 WL 3167698, at *21 (Bankr. E.D. Va. June 21, 2013) (requiring a creditor, pursuing litigation outside of bankruptcy court in violation of the court's Confirmation Order, to pay $500 per day to the debtor until it dismissed its claims with prejudice). "An award of attorneys' fees may be warranted where an offending party not only willfully violated the discharge injunction but also acted in bad faith or in a vexatious or oppressive manner." *In re Haemmerle*, 529 B.R. 17, 29 (Bankr. E.D.N.Y. 2015)(citing *Watkins v. Guardian Loan Co. of Massapequa, Inc. (In re Watkins)*, 240 B.R. 668, 678 (Bankr.E.D.N.Y.1999). "Willfulness requires a showing that the creditor intended the actions that violated the discharge injunction, rather than a specific intent to violate the debtor's discharge." *Id.* (citing *In re DiGeronimo*, 354 B.R. 625, 642 (Bankr. E.D.N.Y. 2006). "One

court has described willfulness as "knowingly going forward with collection activity ... knowing or having reason to know that the debtor was in bankruptcy and has received a discharge."" *Id*. (citing *In re Ramos*, Case No. 10–23019(RDD), 2013 WL 5461859, at *2 (Bankr. S.D.N.Y.Oct. 1, 2013).

45. Here, the language contained in Section 8.1 is crystal clear. All claims against the Debtors that arose prior to the Plan Effective Date are discharged and the holder of such claims is enjoined from pursuing such claims. *See* Plan, Section 8.1. The causes of action asserted in the State Court Actions all arose prior to the Plan Effective Date. As such, all of the causes of action asserted against the Debtors were discharged and barred under Section 8.1 of the Plan.

46. Likewise, the language contained in Section 8.2 of the Plan is clear and unambiguous. Holders of Claims against the Debtor may not pursue such claims against the Debtors or any additional insured under any of the Debtor's general liability insurance policies. As discussed above, and as indicated in the KWJSS Letter sent to Brown Chiari, RCA, RCA Servicer, the RCA Owners, the Debtors' owners, and 292 Main are each insured under the Insurance Policies, which provide the Debtors with general liability insurance. All of the causes of action asserted against the named defendants in the State Court Actions arise from their alleged role as controlling persons of the Debtor's healthcare facility. They can only be found liable if the Debtor is liable, and all of the alleged wrongful conduct and alleged causes of action arose prior to the Plan Effective Date. None of the foregoing is subject to a good faith dispute.

47. The State Court Plaintiffs and Brown Chiari simply disregarded the Plan provisions and relevant provisions of the Bankruptcy Code. Rather than investigating the

matter, researching the law, and seeking relief from the Plan provisions, they instead sought to put the onus on the Movants to prove to them that self-explanatory Plan provisions are applicable to the State Court Actions.

48. It is respectfully submitted that the Court should impose sanctions against the State Court Plaintiffs and Brown Chiari and award to the Movants their attorneys' fees and costs relating to the preparation and prosecution of the Motion.

**WHEREFORE**, Movants respectfully requests that this Court enter an order (i) enforcing the terms of the Plan and Confirmation Order and enjoining the State Court Actions, by (a) directing State Court Plaintiffs to dismiss the State Court Actions, (b) finding Brown Chiari and State Court Plaintiffs to be in civil contempt; and (ii) imposing sanctions upon Brown Chiari and State Court Plaintiffs by awarding Movants' their reasonable attorneys' fees and costs incurred in connection with the Motion and the State Court Actions, together with such other relief as the Court deems just and proper.

Dated: New York, New York
July 7, 2023

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: *<u>/s/ Brendan M. Scott</u>*
Tracy L. Klestadt
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000

*Attorneys for Movants*